JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
ELLEN M. RICHMOND (State Bar No. 277266)
ellen.richmond@mto.com
JOSHUA PATASHNIK (State Bar No. 295120)
josh.patashnik@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, CA  94105-4000
Telephone:     (415) 512-4000
Facsimile:      (415) 512-4077

JOHN W. SPIEGEL (State Bar No. 78935)
john.spiegel@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone:     (213) 683-9100
Facsimile:      (213) 687-3702

Attorneys for Plaintiff Airbnb, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AIRBNB, INC.,<br><br>            Plaintiff,<br><br>     vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>            Defendant. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

For its complaint, Plaintiff Airbnb, Inc. ("Airbnb") alleges as follows:

**INTRODUCTION**

1. This is an action under 42 U.S.C. § 1983, 18 U.S.C. § 2707, the Court's equitable powers, and the Declaratory Judgment Act, 28 U.S.C. § 2201, to enjoin and declare unlawful the enforcement against Airbnb of newly amended Sections 41A.5(e), 41A.5(g)(4)(C), and 41A.7(b)(1)-(3) of the San Francisco Administrative Code, enacted by the City on June 24, 2016 and effective on July 24, 2016 (the "Ordinance").[1]

2. The Ordinance directly conflicts with, and is preempted by, the Communications Decency Act of 1996, 47 U.S.C. § 230 (the "CDA"). As the Ordinance's own sponsors have described it, the Ordinance holds "*hosting platforms accountable* for the hundreds of units (rented by) *unscrupulous individuals*"[2] posting listings on their websites, and "*Airbnb Accountable for Listing Illegal Short Term Rentals*."[3] As such, the Ordinance unquestionably treats online platforms such as Airbnb as the publisher or speaker of third-party content and is completely preempted by the CDA. In addition, the law violates the Stored Communications Act, 18 U.S.C. §§ 2701 et seq. (the "SCA"), by requiring disclosure to the City of customer information without any legal process, and the First Amendment as an impermissible content-based regulation. The enforcement of the Ordinance against Airbnb should be immediately and permanently enjoined.[4]

---

[1] The Ordinance was passed by the Board of Supervisors on June 14, 2016. The Mayor did not sign the Ordinance, rendering it enacted on Friday, June 24, 10 days after it was delivered to the Mayor's office. *See* Ordinance, § 4. Pursuant to its terms, the Ordinance becomes effective 30 days after it is enacted, on July 24. *Id*.

[2] Caleb Pershan, *Campos Proposes Law To Fine Airbnb Directly For Unregistered SF Listings*, SFist Blog, Apr. 25, 2016, http://sfist.com/2016/04/25/campos_proposes_legislation_to_hold.php (quote of Supervisor Aaron Peskin) (emphasis added) (last visited June 20, 2016); *see also* Aaron Peskin, Facebook Post, Apr. 25, 2016, https://www.facebook.com/aaron.peskin/posts/1607597332893162 (last visited June 21, 2016).

[3] SF Bay Times, Facebook Post Sharing Press Release from Supervisor David Campos, Apr. 25, 2016, https://www.facebook.com/SanFranciscoBayTimes/posts/1188030017882628 (emphasis added) (last visited June 20, 2016).

[4] This action is both an as-applied and a facial challenge against the Ordinance. It is an as-applied challenge in that it seeks only to prohibit the City from enforcing certain provisions of the Ordinance against Airbnb; and it is a facial challenge in that certain provisions, on their face,

3. Since February 2015, San Francisco law has permitted residents to rent out their residential units on a short-term basis if they register their units with the City, which assigns the unit a registration number and lists it on a City-run registry. S.F. Admin. Code § 41A.5(g)(1)(E), (g)(3)(A). Residents also are required to include their registration numbers on any "listing" on a "Hosting Platform"—defined as an entity that provides "a means through which" residents "may offer" and "advertise" their units for rent "through a website," *id*. § 41A.4—and residents face liability for failing to do so. *Id.* §§ 41A.5(g)(1)(F), (g)(2)(A).

