1  JONATHAN H. BLAVIN (State Bar No. 230269)
   jonathan.blavin@mto.com
2  ELLEN M. RICHMOND (State Bar No. 277266)
   ellen.richmond@mto.com
3  JOSHUA PATASHNIK (State Bar No. 295120)
   josh.patashnik@mto.com
4  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, Twenty-Seventh Floor
5  San Francisco, CA  94105-4000
   Telephone:     (415) 512-4000
6  Facsimile:     (415) 512-4077

7  JOHN W. SPIEGEL (State Bar No. 78935)
   john.spiegel@mto.com
8  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, Thirty-Fifth Floor
9  Los Angeles, California 90071-1560
   Telephone:     (213) 683-9100
10 Facsimile:     (213) 687-3702

11 Attorneys for Plaintiff Airbnb, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AIRBNB, INC.,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendant. | Case No. 16-cv-03615<br><br>**DECLARATION OF DAVID OWEN** |

# DECLARATION OF DAVID OWEN

I, David Owen, declare as follows:

1. I am Head of Policy Strategy for Airbnb, Inc. ("Airbnb"). I am over the age of 18 years and maintain an office at 888 Brannan Street, Suite 400, San Francisco, CA 94103. I have personal knowledge of the matters set forth in this declaration, and if called as a witness, I could and would testify under oath as follows.

2. Airbnb, Inc. was founded in 2008. Airbnb provides an Internet platform and online marketplace through which third parties listing their accommodations ("hosts") and third parties desiring to book accommodations ("guests") can locate each other, communicate with each other, and enter into direct agreements to reserve and book travel accommodations on a short and long-term basis.

3. Airbnb's Internet website, located at www.airbnb.com, provides a means by which interested parties can choose to list their accommodations, a means by which hosts and guests can locate and connect with each other, a means for them to communicate and message one another directly on the platform and determine the material terms for their bookings, and also provides, through third-party payment processors, a secure payment processing service to permit hosts to receive payments electronically. In consideration for use of the platform services, Airbnb receives a service fee from the both the guest and from the host, which are determined as a percentage of the accommodation fee set solely by the host.

4. Airbnb has no possessory interest in any of the property or accommodations that third-party hosts may list on the Internet platform. Airbnb therefore is not a proprietor, owner or operator of any accommodation offered by hosts on the Internet platform. Airbnb does not own, manage, operate, or lease hosts' accommodations, and it cannot and does not grant possessory interests or licenses in accommodations offered by hosts.

5. A true and correct copy of Airbnb's Terms of Service, available at https://www.airbnb.com/terms, is attached hereto as Exhibit 1. All users of Airbnb must accept and consent to the Terms of Service in order to post listings on the site or to book reservations. As

the Terms of Service state, Airbnb "is not an owner or operator of properties" and "does not own, sell, resell, furnish, provide, rent, re-rent, manage, and/or control properties."

6. Hosts, and not Airbnb, decide whether to list their properties, when to make them available on their calendars, and only hosts set their prices and material terms and decide with whom and when to transact. Airbnb has no control over the physical properties, does not have the right to book or resell or remarket any accommodations for any host, and does not set or otherwise determine the rental price of the accommodations or other terms like security deposits or cleaning fees.

7. Hosts create, and are responsible for, the content that is contained in each individual rental advertisement. Hosts provide the descriptions of their accommodations, set the length of stay of any particular rental, determine the prices and whether the entire property or a portion thereof is available for booking, and decide when and with whom they want to enter into agreements. Airbnb does not control the content that is created by hosts and is not responsible for it. Airbnb makes available to hosts and guests a variety of ancillary services, such as a payment processing platform and liability protection programs, but it is hosts themselves, not Airbnb, who exercise control over the content and settings of each rental listing. As the Terms of Service (Exhibit 1) state, hosts "alone are responsible for any and all Listings and Member Content [they] post."

8. Airbnb advises hosts and guests to be aware of applicable local laws in listing properties and making reservations on the site. For example, the Terms of Service (Exhibit 1) reference parties' "OBLIGATIONS TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS," and state that:

> IN PARTICULAR, HOSTS SHOULD UNDERSTAND HOW THE LAWS WORK IN THEIR RESPECTIVE CITIES. SOME CITIES HAVE LAWS THAT RESTRICT THEIR ABILITY TO HOST PAYING GUESTS FOR SHORT PERIODS…. IN MANY CITIES, HOSTS MUST REGISTER, GET A PERMIT, OR OBTAIN A LICENSE BEFORE LISTING A PROPERTY OR ACCEPTING GUESTS. CERTAIN TYPES OF SHORT-TERM BOOKINGS MAY BE PROHIBITED ALTOGETHER.

9. As a customer-education measure and in order to facilitate better informed decision-making by hosts and guests, Airbnb also provides information about the rules and

regulations of particular cities in an effort to help ensure that hosts are fully aware of the relevant laws where they list rentals.

10. Airbnb maintains a "Responsible Hosting" section on the Airbnb website. Airbnb provides a variety of general information for hosts about applicable laws and regulations that they should follow, including safety guidelines and business regulations. A true and correct copy of the "Responsible Hosting" website, available at https://www.airbnb.com/help/responsible-hosting, is attached hereto as Exhibit 2.

