THOMAS R. BURKE (CA State Bar No. 141930)
SANJAY M. NANGIA (CA State Bar No. 264986)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:     (415) 276-6500
Facsimile:     (415) 276-6599
Email:         sanjaynangia@dwt.com
               thomasburke@dwt.com

JAMES C. GRANT (*pro hac vice* application filed concurrently)
  jamesgrant@dwt.com
AMBIKA K. DORAN (*pro hac vice* application filed concurrently)
  ambikadoran@dwt.com
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
Telephone:  (206) 622-3150
Facsimile:  (206) 757-7700

Attorneys for HomeAway.com, Inc.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AIRBNB, INC., <br><br> Plaintiff, <br><br> HOMEAWAY.COM, INC. <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, <br><br> Defendant. | Case No. 3:16-cv-03615 <br><br> **COMPLAINT IN INTERVENTION TO DECLARE INVALID AND ENJOIN ENFORCEMENT OF AMENDMENTS TO SAN FRANCISCO ADMINISTRATIVE CODE §§ 41A.5(e), 41A.5(g)(4)(C) AND 41A.7(b)(2)-(3)** |

For its Complaint in Intervention, Plaintiff-Intervenor HomeAway.com, Inc. ("HomeAway") alleges as follows:

COMPLAINT IN INTERVENTION
Case No. 3:16-cv-03615
DWT 29945586v6 0098221-000004

# 1. INTRODUCTION

1. Pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, HomeAway seeks to enjoin enforcement of a recently enacted San Francisco ordinance that impermissibly burdens speech on the Internet and threatens the privacy of online speakers, in violation of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230; the First and Fourteenth Amendments and Commerce Clause of the United States Constitution; and the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 et seq.

2. Since February 2015, the City and County of San Francisco ("City") has allowed permanent residents ("Listing Owners") to rent out residential properties for short periods if they satisfy certain requirements, including that they register their properties with the City, which assigns each property a registration number and lists the property on a registry. S.F. Admin. Code § 41A.5(g)(1)(E) & (3)(A). The law requires Listing Owners to include registration numbers in any "listing" on a "Hosting Platform," defined as an entity that provides "a means through which" Listing Owners offer their unit for rent, "usually… through a website." *Id.* § 41A.4.

3. HomeAway operates numerous vacation rental websites that allow individuals to search for and rent properties from Listing Owners. It asks the Court to enjoin enforcement of an ordinance that could require it, as a Hosting Platform, to verify that a residential property featured in a listing is on the registry and has a "valid registration number" (the "Ordinance").[1] If a Hosting Platform fails to abide by this requirement, it faces criminal prosecution, jail time, and significant fines. The Ordinance is invalid for several reasons.

4. First, the Ordinance violates Section 230 of the CDA. Designed to promote uninhibited speech on the Internet and foster electronic commerce, Section 230 prohibits interactive computer service providers from being "treated as the publisher or speaker of any information" provided by a third party and expressly preempts inconsistent state laws. 47 U.S.C. § 230(c)(1) & (e)(3). The Ordinance violates Section 230 because it requires Hosting Platforms to screen each listing before publishing it, even though the listings are provided by third parties.

---

[1] San Francisco Ordinance No. 104-16, File No. 160423 (effective July 24, 2016, amending Chapter 41A of the San Francisco Administrative Code), a copy of which is attached as Exhibit A.

2
COMPLAINT IN INTERVENTION
Case No. 3:16-cv-03615
DWT 29945586v6 0098221-000004

5. Second, the Ordinance violates the First and Fourteenth Amendments to the United States Constitution. The Ordinance is a content-based restriction and therefore the City bears the burden of establishing, at a minimum, that the Ordinance furthers a substantial governmental interest and is narrowly tailored to achieve its purpose. The Ordinance fails to do this because, as the City has itself acknowledged, other means exist to encourage compliance with the City's short-term residential rental laws. In addition, the First Amendment forbids the government from imposing criminal liability or civil penalties on publishers for publishing content absent proof the publisher had knowledge that the specific content was illegal. The Ordinance contains no *mens rea* requirement and, by its terms, the City can impose criminal liability and penalties on Hosting Platforms even if properties in fact are registered or Hosting Platforms have no knowledge that a particular property has not been registered. Further, the Ordinance fails to adequately inform Hosting Platforms of their obligations under the Ordinance and what speech the Ordinance proscribes and is therefore unconstitutionally vague.