4. The Ordinance fundamentally and impermissibly alters San Francisco's regulatory scheme for short-term rentals by holding Hosting Platforms criminally and civilly liable for their users' posting of listings without valid registration numbers. Specifically, the Ordinance (a) requires Hosting Platforms to verify that each active and future listing on their websites has a valid registration number prior to publishing the listing, and (b) subjects them to criminal and civil penalties for their publishing of listings without verifying the registration number, including up to six months in jail and fines of up to $1,000 per day for each unverified listing. *See id*. §§ 41A.5(e), (g)(4)(C)-(D); 41A.7(b)(1)-(3).

5. The enforcement of the Ordinance against Airbnb is preempted by the CDA, which aims "to promote the continued development of the Internet" and "to preserve" its "vibrant and competitive free market." 47 U.S.C. § 230 (b)(1)-(2). In furtherance of these goals, the CDA expressly preempts state and local laws that treat a website "as the publisher or speaker of any information provided by another information content provider." *Id*. (c)(1), (e)(3). By requiring Airbnb to verify that each third-party rental listing has a valid registration number prior to posting the listing on their websites, and by imposing criminal and civil penalties for websites' publishing of unverified third-party listings, the Ordinance violates the CDA, which preempts the enforcement of these provisions against Airbnb.

6. The disclosure provisions of the Ordinance separately are barred by the SCA. In an attempt to sidestep the CDA, the Ordinance requires Hosting Platforms to disclose to

---

violate the law and cannot be enforced against any Hosting Platform in any set of factual circumstances.

1  the City customer names and addresses "prior to posting" a listing—and without any legal process. S.F. Admin. Code §§ 41A.5(g)(4)(C)(ii); 41A.7(b)(2)-(3).  But in this failed endeavor to avoid Section 230, the Ordinance squarely conflicts with the SCA, which bars state laws that compel services like Airbnb to release basic customer information to governmental entities without legal process.  One of Congress's goals in enacting the SCA was to protect the privacy of customers of electronic communication service providers.  The Ordinance directly undermines that objective.

7. The Ordinance also violates Airbnb's First Amendment rights.  It is a content-based restriction on advertising rental listings, which is speech.  The Ordinance seeks to punish Airbnb for publishing listings that do not comply with San Francisco law.  To justify this content-based restriction on speech, the City bears the burden of showing that the Ordinance is narrowly tailored to further a substantial government interest.  The City cannot carry this burden because, instead of targeting speech, the City instead could simply enforce its existing short-term rental law directly against hosts who violate it.  Further, the Ordinance is unconstitutionally overbroad as it punishes Hosting Platforms for publishing *any* listing without complying with its "verification" procedures—including those listings that may be registered and in compliance with San Francisco law.

**PARTIES**

8. Plaintiff Airbnb is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in San Francisco, California.  It maintains a website that provides an online marketplace for people to list, explore, and book both short-term and long-term housing accommodations.

9. Defendant City and County of San Francisco (the "City" or "San Francisco") is an incorporated municipality in northern California.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction of this action under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because Airbnb alleges violation of its rights under the Constitution and laws of the United States.

1  11. The Court may declare the legal rights and obligations of the parties in this
2  action pursuant to 28 U.S.C. § 2201 because the action presents an actual controversy within the
3  Court's jurisdiction.
4  12. Venue is proper under 28 U.S.C. § 1391 because the defendant is located
5  and resides in this judicial district and in the State of California; and because a substantial part of
6  the events giving rise to Airbnb's claims for relief occurred in this judicial district.
7  13. This action should be assigned to the San Francisco Division of this Court
8  under Civil Local Rule 3-2 because this action arises in the City and County of San Francisco.  A
9  substantial part of the events giving rise to Airbnb's claims for relief occurred in the City and
10 County of San Francisco.

**FACTUAL ALLEGATIONS**

**Airbnb**

13 14. Founded in 2008, Airbnb provides an Internet platform through which
14 persons desiring to book accommodations ("guests"), and persons listing unique accommodations
15 available for rental ("hosts"), can locate each other and enter into direct agreements to reserve and
16 book travel accommodations on a short and long-term basis.
17 15. Airbnb does not manage, operate, lease or own hosts' accommodations, and
18 it is not a party to the direct agreements between third-party guests and hosts for the booking of
19 accommodations offered by hosts.  Airbnb's platform provides means by which interested hosts
20 can choose to list their accommodations; hosts and guests can locate and connect with one
21 another; and hosts and guests can message each other directly on the platform[5] and determine the
22 material terms of their bookings.  The platform also provides, through third-party payment
23 processors, a secure payment-processing service to permit hosts to receive payments
24 electronically.  In consideration for use of its platform, Airbnb receives a service fee from both the
25 guest and host, determined as a percentage of the accommodation fee set solely by the host.