11. Airbnb has a specific page from its "Responsible Hosting" website for San Francisco that provides information about the City's laws and regulations. The page states that with respect to "Short-Term Rental Registration," that "San Francisco requires hosts to register by scheduling an appointment with the Planning Department and paying a fee of $50." The page further informs hosts that "You may include your short-term rental permit number on your listing" in the "'Other Things to Note' field" by "typ[ing] in your permit number following the acceptable permit format for San Francisco. The format is: STR-xxxxxxx. An example would be: STR-1234567." A true and correct copy of the Airbnb webpage entitled "San Francisco, CA," available at https://www.airbnb.com/help/article/871/san-francisco--ca, is attached hereto as Exhibit 3.

12. As part of its Community Compact, Airbnb is committed to helping provide solutions tailored to the needs of cities like San Francisco with historic housing challenges. For example, Airbnb discretionarily removes listings from its website that Airbnb believes may be offered by hosts with multiple entire home listings or are offered by unwelcome commercial operators. If Airbnb is alerted to shared spaces or private rooms that appear to be operated by unwelcome commercial operators or that do not reflect the community vision, it generally will remove such listings. Within the last year, Airbnb has removed numerous listings from its platform in San Francisco.

13. A true and correct copy of the Airbnb webpage describing its Community Compact is attached hereto as Exhibit 4, available at https://www.airbnbaction.com/wp-content/uploads/2015/11/Airbnb-Community-Compact.pdf. A true and correct copy of the Airbnb

webpage describing its efforts to remove San Francisco listings from its website that Airbnb believes are offered by hosts with multiple entire home listings or are offered by unwelcome commercial operators, available at https://www.airbnbaction.com/airbnb-in-san-francisco-by-the-numbers/, is attached hereto as Exhibit 5.

14. I understand that the amendments to Chapter 41A of the San Francisco Administrative Code passed by the Board of Supervisors on June 14, 2016 ("the Ordinance") require, among other things, that websites such as Airbnb "verify" that each listing on the website has a valid registration number issued by the City and is listed on the City's registry of short-term rentals, prior to publishing the listing. According to the Ordinance, platforms must comply with this requirement by providing the verified registration number on each listing themselves, or by sending the verified registration number, residential street unit address, and host name to the City by email prior to posting the listing on the platform. The publishing of a listing where the valid registration number has not been verified subjects the website to administrative and civil penalties of up to $1,000 per day, and criminal penalties of up to six months in prison.

15. It is my understanding that the Ordinance applies to all active and new listings on websites like Airbnb. For each of these listings, Airbnb would need to verify the existence of a valid registration number. Presently, there are approximately 9,600 listings on Airbnb in San Francisco, and in the normal course of business, hosts add new listings, change the status of listings and deactivate listings continually. Accordingly, the burden to Airbnb of complying with the Ordinance's new requirements is not solely measured by the static number of listings at a single point in time.

16. The City has not proposed any procedures or plan for how compliance with this verification process could be achieved. Presumably, it would require a manual process of obtaining registration number information from hosts on the Airbnb platform, or if they do not provide it, some other source, and then verifying that information with the City prior to publishing the listing. Upon verifying a registration number for each of these listings, under the provisions in the Ordinance Airbnb would then either need to itself publish the registration number to its

DECLARATION OF DAVID OWEN

website or send to the City for each listing the registration number, residential street unit address, and host name, prior to publishing the listing.

17. Even if Airbnb established a dedicated team of employees devoted fulltime to complying with these requirements, the City's failure to establish a viable verification process leaves substantial uncertainty surrounding how such a team would operate, and whether verification for all listings could be accomplished. Airbnb would not only have to expend substantial resources on the verification process, it would have to fundamentally redesign how the Airbnb website operates for hosts creating and managing their listings. Privacy issues also would be implicated in the publishing and/or sharing of information with the City. Establishing, testing and implementing such processes to check thousands of listings would likely take a significant period of time and resources.

18. Complying with the Ordinance would be highly disruptive to the operation of the Airbnb website. Given the manual processes required, to avoid the significant criminal and civil penalties discussed above, Airbnb very likely would need to remove thousands of San Francisco listings from its website upon the effective date of the Ordinance (which I understand to be July 24, 2016). This would include the removal of listings that may otherwise be in compliance with San Francisco law as Airbnb will not have the ability to confirm the validity of the listing's registration number prior to the effective date of the law. This process itself could not be swiftly accomplished.

19. Moreover, the City's current burdensome and outdated registration process means that listings could be removed for extensive periods of time due to delay in the registration process, or even removed unnecessarily or wrongly where the listing is registered but that is not yet reflected in the City's systems. Indeed, at a recent hearing on the Ordinance, Supervisor Scott Wiener described the current registration process as "cumbersome," particularly for hosts that are only engaging in short-term rentals for a few days or weeks a year. Late amendments were added to the Ordinance requiring the City to work on improvements to the registration process. Permitting the City to enforce the Ordinance against platforms now while the City is changing the registration process not only increases the level of confusion but also the burden of enforcement.

-5-
DECLARATION OF DAVID OWEN

20. The removal of thousands of listings from the Airbnb website, including those that otherwise may comply with the law, would cause a significant disruption to Airbnb's operations and would substantially injure the significant business goodwill that Airbnb has generated from the hosts and guests who use its platform. Airbnb has cultivated a significant amount of trust and goodwill with consumers who have come to rely on its platform for their listings and lodging accommodations. If Airbnb is forced to remove a substantial number of listings, that trust and goodwill for potentially thousands of consumers will likely be irreparably lost, and such customers may never return to Airbnb even if the Ordinance is ultimately ruled invalid.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 24th day of June, 2016, in San Francisco, California.

By: _____

DAVID OWEN