6. Third, the Ordinance violates the SCA. Designed to protect the privacy of stored Internet communications, the SCA prohibits the government from compelling services like HomeAway to disclose customer information without a subpoena or other legal process. The Ordinance directly conflicts with this requirement because it requires no such process and yet mandates that Hosting Platforms disclose such information to the City.

7. Fourth, the Ordinance violates the Dormant Commerce Clause. It attempts to impose a regulation that would subject HomeAway and other online service providers to unique requirements in San Francisco, which if permissible, creates a risk of inconsistent legislation across all fifty states (and indeed, across different municipalities in this state).

8. If this Court does not enjoin enforcement of the Ordinance, HomeAway and other service providers throughout the nation—which cannot possibly review the millions of third-party posts processed by their services in time to make listing them practicable—will face a daunting choice: either block most or all third-party content or risk criminal charges and penalties. The Ordinance will eliminate or significantly impair online forums for speech and cause irreparable

3

harm to online providers and the public, who will lose lawful avenues for free expression on the Internet.

## I. PARTIES

9. Plaintiff HomeAway.com, Inc. is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business in Austin, Texas.

10. Defendant City and County of San Francisco ("City") is a municipal corporation.

## II. JURISDICTION AND VENUE

11. This Court has jurisdiction of this action under 28 U.S.C. § 1331 because HomeAway alleges a violation of 42 U.S.C. § 1983.

12. This Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because the action presents an actual case or controversy within the Court's jurisdiction.

13. Venue is proper in this Court under 28 U.S.C. § 1391 because the defendant resides and is located in this judicial district and the State of California, and because a substantial part of the events giving rise to HomeAway's claims occurred in this judicial district.

14. Pursuant to Local Rule 3-2, the Clerk should assign this action to the San Francisco Division because the action arises in San Francisco. A substantial part of the events giving rise to HomeAway's claims for relief occurred in San Francisco.

## III. FACTUAL ALLEGATIONS

### HomeAway

15. Since 2006, HomeAway has operated an online vacation property marketplace that allows a Listing Owner to list properties available for short-term rental to individuals who use HomeAway's websites to search for and find available properties that meet their desired criteria ("Travelers"), including location, size, and price.

16. HomeAway operates three short-term rental websites directed principally to individuals in the United States: HomeAway.com, VRBO.com, and VacationRentals.com. These websites together represent one of the largest vacation rental distribution networks in the world.

DAVIS WRIGHT TREMAINE LLP

17. Through HomeAway's websites, Travelers can search for fully furnished, privately owned residential properties, including homes, condominiums, villas, cabins, houseboats, and other properties that Listing Owners rent to the public on a nightly, weekly, or monthly basis. HomeAway's websites bring together millions of Travelers seeking short-term rentals with Listing Owners of more than one million vacation rental properties in all 50 states and 190 countries.

18. Listing Owners provide the content for the listings they post on the HomeAway websites, including information about the property, amenities, and rental rates and terms. Listings are posted to the HomeAway websites almost immediately after Listing Owners provide them.

19. Travelers arrange reservations directly with Listing Owners. Travelers who find a property that meets their requirements may contact Listing Owners directly by phone or through form-based communication tools on HomeAway's websites. Listing Owners decide to whom they rent, when they wish to rent, and how and when they wish to be paid. Travelers pay Listing Owners directly or through third-party payment processors.

20. Listing Owners pay for HomeAway's services in one of two ways. First, Listing Owners can pay for the listings by buying subscriptions to list their properties on HomeAway's websites. Second, and since late 2013, Listing Owners may pay for their listings on a pay-per-booking basis, paying a percentage of the value of a confirmed booking (starting at 8 percent).