---

[5] Airbnb also provides electronic storage of those communications on its platform.

-4-
COMPLAINT OF AIRBNB, INC.

16. Hosts, and not Airbnb, decide whether to list their properties, and only hosts set their prices and terms of booking and decide with whom and when to transact. As Airbnb's Terms of Service state, hosts "alone are responsible for any and all Listings and Member Content [they] post."[6] Hosts provide the descriptions of their rentals, set their lengths of stay, determine the prices and whether the entire property or a portion thereof is available for rent, and decide when and with whom they want to enter into agreements.

17. Under the Ordinance, hosts are also responsible for registering their short-term rentals, obtaining a registration number from the City, and including their City-issued registration numbers "on any Hosting Platform listing." S.F. Admin. Code §§ 41A.5(g)(1)(F), (g)(2)(A).

18. Airbnb advises its hosts and guests to be aware of and comply with local law in listing and renting units listed on Airbnb. At the outset, the Terms of Service clearly advise users that they must comply with law. After referencing parties' "OBLIGATIONS TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS," the Terms state:

> IN PARTICULAR, HOSTS SHOULD UNDERSTAND HOW THE LAWS WORK IN THEIR RESPECTIVE CITIES. SOME CITIES HAVE LAWS THAT RESTRICT THEIR ABILITY TO HOST PAYING GUESTS FOR SHORT PERIODS. THESE LAWS ARE OFTEN A PART OF A CITY'S ZONING OR ADMINISTRATIVE CODES. IN MANY CITIES, HOSTS MUST REGISTER, GET A PERMIT, OR OBTAIN A LICENSE BEFORE LISTING A PROPERTY OR ACCEPTING GUESTS. CERTAIN TYPES OF SHORT-TERM BOOKINGS MAY BE PROHIBITED ALTOGETHER.[7]

19. Airbnb maintains a "Responsible Hosting" section on the Airbnb website specific to San Francisco that provides a variety of general information for hosts about applicable laws and regulations that they should follow, including safety guidelines and business regulations.[8]

---

[6] Airbnb Terms of Service, https://www.airbnb.com/terms (last visited June 20, 2016).

[7] *Id*.

[8] Airbnb Responsible Hosting, San Francisco, CA, https://www.airbnb.com/help/article/871/san-francisco--ca (last visited June 20, 2016).

20. In addition, the "Responsible Hosting" page for San Francisco informs hosts that "it's important for you to understand the laws in your city" and provides links to City websites that describe San Francisco law.[9] For example, the page states that "San Francisco requires hosts to register by scheduling an appointment with the Planning Department and paying a fee of $50" and provides a link to the registration application form.[10] Airbnb further informs hosts that "You may include your short-term rental permit number on your listing" in the "'Other Things to Note' field" by "typ[ing] in your permit number following the acceptable permit format for San Francisco. The format is: STR-xxxxxxx. An example would be: STR-1234567."[11]

21. As part of the Airbnb Community Compact, the company is committed to helping provide solutions tailored to the needs of cities like San Francisco with historic housing challenges. For example, Airbnb discretionarily removes listings that it believes may be offered by hosts with multiple "entire home" listings or by unwelcome commercial operators. If Airbnb is alerted to shared spaces or private rooms that appear to be operated by unwelcome commercial operators or that do not reflect the community vision, it generally will remove such listings. Within the last year, Airbnb has removed numerous San Francisco listings from its platform as part of its Community Compact efforts.

22. A recent study by the city planning and research organization SPUR states that "[d]ata from Airbnb suggests that the vast majority of properties listed in San Francisco are not being removed from the long-term residential market."[12]

**The Ordinance**

23. The Ordinance was passed by the Board of Supervisors on June 14, 2016, enacted by the City on June 24, 2016, and goes into effect on July 24, 2016. It amends Chapter 41A of the San Francisco Administrative Code, which contains various provisions governing

---

[9] *Id.*

[10] *Id*.

[11] *Id*.