21. HomeAway users agree "they are responsible for and agree to abide by all laws, rules, ordinances, or regulations applicable to the listing of their rental property and the conduct of their rental business, including but not limited to any and all laws, rules, ordinances, regulations or other requirements relating to taxes, credit cards, data and privacy, permits or license requirements, zoning ordinances, safety compliance and compliance with all anti-discrimination and fair housing laws, as applicable."[2]

**The Ordinance**

22. Until February 2015, short-term residential rentals in San Francisco were unlawful. In the fall of 2014, the Board of Supervisors passed an ordinance that allows Listing Owners to

---

[2] *See* HomeAway Terms and Conditions ¶ 1, https://www.homeaway.com/info/about-us/legal/terms-conditions (last visited July 6, 2016).

5
COMPLAINT IN INTERVENTION
Case No. 3:16-cv-03615
DWT 29945586v6 0098221-000004

rent out their primary residences for less than thirty days at a time so long as they satisfy certain requirements. S.F. Admin. Code § 41A.5(g). As part of these requirements, Listing Owners must register their units on a registry maintained by the City's Planning Department, collect transient occupancy taxes, and carry liability insurance. *Id.* § 41A.5(g)(1)(B)-(D). Listing Owners may rent their properties for up to 90 days in a calendar year if they are absent during the stay ("unhosted" rentals). *Id.* § 41A.(g)(1)(A). There is no cap on the number of days a Listing Owner may rent her property for stays when she is present ("hosted" rentals). *See id.*

23. The February 2015 ordinance also imposed requirements on the listing of residential properties on "Hosting Platforms," defined as "[a] person or entity that provides a means through which an Owner may offer a Residential Unit for Tourist or Transient Use," which is "usually, though not necessarily, provided through an online platform." S.F. Admin. Code § 41A.4. Listing Owners must "include[] the Department-issued registration number on any Hosting Platform listing or other listing offering the Residential Unit for use as a Short-Term Residential Rental." *Id.* § 41A.5(g)(1)(F).

24. In May 2015, the Planning Department released a report indicating the City had received 455 applications to register residential units on the registry, even though there were an estimated 4,000 to 5,000 short-term rental listings on the website of Airbnb, Inc., HomeAway's largest competitor in San Francisco.[3]

25. In July 2015, the Board of Supervisors considered two proposals to further regulate and restrict short-term residential rentals. One proposal, sponsored by Supervisor David Campos, would have, among other things, prohibited Listing Owners from renting their units for more than 75 days in a calendar year, regardless whether the stay was hosted or not; required Hosting Platforms to verify a residential unit is on the City registry and remove listings once a unit has been rented for more than 75 days in a calendar year; expanded a private right of action against Hosting Platforms; and imposed criminal penalties against Hosting Platforms that violate the short-term rental laws.[4] A second proposal, sponsored by Supervisor Mark Farrell and Mayor Ed

---

[3] City and County of San Francisco Planning Department, Executive Summary, Amendments Relating to Short-Term Rentals (Apr. 16, 2015), http://commissions.sfplanning.org/cpcpackets/2014-001033PCA.pdf.
[4] San Francisco Ordinance No. 130-15, File No. 150295 (proposed July 14, 2015), https://sfgov.legistar.com/View.ashx?M=F&ID=3864067&GUID=5E786999-BE03-4D6F-9757-2A44656074D6.

Lee, sought to expand the private right of action to enforce Chapter 41A, required hosts to file quarterly reports with the Planning Department, and directed the Mayor to create an Office of Short-Term Residential Rental Administration and Enforcement ("OSTR").[5] The Board passed the Farrell-Lee proposal, and the Mayor approved it July 30, 2015.[6]

26. The Mayor announced the establishment of the OSTR in July 2015, calling it a "one-stop" shop for registration of properties to be used for short-term rentals and enforcement of the City's short-term rental ordinances.[7] The Mayor and Supervisor Farrell explained that short-term rentals benefit residents by helping them "afford to stay in our City because they rent out their home or spare bedroom occasionally," but the City would pursue enforcement against "the most egregious violators" of the law.[8]

27. To register their properties, Listing Owners must complete a two-step process. First, they must obtain a San Francisco Business Registration Certificate from the Treasurer & Tax Collector.[9] Second, they must schedule an in-person appointment with the OSTR and present a completed application, proof of residency, their Business Registration Certificate, documentation of liability insurance of at least $500,000, and documentation that their property does not violate any City code. Thereafter, they must submit quarterly reports of all stays in their units.[10] Listing Owners, unless exempted, must also obtain a Certificate of Authority from the Treasurer & Tax Collector and file monthly reports documenting the amount of rent received and transient occupancy tax due.[11] In addition, earlier this year, the City's Assessor-Recorder announced that Listing Owners must pay taxes on physical assets, meaning they must report the cost and acquisition year of "each piece of furniture, equipment, and supplies used in renting your