[12] SPUR, *Non-Primary Residences and San Francisco's Housing Market*, Oct. 21, 2014, at 9, http://www.spur.org/sites/default/files/publications_pdfs/SPUR_Non-Primary_Residences.pdf (last visited June 21, 2016).

1  short-term rentals in San Francisco.  As discussed further below, a main feature of the Ordinance
2  is that, unlike prior San Francisco law, it requires Hosting Platforms to verify that rentals have a
3  valid registration number issued by the City.  The Ordinance seeks to hold Hosting Platforms
4  liable, on threat of both criminal and civil penalties, for publishing listings without complying
5  with the verification procedure.

6         24.    In October 2014, the Board of Supervisors enacted a set of amendments to
7  Chapter 41A that made short-term residential rentals generally lawful in San Francisco, subject to
8  certain limitations and requirements.  "Permanent Residents" who have occupied their units for at
9  least 60 days may offer their homes for "Short-Term Rental."  S.F. Admin. Code §§ 41A.4;
10 41A.5(g).  Before offering such a rental, Permanent Residents must apply for and register the
11 rental unit with the San Francisco Planning Department, which assigns the unit a registration
12 number and lists it on a City-run registry.  *Id.* §§ 41A.5(g)(1)(E); 41A.5(g)(3)(A).  Residents are
13 also required to "include[] the Department-issued registration number on any Hosting Platform
14 listing or other listing offering the Residential Unit for use as a Short-Term Residential Rental."
15 *Id.* § 41A.5(g)(1)(F).  Hosting Platforms like Airbnb have no property interests in the units listed
16 on their websites and no ability to obtain or create registration numbers.

17        25.    Residents are prohibited from renting residential units on a short-term basis
18 for more than 90 days per year if the rental is "unhosted," i.e., if the host is not on site during the
19 rental.  There is no limit on the number of days per year the unit may be rented for Short-Term
20 Rentals if the unit is "hosted," i.e., if the host remains in the unit during the rental (for instance, if
21 the rental is for a room in a unit also occupied by the host).  *Id.* § 41A.5(g)(1)(A).

22        26.    As part of the October 2014 amendments, the Board of Supervisors also
23 imposed certain duties and obligations on Hosting Platforms, which must notify users of the City's
24 regulations regarding short-term rentals and must collect and remit Transient Occupancy Taxes
25 required under the Business and Tax Regulations Code.  *Id.* § 41A.5(g)(4)(A)-(B).  The October
26 2014 amendments did not seek to impose liability on Hosting Platforms based on the content of
27 the listings they publish, nor did it require them to verify any content associated with third-party
28 listings.  The October 2014 amendments went into effect in February 2015.

27. The City created the Office of Short-Term Rentals ("OSTR") in July 2015 to enforce the foregoing provisions. A report prepared by the City's Budget and Legislative Analyst's Office in April 2016 stated that the OSTR "continues to levy fines against hosts found to be non-compliant" with the law, and while "there still remains a sizeable gap between the number of registered hosts and the number of hosts advertising short-term rentals on online platforms," the "OSTR may be able to further close that gap in coming months as OSTR became fully staffed in December 2015."[13] The report further noted that OSTR saw "a wave of compliant behavior towards the end of 2015" and has developed "new strategies to pro-actively identify non-compliant hosts."[14]

28. Unlike the October 2014 amendments, the Ordinance imposes criminal and civil liability on Hosting Platforms that publish listings without complying with the verification procedures set forth by the Ordinance. The Ordinance provides that "[p]rior to providing reservation and payment services for a listing of a Residential Unit within the City to be rented for Tourist or Transient Use, a Hosting Platform shall verify with the Office of Short-Term Residential Rental Administration and Enforcement that the Residential Unit is listed on the Registry and has a valid registration number." *Id.* § 41A.5(g)(4)(C).

29. The Ordinance sets forth two exclusive ways in which a Hosting Platform must comply with this requirement. Hosting Platforms must: "(i) Provid[e] the verified registration number on each listing in the area of the listing dedicated to information verified or compiled by the Hosting Platform about the host[;]or (ii) Send[] the verified registration number, Residential Unit street address, … and host name to the Office of Short-Term Residential Rental Administration and Enforcement by electronic mail prior to posting the listing on the platform." *Id.*

---

[13] City and County of San Francisco Board of Supervisors, Budget and Legislative Analyst's Office, "Short Term Rentals 2016 Update," (Apr. 7, 2016), http://www.sfbos.org/Modules/ShowDocument.aspx?documentid=55575 at 21 (last visited June 20, 2016).