---

[5] San Francisco Ordinance No. 130-15, File No. 150653 (proposed July 14, 2015), https://sfgov.legistar.com/View.ashx?M=F&ID=3891688&GUID=F126F2C4-7859-4999-A5D4-D606BEB9CF15.
[6] San Francisco Ordinance No. 130-15 (passed July 30, 2015), https://sfgov.legistar.com/LegislationDetail.aspx?ID=2262359&GUID=0AD10E60-D561-4738-A67D-97A628A22B94&Options=ID|Text|&Search=short-term.
[7] News Release, Mayor Lee Announces New "One-Stop Shop" Office of Short-Term Rental Administration & Enforcement (July 2, 2015), http://www.sfmayor.org/index.aspx?recordid=911&page=846.
[8] *Id.*
[9] City and County of San Francisco Planning Department, Office of Short-Term Rental Registry & FAQs, http://sf-planning.org/office-short-term-rental-registry-faqs (last visited July 6, 2016).
[10] *Id.*
[11] City and County of San Francisco Treasurer & Tax Collector, Transient Occupancy Tax (TOT) Frequently Asked Questions for Hosts, Website Companies and Merchants of Record, http://sftreasurer.org/tot_host_website_merchant_faq (last visited July 6, 2016).

7
COMPLAINT IN INTERVENTION
Case No. 3:16-cv-03615
DWT 29945586v6 0098221-000004

residence, including kitchen appliances, laundry machines, entertainment units, linens, dishes, utensils, artwork, and any other property that you provide to your renters as part of the rental activity," as well as physical assets used to operate the rental activity, "including cleaning supplies, computer equipment, and office equipment such as desks, chairs, and file cabinets."[12]

28. Dissatisfied with the defeat of the Campos proposal, an organization called Share Better gathered enough signatures to place a similar measure on the San Francisco ballot in November 2015.[13] Like Campos's proposal, Proposition F would have prohibited Listing Owners from renting their units for more than 75 days in a calendar year, allowed interested parties to sue Hosting Platforms, and made it a misdemeanor for a Hosting Platform to publish a listing that does not include the unit's registration number. Voters overwhelmingly rejected the measure.[14]

29. A report requested by Supervisor Campos and issued April 7, 2016, by the Board of Supervisors' Budget and Legislative Analyst's Office stated the OSTR had received 1,647 registration applications as of March 2016, up from 579 in May 2015, and estimated this represented 31 percent of Listing Owners.[15] The report also stated the OSTR had pursued 322 enforcement cases resulting in 79 notices of violations and $680,000 in assessed penalties. According to the report, the OSTR had developed "new strategies to proactively identify non-compliant hosts," including by reviewing listings of short-term rentals online.[16] Further, the report noted that there was a "significant increase" in the number of registration applications after November 2015.[17]

30. In June 2016, the Board of Supervisors passed the Ordinance that HomeAway challenges in this action. The Ordinance provides that "[p]rior to providing reservation and

---

[12] City and County of San Francisco Office of the Assessor-Recorder, Short-Term Rental Business Personal Property Taxation Frequently Asked Questions (FAQ), http://www.sfassessor.org/sites/default/files/2016%20FAQ%20for%20Short%20Term%20Rentals__FINAL%20%282016.3.17%29.pdf.

[13] Carolyn Said, *Prop. F: S.F. voters reject measure to restrict Airbnb rentals*, SFGate, Nov. 4, 2015, http://www.sfgate.com/bayarea/article/Prop-F-Measure-to-restrict-Airbnb-rentals-6609176.php. *See also* City and County of San Francisco Ordinance Amending the Administrative Code with respect to Short-Term Residential Rentals (May 6, 2015), http://sfgov2.org/ftp/uploadedfiles/elections/candidates/Nov2015/ShortTermRentals_Text.pdf (text of Prop. F).