[14] *Id*. at 3, 18.

30. The Ordinance imposes criminal and civil liability on Hosting Platforms that do not comply with its terms. It provides that "any Hosting Platform that provides a listing for a Residential Unit for Tourist or Transient Use in violation of" Chapter 41A is subject to misdemeanor criminal liability "punishable by a fine of not more than $1,000 or by imprisonment in the County Jail for a period of not more than six months," or both. *Id*. § 41A.5(e). Hosting Platforms that fail to comply are also subject to civil penalties of up to "$1,000 per day for the period of the unlawful activity." *Id.* § 41A.5(d)(3). Each individual listing not in compliance with the Ordinance is considered a separate offense. *See id.*; *id.* § 41A.7(b)(3).

31. The Ordinance provides that Hosting Platforms that fail to comply with their responsibilities under Chapter 41A shall also be subject to "administrative penalties," including but not limited to payment of civil penalties of up to $1,000 per day for the period of the failure to comply. *Id.* § 41A.6(d)(1)-(2).

32. All of these penalties apply to any Hosting Platform that publishes a listing without adhering to the verification procedure described in the statute, *even if* the listing at issue advertises a rental that is fully in compliance with San Francisco law.

33. In addition, the Ordinance sets forth a monitoring regime. It requires the OSTR to "actively monitor Hosting Platform listings to ensure that Hosting Platforms are only listing Residential Units that are listed on the Registry." *Id.* § 41A.7(b). The agency must undertake this monitoring effort "on at least a monthly basis," *id.*, and each time it does so, the agency must "immediately provide notice to Hosting Platforms by electronic mail of all listings that do not have valid registration numbers or are otherwise not in compliance with this Chapter 41A." *Id.* § 41A.7(b)(1). Upon receiving such notice, Hosting Platforms must, "within one City business day," "respond" to the notice "by confirming, for each listing identified in the notice, that the listing has a valid registration number and providing that number and any other requested information," including "unit address and host information" to the agency. *Id.* § 41A.7(b)(2)-(3). "For each listing that a Hosting Platform fails to provide the requested information" to the agency within one day, "the Hosting Platform shall be subject to the administrative penalties and enforcement provisions" of Chapter 41A. *Id.* § 41A.7(b)(3).

34. The members of the Board of Supervisors who sponsored the Ordinance have explained that the Ordinance seeks to hold the "hosting platforms accountable for the hundreds of units (rented by) unscrupulous individuals."[15] A press release from the office of Supervisor David Campos similarly described the law as "Holding Airbnb Accountable for Listing Illegal Short Term Rentals."[16] The sponsors contend that the bill targets "unscrupulous speculators" but not "mom and pop" hosts.[17]

35. During committee meetings regarding the Ordinance, City officials acknowledged potential "issues under the Communications Decency Act" that the Ordinance might create, but claimed that the Ordinance was drafted "in a way that minimizes" those concerns.[18]

36. Following passage of the Ordinance by the Board of Supervisors, the Mayor's spokesperson said that the "mayor remains concerned that this law will not withstand a near-certain legal challenge and will in practice do nothing to aid the city's registration and enforcement of our short-term rental laws."[19]

37. The sponsors of the Ordinance have suggested that imposing liability on Hosting Platforms for publishing listings will make the City's regulatory scheme more effective and efficient in preventing unlawful conduct.

---

[15] Caleb Pershan, *Campos Proposes Law To Fine Airbnb Directly For Unregistered SF Listings*, SFist Blog, Apr. 25, 2016, http://sfist.com/2016/04/25/campos_proposes_legislation_to_hold.php (last visited June 20, 2016); *see also* Aaron Peskin, Facebook Post, Apr. 25, 2016, https://www.facebook.com/aaron.peskin/posts/1607597332893162 (last visited June 21, 2016).

[16] SF Bay Times, Facebook Post Sharing Press Release from Supervisor David Campos, Apr. 25, 2016, https://www.facebook.com/SanFranciscoBayTimes/posts/1188030017882628 (last visited June 20, 2016).