[14] *Id.*

[15] City and County of San Francisco Board of Supervisors, Budget and Legislative Analyst's Office, "Short-Term Rentals 2016 Update," at 17 (Apr. 7, 2016), http://www.sfbos.org/Modules/ShowDocument.aspx?documentid=55575.

[16] *Id.* at 21.

[17] *Id.* at 17.

COMPLAINT IN INTERVENTION
Case No. 3:16-cv-03615
DWT 29945586v6 0098221-000004

payment services for a listing of a Residential Unit within the City to be rented for Tourist or Transient Use, a Hosting Platform shall verify with the Office of Short-Term Residential Rental Administration and Enforcement that the Residential Unit is listed on the Registry and has a valid registration number." Ordinance § 41A.5(g)(4)(C).

31. The Ordinance further provides that "Hosting Platforms shall comply with this subsection (g)(4)(C) by: "(i) Providing the verified registration number on each listing in the area of the listing dedicated to information verified or compiled by the Hosting Platform about the host…." or "(ii) Sending the verified registration number, Residential Unit street address (including any unit number), and host name to the Office of Short-Term Residential Rental Administration and Enforcement by electronic mail prior to posting the listing on the platform." Ordinance § 41A.5(g)(4)(C)(i)(ii). The Ordinance does not explain how a Hosting Platform can ascertain whether a property has a "valid registration number" or "verify" a registration number.

32. The Ordinance imposes criminal and civil liability and penalties for violations of the verification requirement discussed above. The Ordinance provides that violations constitute a criminal misdemeanor, punishable by up to $1,000, six months in prison, or both, Ordinance § 41A.5(e). It also provides that Hosting Platforms "may be liable for civil penalties of not more than $1,000 per day for the period of unlawful activity," *id.* § 41A.5(d)(3) & (g)(4)(D); and may be subject to administrative penalties of up to "twelve times the standard hourly rate of $121," i.e., $1452, "for each identified failure… per day from the day the unlawful activity commenced until such time as the unlawful activity terminates," *id.* § 41A.6(d)(1)(C).

33. The Ordinance also requires the OSTR to "monitor Hosting Platform listings to ensure that Hosting Platforms are only listing Residential Units that are listed on the Registry." Ordinance § 41A.7(b). It must "immediately provide notice to Hosting Platforms by electronic mail of all listings that do not have valid registration numbers or are otherwise not in compliance with this Chapter 41A." *Id*. § 41A.7(b)(1). Hosting Platforms must "confirm[], for each listing identified in the notice, that the listing has a valid registration number and provid[e] that number and any other requested information relevant to determining whether the listing complies with the provisions of this Chapter 41A (including unit address and host information)." *Id*. § 41A.7(b)(2)-

9

(3).  "For each listing that a Hosting Platform fails to provide the requested information within one City business day," "the Hosting Platform shall be subject to the administrative penalties and enforcement provisions" of Chapter 41A.  *Id*. § 41A.7(b)(3).

34. City officials have repeatedly acknowledged the Ordinance may conflict with and be preempted by the CDA.  At a June 2, 2016, hearing of the Board of Supervisors Government Audit and Oversight Committee, Deputy City Attorney John Givner stated that the City Attorney had drafted the Ordinance to "minimize" any conflict with the CDA.[18]  Following passage of the Ordinance, the Mayor's spokesperson said that the "mayor remains concerned that this law will not withstand a near-certain legal challenge and will in practice do nothing to aid the city's registration and enforcement of our short-term rental laws."[19]

35. City officials have also acknowledged that they have other means to boost compliance with short-term residential rental laws.

36. For example, the City created the OSTR specifically to enforce the laws.  In fiscal year 2015-16, the Office had a budget of $880,106.  It is staffed by six full-time employees tasked with identifying hosts who are out of compliance with existing regulations, conducting investigations of potential violations, issuing notices of violations, and holding hearings requested by hosts who have been issued notices of violations.[20]

37. In addition, the Ordinance requires the OSTR to "promulgate rules and regulations to simplify and streamline the application process and to minimize the time between the filing of applications and their final approval."  Ordinance § 41A.7(a).  As the City admits, the current two-step process "might deter or confuse otherwise compliant short-term rental hosts" and streamlining the process "would remove what could be one of the most significant barriers to compliance" and free more OSTR staff time for identifying violations.[21]