[17] Bay City News Service, *New Legislation Would Fine Airbnb For Listing Unregistered Properties*, SFGate, Apr. 25, 2016, http://www.sfgate.com/news/bayarea/article/New-Legislation-Would-Fine-Airbnb-For-Listing-7352453.php (last visited June 20, 2016).

[18] Video, *Hearing of the San Francisco Board of Supervisors Government Audit and Oversight Committee* (June 2, 2016), http://goo.gl/PhCCsI, at 19:22-20:22 (last visited June 20, 2016).

[19] Emily Green, *SF Supes Crack Down on Unregistered Short-Term Rentals*, SFGate, June 7, 2016, http://www.sfgate.com/politics/article/Supervisors-No-unregistered-hosts-on-short-term-7969444.php (last visited June 20, 2016).

38. Instead of punishing Airbnb for publishing unlawful listings, the City could enforce its short-term rental law directly against hosts who violate it, as provided under the Ordinance. Indeed, the City has begun already doing so: it has assessed nearly $700,000 in fines against hosts.[20] As the April 2016 report prepared by the City's Budget and Legislative Analyst's Office also stated, the City can "simplify the short-term rental registration process as the existing system might deter otherwise compliant short-term rental hosts,"[21] and the Ordinance requires OSTR to promulgate rules accomplishing that goal, S.F. Admin. Code § 41A.7(a). Supervisor Scott Wiener recently stated that there has been an "acceleration in the number of hosts registering," and the City is "moving in a positive direction" in enforcing the law.[22]

39. The Ordinance imposes a significant burden on Airbnb to verify the registration numbers associated with each of the thousands of San Francisco rental listings on its platform. Airbnb employees are required to verify each listing's registration number by obtaining the registration number from the host or through some other source. Upon verifying the registration number for each of these listings, Airbnb must either publish the registration number or send to the City the registration number, residential street unit address, and host name for each listing.

40. If the Ordinance goes into effect, it will require Airbnb to screen and remove from its site any listing in which Airbnb is unable to verify a registration number associated with the listing. To comply with the Ordinance, Airbnb would need to remove a substantial number of listings from its site, including listings that otherwise comply with San Francisco law. Removing these listings would cause a substantial disruption to Airbnb's business

---

[20] City and County of San Francisco Board of Supervisors, Budget and Legislative Analyst's Office, "Short Term Rentals 2016 Update," (Apr. 7, 2016), http://www.sfbos.org/Modules/ShowDocument.aspx?documentid=55575 at 2 (last visited June 20, 2016).

[21] *Id.* at 4.

[22] Video, *Hearing of the San Francisco Board of Supervisors* (June 7, 2016), http://goo.gl/FWvlZw (starting at 43:00) (last visited June 20, 2016).

and have a significant detrimental effect on Airbnb's goodwill and reputation among both hosts and guests, thus threatening irreparable injury to Airbnb's business.

41. The Ordinance also creates the perception that Airbnb's activities are unlawful. This perception will lead to the sort of reputational injury and loss of goodwill that irreparably harms a business.

**CLAIM 1: VIOLATION OF THE COMMUNICATIONS DECENCY ACT, 47 U.S.C. § 230, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**

42. Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

43. Airbnb is a provider of an interactive computer service within the meaning of 47 U.S.C. § 230, because it operates the interactive online platform Airbnb.com. Airbnb provides information to multiple users by giving them computer access to a computer server within the meaning of 47 U.S.C. § 230(f)(2).

44. The third-party hosts that create listings on Airbnb.com are persons responsible for the creation or development of information provided through Airbnb, within the meaning of 47 U.S.C. § 230(f)(3). Additionally, the registration numbers hosts obtain and are required to include in their listings are also information developed or created by another information content provider.

45. The Ordinance violates and conflicts with 47 U.S.C. § 230, and Airbnb's rights thereunder, because it imposes duties and obligations on Airbnb that derive from Airbnb's status as a publisher or speaker of third-party content and treats Airbnb as the publisher or speaker of information provided by another information content provider, all in a manner prohibited by section 230.

46. First, the Ordinance imposes criminal and civil liability for Airbnb's publication of third-party rental advertisements where the registration number associated with a listing has not been verified by Airbnb. The liability in these provisions derives from Airbnb's publication of third-party rental advertisements on its website.