---

[18] Video, *Hearing of the San Francisco Board of Supervisors Government Audit and Oversight Committee* (June 2, 2016), http://sanfrancisco.granicus.com/MediaPlayer.php?view_id=11&clip_id=25511.
[19] Emily Green, *SF supes crack down on unregistered short-term rentals*, SFGate, June 7, 2016, http://www.sfgate.com/politics/article/Supervisors-No-unregistered-hosts-on-short-term-7969444.php.
[20] City and County of San Francisco Board of Supervisors, Budget and Legislative Analyst's Office, "Short-Term Rentals 2016 Update," at 17 (Apr. 7, 2016), http://www.sfbos.org/Modules/ShowDocument.aspx?documentid=55575.
[21] *Id.* at 26-27.

10
COMPLAINT IN INTERVENTION
Case No. 3:16-cv-03615
DWT 29945586v6 0098221-000004

38. The Ordinance was scheduled to take effect July 24, 2016. The City has agreed to stay enforcement of the Ordinance pending this Court's resolution of a motion for preliminary injunction filed by Airbnb, which HomeAway expects to join.

39. On information and belief, the City has not satisfied the requirements to enact the Ordinance. By way of example, on information and belief, the City has not obtained the necessary approval required by the State's Coastal Act, Cal. Pub. Res. Code § 30500 et seq. The Ordinance may therefore be void for this reason alone.

40. The Ordinance is vague. For example, it applies to Hosting Platforms that provide "reservation and payments services" but does not define those terms. The Ordinance may not apply to parts or all of HomeAway's business, given that Travelers and Listing Owners arrange reservations and Travelers make payments directly to Listing Owners or through third-party payment processors. The Ordinance also fails to define "verify" or "valid," rendering ambiguous the obligations placed on HomeAway before it may publish listings.

41. The Ordinance imposes a significant burden on HomeAway. At a minimum, for each of thousands of listings posted by their users, an employee must locate a registration number and "verify" the number is "valid," although it is unclear how this is to be done. HomeAway must then publish the number in a listing or send the number, street address, and host name to the City. This would significantly disrupt HomeAway's business, as the process by which a Listing Owner posts a listing is generally automated.

42. HomeAway and numerous other online service providers will suffer immediate and irreparable harm under the Ordinance, because the threat of criminal prosecution under the law will require it to undertake the impossible task to review and censor third-party content or block content altogether.

## IV. CLAIMS FOR RELIEF

**CLAIM I: VIOLATION OF AND PREEMPTION UNDER THE COMMUNICATIONS DECENCY ACT, 47 U.S.C. § 230, PURSUANT TO 42 U.S.C. § 1983**

43. HomeAway incorporates all previous paragraphs as if fully set forth herein.

COMPLAINT IN INTERVENTION
Case No. 3:16-cv-03615
DWT 29945586v6 0098221-000004

44. HomeAway is an "interactive computer service" within the meaning of 47 U.S.C. § 230 because it operates interactive websites.

45. The Ordinance violates HomeAway's rights under 47 U.S.C. § 230(c)(1) because enforcement of the Ordinance would treat it as the publisher or speaker of information provided by other information content providers, i.e., Listing Owners.

46. The Ordinance is a "State … law that is inconsistent with" Section 230, in direct violation of 47 U.S.C. § 230(e)(3).

47. The Ordinance violates and is preempted by Section 230, and it therefore should be enjoined and declared invalid.

### CLAIM II: VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION, PURSUANT TO 42 U.S.C. § 1983

48. HomeAway incorporates all previous paragraphs as if fully set forth herein.

49. The Ordinance is invalid under the First and Fourteenth Amendments because it is a content-based restriction that impermissibly chills a substantial amount of protected speech and is not narrowly tailored to achieve a substantial governmental interest of the City.

50. The Ordinance is invalid under the First and Fourteenth Amendments of the United States Constitution because it purports to impose strict criminal liability on online service providers such as HomeAway for third-party content, in the absence of proof of scienter.

51. The Ordinance is invalid under the First and Fourteenth Amendments because it fails to give persons of ordinary intelligence adequate notice of what speech it proscribes and is thus unconstitutionally vague.