47. Second, the Ordinance requires Airbnb to verify content associated with a

COMPLAINT OF AIRBNB, INC.

third-party rental advertisement prior to publishing that advertisement. Specifically, Airbnb must verify the existence of a registration number, which hosts are required under the Ordinance to include on their listings. The act of verifying content associated with a third-party listing is a protected editorial act, and this verification requirement derives from Airbnb's status as a publisher or speaker of third-party content, in violation of the CDA.

48. The Ordinance is a "State or local law that is inconsistent with" section 230, in violation of 47 U.S.C. § 230(e)(3).

49. The enforcement of the Ordinance against Airbnb violates and is preempted by 47 U.S.C. § 230.

50. The Ordinance also interferes with or impedes the accomplishment of the full purposes and objectives of federal law, violates the Supremacy Clause, U.S. Const. art. VI, cl. 2, and is invalid and preempted.

51. Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the City to prevent its enforcement of the Ordinance, which would conflict with and violate the CDA.

**CLAIM 2: VIOLATION OF THE STORED COMMUNICATIONS ACT, 18 U.S.C. §§ 2701 ET SEQ., AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 18 U.S.C. § 2707, 42 U.S.C. § 1983, AND THE COURT'S EQUITABLE POWERS**

52. Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

53. Under the SCA, "a provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service . . . to any governmental entity," without a subpoena or other legal process, absent one of the other applicable exceptions, none of which apply here.[23]  18 U.S.C. §§ 2702(a)(3), (c)(1); 2703(c).

---

[23] Those exceptions are: (1) when the customer or subscriber consents to the disclosure, *see* 18 U.S.C. §§ 2702(c)(2), 2703(c)(1)(C); (2) "as may be necessarily incident to the rendition of the service or to the protection of the rights or property of the provider of that service," *id*. § 2702(c)(3); (3) "if the provider, in good faith, believes that an emergency involving danger of

54. Airbnb is a provider of an electronic communication service within the meaning of the SCA, as it provides to its users "the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Airbnb also is a provider of a remote computing service within the meaning of the SCA, as it provides to users "computer storage or processing services by means of an electronic communications system." *Id.* § 2711(2).

55. The City is a "governmental entity" under the SCA. *See id.* § 2711(4) (defining "governmental entity" as "a department or agency of the United States or any State or political subdivision thereof").

56. The Ordinance requires, as one method of verification, that Hosting Platforms "[s]end[] the verified registration number, Residential Unit street address, … and host name" to the City "prior to posting the listing." S.F. Admin. Code § 41A.5(g)(4)(C)(ii). The Ordinance also requires, in response to a notice from the City that a listing does not have a valid registration number, that Hosting Platforms provide the registration number and "any other requested information," including "unit address and host information," to the City. *Id.* § 41A.7(b)(2)-(3).

57. These provisions violate and conflict with the SCA, and Airbnb's rights thereunder, because they require Airbnb to "divulge a record or other information pertaining to a subscriber to or customer of such service" to a "governmental entity," without a subpoena or other form of legal process. 18 U.S.C. §§ 2702(a)(3), (c)(1); 2703(c).

58. These provisions also interfere with or impede the accomplishment of the full purposes and objectives of federal law, violate the Supremacy Clause, U.S. Const. art. VI, cl. 2, and are invalid and preempted.

---

death or serious physical injury to any person requires disclosure without delay of information relating to the emergency," *id.* § 2702(c)(4); or (4) when the governmental entity "submits a formal written request relevant to a law enforcement investigation concerning telemarketing fraud for the name, address, and place of business of a subscriber or customer of such provider, which subscriber or customer is engaged in telemarketing," *id.* § 2703(c)(1)(D).

59.     Pursuant to 18 U.S.C. § 2707(a)-(b), 42 U.S.C. § 1983, and this Court's equitable powers, Airbnb seeks injunctive relief against the City to prevent its enforcement of the Ordinance, which would conflict with and violate the SCA.

**CLAIM 3: VIOLATION OF THE FIRST AMENDMENT OF THE U.S. CONSTITUTION AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**

60.     Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

61.     The Ordinance is a content-based restriction on Airbnb's speech, including commercial speech, as an online platform for rental advertisements and listings.  The Ordinance seeks to impose both civil and criminal penalties on Airbnb for publishing rental listings in a manner that does not comply with the Ordinance's screening and verification requirements.