### CLAIM III: VIOLATION OF AND PREEMPTION UNDER THE STORED COMMUNICATIONS ACT, 18 U.S.C. § 2701 ET SEQ., PURSUANT TO 42 U.S.C. § 1983

52. HomeAway incorporates all previous paragraphs as if fully set forth herein.

53. HomeAway is a provider of electronic communication services within the meaning of the SCA because it provides to its users "the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). HomeAway is also a provider of remote computing services because it provides to users "computer storage or processing services by means of an electronic communications system." *Id.* § 2711(2).

12

54. Under the SCA, "a provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service … to any governmental entity," without a subpoena or other legal process. 18 U.S.C. §§ 2702(a)(3), (c)(1); 2703(c).

55. The Ordinance violates, conflicts with, and is preempted by the SCA because it requires HomeAway to "divulge a record or other information pertaining to a subscriber to or customer of such service" to a "governmental entity," without a subpoena or other legal process. 18 U.S.C. §§ 2702(a)(3), (c)(1); 2703(c). *See* Ordinance §§ 41A.5(g)(4)(C)(ii), § 41A.7(b)(2)-(3).

### CLAIM IV: VIOLATION OF THE COMMERCE CLAUSE OF THE UNITED STATES CONSTITUTION, PURSUANT TO 42 U.S.C. 1983

56. HomeAway incorporates all prior paragraphs as if fully set forth herein.

57. The Ordinance violates the Commerce Clause of the United States Constitution because it seeks to apply San Francisco law in a manner that constitutes an unreasonable and undue burden on interstate commerce that is excessive in relation to any local benefit conferred on the State of California and is likely to subject parties to inconsistent state regulations.

### CLAIM IV:  DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201

58. HomeAway incorporates all previous paragraphs as if fully set forth herein.

59. This action presents an actual case or controversy between HomeAway and the City concerning the validity and enforceability of the Ordinance.

60. Because the Ordinance violates Section 230, 47 U.S.C. § 230, the First and Fourteenth Amendments and Commerce Clause of the United States Constitution, and the Stored Communications Act, 18 U.S.C. § 2701 et seq., HomeAway asks for a declaration pursuant to 28 U.S.C. § 2201 that the law is invalid and unenforceable.

### V.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff-Intervenor HomeAway.com, Inc. respectfully requests that the Court:

1. Declare that the portions of the Ordinance to be codified at San Francisco Administration Code §§ 41A.5(e), 41A.5(g)(4)(c) and 41A.7(b)(1)-(3) are preempted by 47 U.S.C. § 230 and 18 U.S.C. § 2701 et seq., and unconstitutional under the First and Fourteenth

13

1 Amendments and Commerce Clause of the United States Constitution, and therefore invalid and
unenforceable;

    2.    Preliminarily and permanently enjoin the City and its respective officers, agents, servants, employees, and attorneys, and those persons in concert or participation with them from taking any actions to enforce the portions of the Ordinance to be codified at San Francisco Administration Code §§ 41A.5(e), 41A.5(g)(4)(c) and 41A.7(b)(1)-(3);

    3.    Award HomeAway its reasonable costs and attorneys' fees under 42 U.S.C. § 1988; and

    4.    Award HomeAway other and further relief as the Court deems just and proper.

DATED this 12th day of July, 2016.

        Respectfully submitted,

        DAVIS WRIGHT TREMAINE LLP

        By:     */s/ Sanjay M. Nangia*
            Thomas R. Burke
            Sanjay M. Nangia
            505 Montgomery Street, Suite 800
            San Francisco, California 94111
            Telephone: (415) 276-6500
            Facsimile: (415) 276-6599
            thomasburke@dwt.com
            sanjaynangia@dwt.com

            James C. Grant (*pro hac vice* application filed concurrently)
            Ambika K. Doran (*pro hac vice* application filed concurrently)
            1201 Third Avenue, Suite 2200
            Seattle, Washington 98101
            Telephone: (206) 757-8096
            Facsimile: (206) 757-7096
            jimgrant@dwt.com
            ambikadoran@dwt.com

        Attorneys for Plaintiff-Intervenor HomeAway.com, Inc.