62.     The restriction on speech imposed by the Ordinance is not narrowly or appropriately tailored to promote a compelling or substantial interest on the part of the City, and is not likely to achieve any such interest in a direct and material way.  Instead of seeking to impose liability on Hosting Platforms like Airbnb for publishing listings, the City could instead enforce its short-term rental laws directly against hosts who rent their residences in a manner that does not comply with the law.  The City has not shown, and cannot show, that this less-speech-restrictive alternative would not be an adequate means of achieving the City's policy goals.

63.     The Ordinance also is overbroad as it punishes Hosting Platforms like Airbnb for publishing *any* listing without complying with its "verification" procedures—including those listings that may be registered and lawful.  Given the substantial criminal and civil penalties for non-compliance, and the burdensome verification process, Hosting Platforms like Airbnb likely would over-remove or not publish lawful and registered listings.

64.     The enforcement of the Ordinance against Airbnb therefore violates the First Amendment of the U.S. Constitution, as applied to the City by the Fourteenth Amendment.

65.     Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the City, whose enforcement of the Ordinance would conflict with and violate the First Amendment.

-15-
COMPLAINT OF AIRBNB, INC.

1 **CLAIM 4: DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201**

2   66. Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

4   67. This action presents an actual controversy between Airbnb and the City concerning the validity of the Ordinance and its enforceability against Airbnb and other online Hosting Platforms.

7   68. Based on the foregoing allegations, Airbnb is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that the Ordinance cannot be enforced against Airbnb because such enforcement would violate the CDA, 47 U.S.C. § 230, the SCA, 18 U.S.C. §§ 2701 et seq., the Supremacy Clause, U.S. Const. art. VI, cl. 2, and the First and Fourteenth Amendments of the United States Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Airbnb respectfully requests that the Court:

69. Declare that, as applied to Airbnb, the Ordinance violates 47 U.S.C. § 230 and the Supremacy Clause because it would permit the imposition of civil or criminal penalties as a result of the publication of advertisements or other information by third-party hosts on Airbnb.com and impose duties on Airbnb with respect to its protected editorial acts concerning third-party rental advertisements.

70. Declare that, as applied to Airbnb, the Ordinance violates 18 U.S.C. §§ 2701 and the Supremacy Clause because it would compel Airbnb, an electronic communication service provider, to divulge information pertaining to a subscriber or to a customer of such service to the City, a governmental entity, without a subpoena or any other form of legal process.

71. Declare that, as applied to Airbnb, the Ordinance violates the First and Fourteenth Amendments of the U.S. Constitution because it would place content-based restrictions on speech by imposing civil and criminal penalties on Airbnb as a result of the publication of content, and the restrictions the Ordinance would impose are not narrowly tailored to promote a compelling or substantial interest on the part of the City and are overbroad.

72. Preliminarily and permanently enjoin the City; its officers, agents, servants, employees, and attorneys; and those persons in concert or participation with them from taking any actions to enforce against Airbnb provisions 41A.5(e), 41A.5(g)(4)(C), 41A.7(b)(1)-(3) of the Ordinance, as well as the other portions of Chapter 41A of the San Francisco Administrative Code providing for enforcement and penalties that would penalize Airbnb—including any investigation, arrest, prosecution, or penalty—for: (a) the publication of rental advertisements or other information of third-party hosts on Airbnb.com; (b) the failure to verify whether a host or rental listing is associated with a valid registration number; (c) the failure to include a registration number in any advertisement of a third-party host on Airbnb.com; or (d) the failure to disclose to the City host information, including hosts' names and addresses.

73. Award Airbnb its reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

74. Award Airbnb such other and further relief as the Court deems just and proper.

DATED:  June 27, 2016                         MUNGER, TOLLES & OLSON LLP

                                               JOHN W. SPIEGEL
                                               JONATHAN H. BLAVIN
                                               ELLEN M. RICHMOND
                                               JOSHUA PATASHNIK

By: */s/ Jonathan H. Blavin*
      JONATHAN H. BLAVIN
Attorneys for Plaintiff Airbnb, Inc.