THOMAS R. BURKE (CA State Bar No. 141930)
SANJAY M. NANGIA (CA State Bar No. 264986)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone:    (415) 276-6500
Facsimile:    (415) 276-6599
Email:        sanjaynangia@dwt.com
              thomasburke@dwt.com

JAMES C. GRANT (*pro hac vice*)
 jamesgrant@dwt.com
AMBIKA K. DORAN (*pro hac vice*)
 ambikadoran@dwt.com
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Telephone: (206) 622-3150
Facsimile: (206) 757-7700

Attorneys for HomeAway.com, Inc.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AIRBNB, INC. and HOMEAWAY.COM, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, <br><br> Defendant. | Case No. 3:16-cv-03615-JD <br><br> **HOMEAWAY'S FIRST AMENDED COMPLAINT TO DECLARE INVALID AND ENJOIN ENFORCEMENT OF AMENDMENTS TO SAN FRANCISCO ADMINISTRATIVE CODE §§ 41A.5(e) AND 41A.5(g)(4)(C)-(E)** |

For its Amended Complaint, Plaintiff HomeAway.com, Inc. ("HomeAway") alleges as

follows:

## 1. INTRODUCTION

1.      Pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201,

HomeAway seeks to enjoin enforcement of a recently enacted San Francisco ordinance that

impermissibly burdens speech on the Internet and threatens the privacy of online speakers, in

1

AMENDED COMPLAINT
Case No. 3:16-cv-03615-JD
DWT 30300906v2 0098221-000004

DAVIS WRIGHT TREMAINE LLP

1  violation of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230; the First and

2  Fourteenth Amendments and Commerce Clause of the United States Constitution; and the Stored

3  Communications Act ("SCA"), 18 U.S.C. § 2701 et seq.

4        2.       Since February 2015, the City and County of San Francisco ("City") has allowed

5  permanent residents to rent out residential properties for short periods if they satisfy certain

6  requirements, including registering their properties with the City, which assigns each property a

7  registration number and lists the property on a registry. S.F. Admin. Code § 41A.5(g)(1)(E) &

8  (3)(A). The law requires owners to include registration numbers in any "listing" on a "Hosting

9  Platform," the latter of which is defined as operating "an online platform that allows" owners to

10  offer their unit for rent "through a website." *Id.* § 41A.4.

11        3.       Although the City's prior law imposed liability only on owners who violated the

12  short-term rental law, the Board of Supervisors in June 2016 adopted an ordinance that would

13  have required Hosting Platforms to verify a residential property featured in a listing is on the

14  registry and has a "valid registration number" (the "Original Ordinance"). After co-Plaintiff

15  Airbnb, Inc. ("Airbnb") and HomeAway filed this lawsuit, and in response to their claims, the

16  Board adopted a different ordinance (the "Ordinance"), which forbids Hosting Platforms from

17  providing "Booking Services" for short-term rentals that are not "lawfully registered" with the

18  City. S.F. Admin. Code § 41A.5(g)(4)(c).[1] The Ordinance is preempted and invalid for the same

19  reasons as the Original Ordinance.

20        4.       The Ordinance violates Section 230 of the CDA. Designed to promote free speech

21  and commerce on the Internet, Section 230 prohibits websites from being "treated as the publisher

22  or speaker of any information" provided by a third party and expressly preempts inconsistent state

23  laws. 47 U.S.C. § 230(c)(1) & (e)(3). The Ordinance violates Section 230 because it holds

24  Hosting Platforms responsible for listings provided by third parties and, like the Original

25  Ordinance, requires them to "verify" a listing is registered with the City.

26        5.       The Ordinance also violates the First and Fourteenth Amendments to the United

27  States Constitution. The Ordinance is a content-based restriction and therefore the City bears the

28

---

[1] A copy of the Ordinance is attached as Exhibit A.

2

AMENDED COMPLAINT
Case No. 3:16-cv-03615-JD
DWT 30300906v2 0098221-000004

DAVIS WRIGHT TREMAINE LLP

1   burden of establishing, at a minimum, the Ordinance directly advances and is narrowly tailored to

2   a substantial governmental interest.  The Ordinance cannot satisfy First Amendment scrutiny

3   because, as the City has acknowledged, it already has the means to enforce its short-term

4   residential rental laws.

5          6.      In addition, the First Amendment forbids the government from imposing criminal

6   or civil liability on publishers for expressive content absent proof the publisher had knowledge the

7   specific content was illegal.  The Ordinance contains no *mens rea* requirement and seeks to

8   impose strict liability on Hosting Platforms, in violation of the First Amendment.

9          7.      Further, the Ordinance is stated in such broad and vague terms that it fails to

10  adequately inform websites of their obligations or what speech or other conduct is proscribed.  The

11  Ordinance is unconstitutionally vague under the First Amendment.

12         8.      The Ordinance also violates the SCA.  Designed to protect the privacy of stored

13  Internet communications, the SCA prohibits the government from compelling services like

14  HomeAway to disclose customer information without a subpoena or other legal process.  The

15  Ordinance directly conflicts with this requirement because it requires no such process and yet

16  appears to mandate that Hosting Platforms disclose such information to the City for the purpose of

17  verifying that a rental is "lawfully registered."

18         9.      Finally, the Ordinance violates the Dormant Commerce Clause.  It attempts to

19  impose a regulation that would subject HomeAway and other online service providers to unique

20  requirements in San Francisco, which if permissible, creates a risk of inconsistent legislation

21  across all fifty states (and indeed, across different municipalities in this state).

22         10.     Absent relief from this Court, HomeAway and other online providers will be faced

23  with the burden of having to review all third-party listings to try to verify that they comply with

24  San Francisco laws, or the Hobson's choice of instead blocking most or all listings to avoid the

25  risk of criminal charges and civil penalties.  HomeAway and its users will incur irreparable harm

26  if the Ordinance takes effect.

27

28

3

# I.    PARTIES

11.    Plaintiff HomeAway.com, Inc. is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business in Austin, Texas.

12.    Defendant City and County of San Francisco ("City") is a municipal corporation.

# II.    JURISDICTION AND VENUE

13.    This Court has jurisdiction of this action under 28 U.S.C. § 1331 because HomeAway alleges a violation of 42 U.S.C. § 1983.

14.    This Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because the action presents an actual case or controversy within the Court's jurisdiction.

15.    Venue is proper in this Court under 28 U.S.C. § 1391 because the defendant resides and is located in this judicial district and the State of California, and because a substantial part of the events giving rise to HomeAway's claims occurred in this judicial district.

16.    Pursuant to Local Rule 3-2, the Clerk has properly assigned this action to the San Francisco Division because the action arises in San Francisco.  A substantial part of the events giving rise to HomeAway's claims for relief occurred in San Francisco.

# III.    FACTUAL ALLEGATIONS

## HomeAway

17.    Since 2006, HomeAway has operated an online forum that allows owners to list their properties for short-term rental and allows travelers to search for and find available properties that meet their criteria.

18.    HomeAway operates three short-term rental websites directed principally to individuals in the United States:  HomeAway.com, VRBO.com, and VacationRentals.com.  These websites together represent one of the largest vacation rental distribution networks in the world.

19.    Through HomeAway's websites, travelers can search for fully furnished, privately owned residential properties, including homes, condominiums, villas, cabins, houseboats, and other properties that listing owners rent to the public on a nightly, weekly, or monthly basis.

4

AMENDED COMPLAINT
Case No. 3:16-cv-03615-JD
DWT 30300906v2 0098221-000004

DAVIS WRIGHT TREMAINE LLP

1  HomeAway's websites bring together millions of travelers seeking short-term rentals with owners

2  of more than one million properties in all 50 states and 190 countries.

3      20.     Owners provide the content for the listings they post on the HomeAway websites,

4  including information about the property, amenities, and rental rates and terms.  Listings are

5  posted to the HomeAway websites almost immediately after listing owners provide them.

6      21.     Travelers arrange reservations directly with listing owners.  Travelers who find a

7  property that meets their requirements may contact owners directly by phone or through form-

8  based communication tools on HomeAway's websites.  Owners decide to whom they rent, when

9  they wish to rent, and how payments are made.  Travelers pay listing owners directly or through

10  third-party payment processors.  HomeAway is not a party to any rental transaction between

11  travelers and owners.

12      22.     Owners pay for HomeAway's services in one of two ways.  First, owners can buy

13  subscriptions to advertise their properties on HomeAway's websites for a specified period, such as

14  a year.  Second, owners may pay for their listings on a pay-per-booking basis, paying a percentage

15  of the cost of a confirmed booking.

16      23.     HomeAway users agree "they are responsible for and agree to abide by all laws,

17  rules, ordinances, or regulations applicable to the listing of their rental property and the conduct of

18  their rental business, including but not limited to any and all laws, rules, ordinances, regulations or

19  other requirements relating to taxes, credit cards, data and privacy, permits or license

20  requirements, zoning ordinances, safety compliance and compliance with all anti-discrimination

21  and fair housing laws, as applicable."[2]

**The Original Ordinance**

23      24.     Until February 2015, short-term residential rentals in San Francisco were unlawful.

24  In the fall of 2014, the Board of Supervisors passed an ordinance that allows listing owners to rent

25  out their primary residences for fewer than thirty days at a time so long as they satisfy certain

26  requirements.  S.F. Admin. Code § 41A.5(g).  Owners must register their units on a registry

27

28  ───────────────
[2] *See* HomeAway Terms and Conditions ¶ 1, https://www.homeaway.com/info/about-us/legal/terms-conditions (last visited July 6, 2016).

5

1    maintained by the City, collect transient occupancy taxes, and carry liability insurance. *Id.* §

2    41A.5(g)(1)(B)-(D).  Owners may rent their properties for up to 90 days in a calendar year if they

3    are absent during the stay ("unhosted" rentals). *Id.* § 41A.5(g)(1)(A).  There is no cap on the

4    number of days listing owners may rent their properties for stays when they are present ("hosted"

5    rentals). *See id.*

6          25.    The February 2015 ordinance also imposed requirements on the listing of

7    residential properties on "Hosting Platforms," defined at that time as "[a] person or entity that

8    provides a means through which an Owner may offer a Residential Unit for Tourist or Transient

9    Use," which is "usually, though not necessarily, provided through an online platform."  S.F.

10   Admin. Code § 41A.4.  Listing owners must "include[] the Department-issued registration number

11   on any Hosting Platform listing or other listing offering the Residential Unit for use as a Short-

12   Term Residential Rental."  *Id*. § 41A.5(g)(1)(F).

13         26.    In May 2015, the Planning Department released a report indicating the City had

14   received 455 applications to register residential units on the registry, even though there were an

15   estimated 4,000 to 5,000 short-term rental listings on the website of Airbnb, HomeAway's largest

16   competitor in San Francisco.[3]

17         27.    In July 2015, the Board of Supervisors considered two proposals to further regulate

18   and restrict short-term residential rentals.  One proposal, sponsored by Supervisor David Campos,

19   would have, among other things, prohibited owners from renting their units for more than 75 days

20   in a calendar year, regardless whether the stay was hosted; required Hosting Platforms to verify a

21   residential unit is on the City registry and remove listings once a unit has been rented for more

22   than 75 days in a calendar year; expanded a private right of action against Hosting Platforms; and

23   imposed criminal penalties against Hosting Platforms that violate the short-term rental laws.[4]  A

24   second proposal, sponsored by Supervisor Mark Farrell and Mayor Ed Lee, sought to expand the

25   private right of action to enforce Chapter 41A; require hosts to file quarterly reports with the

26   Planning Department; and direct the Mayor to create an Office of Short-Term Residential Rental

27   ───────────────
     [3] City and County of San Francisco Planning Department, Executive Summary, Amendments Relating to Short-Term
     Rentals (Apr. 16, 2015), http://commissions.sfplanning.org/cpcpackets/2014-001033PCA.pdf.
28   [4] San Francisco Ordinance No. 130-15, File No. 150295 (proposed July 14, 2015),
     https://sfgov.legistar.com/View.ashx?M=F&ID=3864067&GUID=5E786999-BE03-4D6F-9757-2A44656074D6.

AMENDED COMPLAINT
Case No. 3:16-cv-03615-JD
DWT 30300906v2 0098221-000004

1  Administration and Enforcement ("OSTR").[5]  The Board passed the Farrell-Lee proposal, and the

2  Mayor approved it July 30, 2015.[6]

3          28.      The Mayor announced the establishment of the OSTR in July 2015, calling it a

4  "one-stop" shop for registration of properties to be used for short-term rentals and enforcement of

5  the City's short-term rental ordinances.[7]  The Mayor and Supervisor Farrell explained that short-

6  term rentals benefit residents by helping them "afford to stay in our City because they rent out

7  their home or spare bedroom occasionally," but the City would pursue enforcement against "the

8  most egregious violators" of the law.[8]

9          29.      To register their properties, owners must complete a two-step process.  First, they

10  must obtain a San Francisco Business Registration Certificate from the Treasurer & Tax

11  Collector.[9]  Second, they must schedule an in-person appointment with the OSTR and present a

12  completed application, proof of residency, their Business Registration Certificate, documentation

13  of liability insurance of at least $500,000, and documentation that their property does not violate

14  any City code.  Thereafter, they must submit quarterly reports of all stays in their units.[10]  Listing

15  owners, unless exempted, must also obtain a Certificate of Authority from the Treasurer & Tax

16  Collector and file monthly reports documenting the amount of rent received and transient

17  occupancy tax due.[11]  In addition, earlier this year, the City's Assessor-Recorder announced that

18  owners must pay taxes on physical assets, meaning they must report the cost and acquisition year

19  of "each piece of furniture, equipment, and supplies used in renting your residence, including

20  kitchen appliances, laundry machines, entertainment units, linens, dishes, utensils, artwork, and

21  any other property that you provide to your renters as part of the rental activity," as well as

22

[5] San Francisco Ordinance No. 130-15, File No. 150653 (proposed July 14, 2015),
23  https://sfgov.legistar.com/View.ashx?M=F&ID=3891688&GUID=F126F2C4-7859-4999-A5D4-D606BEB9CF15.
[6] San Francisco Ordinance No. 130-15 (passed July 30, 2015),
24  https://sfgov.legistar.com/LegislationDetail.aspx?ID=2262359&GUID=0AD10E60-D561-4738-A67D-
97A628A22B94&Options=ID|Text|&Search=short-term.
25  [7] News Release, Mayor Lee Announces New "One-Stop Shop" Office of Short-Term Rental Administration &
Enforcement (July 2, 2015), http://www.sfmayor.org/index.aspx?recordid=911&page=846.
[8] *Id.*
26  [9] City and County of San Francisco Planning Department, Office of Short-Term Rental Registry & FAQs, http://sf-
planning.org/office-short-term-rental-registry-faqs (last visited July 6, 2016).
27  [10] *Id.*
[11] City and County of San Francisco Treasurer & Tax Collector, Transient Occupancy Tax (TOT) Frequently Asked
28  Questions for Hosts, Website Companies and Merchants of Record,
http://sftreasurer.org/tot_host_website_merchant_faq (last visited July 6, 2016).

AMENDED COMPLAINT
Case No. 3:16-cv-03615-JD
DWT 30300906v2 0098221-000004

DAVIS WRIGHT TREMAINE LLP

1  physical assets used to operate the rental activity, "including cleaning supplies, computer

2  equipment, and office equipment such as desks, chairs, and file cabinets."[12]

3      30.      Dissatisfied with the defeat of the Campos proposal, an organization called Share

4  Better gathered enough signatures to place a similar measure on the San Francisco ballot in

5  November 2015.[13]  Like Campos's proposal, Proposition F would have prohibited owners from

6  renting their units for more than 75 days in a calendar year, allowed interested parties to sue

7  Hosting Platforms, and made it a misdemeanor for a Hosting Platform to publish a listing that does

8  not include the unit's registration number.  Voters overwhelmingly rejected the measure.[14]

9      31.      A report requested by Supervisor Campos and issued April 7, 2016, by the Board

10  of Supervisors' Budget and Legislative Analyst's Office stated the OSTR had received 1,647

11  registration applications as of March 2016, up from 579 in May 2015, and estimated this

12  represented 31 percent of owners.[15]  The report also stated the OSTR had pursued 322

13  enforcement cases, resulting in 79 notices of violations and $680,000 in assessed penalties.

14  According to the report, the OSTR had developed "new strategies to proactively identify non-

15  compliant hosts," including by reviewing listings of short-term rentals online.[16]  Further, the report

16  noted that there was a "significant increase" in the number of registration applications after

17  November 2015.[17]

18      32.      In June 2016, the Board of Supervisors passed an ordinance (the "Original

19  Ordinance") that, for the first time, attempted to impose liability on Hosting Platforms.  The

20  Original Ordinance provided that "[p]rior to providing reservation and payment services for a

21  listing of a Residential Unit within the City to be rented for Tourist or Transient Use, a Hosting

22

23  [12] City and County of San Francisco Office of the Assessor-Recorder, Short-Term Rental Business Personal Property Taxation Frequently Asked Questions (FAQ),
http://www.sfassessor.org/sites/default/files/2016%20FAQ%20for%20Short%20Term%20Rentals__FINAL%20%28

24  2016.3.17%29.pdf.
[13] Carolyn Said, *Prop. F: S.F. voters reject measure to restrict Airbnb rentals*, SFGate, Nov. 4, 2015,

25  http://www.sfgate.com/bayarea/article/Prop-F-Measure-to-restrict-Airbnb-rentals-6609176.php.  *See also* City and County of San Francisco Ordinance Amending the Administrative Code with respect to Short-Term Residential

26  Rentals (May 6, 2015), http://sfgov2.org/ftp/uploadedfiles/elections/candidates/Nov2015/ShortTermRentals_Text.pdf (text of Prop. F).
[14] *Id.*

27  [15] City and County of San Francisco Board of Supervisors, Budget and Legislative Analyst's Office, "Short-Term Rentals 2016 Update," at 17 (Apr. 7, 2016), http://www.sfbos.org/Modules/ShowDocument.aspx?documentid=55575.

28  [16] *Id.* at 21.
[17] *Id.* at 17.

8

AMENDED COMPLAINT
Case No. 3:16-cv-03615-JD
DWT 30300906v2 0098221-000004

DAVIS WRIGHT TREMAINE LLP

1  Platform shall verify with the Office of Short-Term Residential Rental Administration and

2  Enforcement that the Residential Unit is listed on the Registry and has a valid registration

3  number." The Original Ordinance required Hosting Platforms to either provide the "verified

4  registration number on each listing" or "send[] the verified registration number, Residential Unit

5  street address (including any unit number), and host name" to the OSTR.

6       33.    Supervisor Campos stated in a Facebook post that the Original Ordinance would

7  "hold Airbnb and other hosting platforms accountable for advertising illegal short term rentals."

8  Supervisor Aaron Peskin, another sponsor, stated that the purpose was to "hold[] the hosting

9  platforms accountable for the hundreds of units [rented by] unscrupulous individuals who have

10  taken multiple units of affordable housing off the rental market."

11       34.    On June 27, 2016, Airbnb filed this lawsuit to enjoin enforcement of the Original

12  Ordinance. On July 12, 2016, HomeAway filed a complaint in intervention. In response, on July

13  12, 2016, Supervisor Campos introduced the Ordinance, explaining that he had "read [Airbnb's]

14  brief," "said, you make a good point," and therefore "decided we're going to modify."[18] The

15  Board of Supervisors passed the Ordinance on August 2, 2016.

**The Ordinance**

17       35.    The Ordinance, like the Original Ordinance, imposes liability on Hosting Platforms

18  for the failure of third parties who post listings on such platforms to comply with City laws. It

19  states that a "Hosting Platform may provide, and collect a fee for, Booking Services in connection

20  with short –term rentals for Residential Units … only when those Residential Units are lawfully

21  registered" on the City's registry. Ordinance § 41A.5(g)(4)(C). It defines "Hosting Platform" as

22  an entity that "participates in the short-term rental business by providing, and collecting or

23  receiving a fee for, Booking Services through which an Owner may offer a Residential Unit for

24  Tourist or Transient Use." *Id.* § 41A.4. It defines "Booking Services" as "any reservation and/or

25  payment service provided by a person or entity that facilitates a short-term rental transaction

26  between an Owner or Business Entity and a prospective tourist or transient user, and for which the

27

---

28  [18] Caleb Pershan, Airbnb Again at the Center of Political Play This Election Year as Supervisors Fast-Track
Amendments, SFist Blog, July 26, 2016, http://sfist.com/2016/07/26/supervisor_campos_airbnb_legislatio.php (last
visited August 29, 2016).

9

DAVIS WRIGHT TREMAINE LLP

1 person or entity collects or receives, directly or indirectly through an agent or intermediary, a fee

2 in connection with the reservation and/or payment services provided for the short-term rental

3 transaction." *Id.* It does not define "lawfully registered," "reservation service," "payment

4 service," or "short-term rental transaction." *Id*.

5       36.     The Ordinance also mandates that starting November 5, 2016, Hosting Platforms

6 must on the fifth day of each month, "provide a signed affidavit to the Office of Short Term

7 Rentals verifying that the Hosting Platform has complied with subsection (g)(4)(C) of this Section

8 41A.5 in the immediately preceding month." Ordinance § 41A.5(g)(4)(D).

9       37.     The Ordinance also requires that a Hosting Platform "maintain and be able, in

10 response to a lawful request, to provide to [OSTR] for each short term transaction for which a

11 Hosting Platform has provided a Booking Service" a host of information about the transaction,

12 including the name of the unit's owner, the address, the dates of the stay, and the registration

13 number. Ordinance § 41A.5(g)(4)(E). The Hosting Platform must keep this information for "not

14 less than three years following the end of the calendar year in which the short-term rental

15 transaction occurred." *Id.* The Ordinance grants OSTR the power to subpoena these records. *Id.*

16 § 41A.7(b)(2).

17       38.     The Ordinance imposes criminal and civil liability and penalties for violations of

18 Hosting Platforms' obligations. It states that "any Hosting Platform that provides a Booking

19 Service for a Residential Unit to be used for Tourist or Transient Use in violation of the Hosting

20 Platform's obligations under this Chapter 41A shall be guilty of a misdemeanor," punishable by a

21 fine of $1,000, six months in jail, or both. Ordinance § 41A.5(e). The Ordinance also assesses

22 "administrative penalties" for the "failure of a Hosting Platform to comply with" the law, of up to

23 $484 for initial violations and $968 for subsequent ones. *Id.* § 41A.6(d)(1). The Ordinance allows

24 "civil penalties" against Hosting Platforms "of not more than $1,000 per day for the period of

25 unlawful activity." S.F. Admin. Code § 41A.5(d)(3).

26       39.     City officials have acknowledged that they have other means to boost compliance

27 with short-term residential rental laws.

28

10

AMENDED COMPLAINT
Case No. 3:16-cv-03615-JD
DWT 30300906v2 0098221-000004

DAVIS WRIGHT TREMAINE LLP

40. For example, the City created the OSTR specifically to enforce the laws. In fiscal year 2015-16, the Office had a budget of $880,106. It is staffed by six full-time employees tasked with identifying hosts who are out of compliance with existing regulations, conducting investigations of potential violations, issuing notices of violations, and holding hearings requested by hosts who have been issued notices of violations.[19]

41. In addition, the Original Ordinance required the OSTR to "promulgate rules and regulations to simplify and streamline the application process and to minimize the time between the filing of applications and their final approval." Ordinance § 41A.7(a). As the City admits, the current two-step process "might deter or confuse otherwise compliant short-term rental hosts" and streamlining the process "would remove what could be one of the most significant barriers to compliance" and free more OSTR staff time for identifying violations.[20]

42. The Ordinance was scheduled to take effect September 11, 2016. The City has agreed to stay enforcement of the Ordinance pending this Court's resolution of a motion for preliminary injunction filed concurrently by Airbnb and HomeAway.

43. The Ordinance is vague. For example, it applies to Hosting Platforms that provide "reservation and payments services" but does not define those terms. The Ordinance also does not state what it means for a given unit to be "lawfully registered" on the registry, nor does it state what it means for a property to be registered "at the time it is rented."

44. The Ordinance imposes a significant burden on HomeAway. At a minimum, for each of thousands of listings posted by users, an employee must ensure that the listed unit is "lawfully registered," although it is unclear how and when this is to be done. On information and belief, this would, at a minimum, require HomeAway to disclose its customers' names, addresses, and potentially other information to the City. In addition, HomeAway must also determine the unit's registration number and retain it for at least three years. This would significantly disrupt HomeAway's business, as the process by which an owner posts a listing is generally automated.

---

[19] City and County of San Francisco Board of Supervisors, Budget and Legislative Analyst's Office, "Short-Term Rentals 2016 Update," at 17 (Apr. 7, 2016), http://www.sfbos.org/Modules/ShowDocument.aspx?documentid=55575.
[20] *Id.* at 26-27.

11

AMENDED COMPLAINT
Case No. 3:16-cv-03615-JD
DWT 30300906v2 0098221-000004

DAVIS WRIGHT TREMAINE LLP

45.     HomeAway and numerous other online service providers will suffer immediate and irreparable harm under the Ordinance because the threat of criminal prosecution under the law will require it to undertake the impossible task to review and censor third-party content or block content altogether.

## IV.     CLAIMS FOR RELIEF

### CLAIM I:  VIOLATION OF AND PREEMPTION UNDER THE COMMUNICATIONS DECENCY ACT, 47 U.S.C. § 230, PURSUANT TO 42 U.S.C. § 1983

46.     HomeAway incorporates all previous paragraphs as if fully set forth herein.

47.     HomeAway is an "interactive computer service" within the meaning of 47 U.S.C. § 230 because it operates interactive websites.

48.     The Ordinance violates Section 230 of the CDA, 47 U.S.C. § 230(c)(1), because it would impose liability on HomeAway for publishing information by third parties, i.e., owners listing their properties for rental through HomeAway's websites.

49.     The Ordinance is a "State … law that is inconsistent with" Section 230, in direct violation of 47 U.S.C. § 230(e)(3).

50.     The Ordinance violates and is preempted by Section 230, and it therefore should be enjoined and declared invalid.

### CLAIM II:  VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION, PURSUANT TO 42 U.S.C. § 1983

51.     HomeAway incorporates all previous paragraphs as if fully set forth herein.

52.     The Ordinance is invalid under the First and Fourteenth Amendments because it is a content-based restriction that impermissibly chills a substantial amount of protected speech and is not narrowly tailored to achieve a substantial governmental interest of the City.

53.     The Ordinance is invalid under the First and Fourteenth Amendments of the United States Constitution because it purports to impose strict criminal and civil liability on websites for publishing speech without any requirement of scienter.

AMENDED COMPLAINT
Case No. 3:16-cv-03615-JD
DWT 30300906v2 0098221-000004

DAVIS WRIGHT TREMAINE LLP

54.     The Ordinance is invalid under the First and Fourteenth Amendments because it fails to give persons of ordinary intelligence adequate notice of what speech it proscribes and is therefore unconstitutionally vague.

**CLAIM III:  VIOLATION OF AND PREEMPTION UNDER THE STORED COMMUNICATIONS ACT, 18 U.S.C. § 2701 ET SEQ., PURSUANT TO 42 U.S.C. § 1983**

55.     HomeAway incorporates all previous paragraphs as if fully set forth herein.

56.     HomeAway is a provider of electronic communication services under the SCA because it provides users "the ability to send or receive wire or electronic communications."  18 U.S.C. § 2510(15).  HomeAway is also a provider of remote computing services because it provides users "computer storage or processing services by means of an electronic communications system." *Id.* § 2711(2).

57.     Under the SCA, "a provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service … to any governmental entity," without a subpoena or other legal process. 18 U.S.C. §§ 2702(a)(3), (c)(1); 2703(c).

58.     The Ordinance violates, conflicts with, and is preempted by the SCA because it requires HomeAway to "divulge a record or other information pertaining to a subscriber to or customer of such service" to a "governmental entity," without a subpoena or other legal process. 18 U.S.C. §§ 2702(a)(3), (c)(1); 2703(c).  *See* Ordinance §§ 41A.5(g)(4)(D).

**CLAIM IV: VIOLATION OF THE COMMERCE CLAUSE OF THE UNITED STATES CONSTITUTION, PURSUANT TO 42 U.S.C. § 1983**

59.     HomeAway incorporates all prior paragraphs as if fully set forth herein.

60.     The Ordinance violates the Commerce Clause of the United States Constitution because it seeks to apply San Francisco law in a manner that constitutes an unreasonable and undue burden on interstate commerce that is excessive in relation to any local benefit conferred on the State of California and is likely to subject parties to inconsistent state regulations.

**CLAIM V:  DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201**

61.     HomeAway incorporates all previous paragraphs as if fully set forth herein.

AMENDED COMPLAINT
Case No. 3:16-cv-03615-JD
DWT 30300906v2 0098221-000004

DAVIS WRIGHT TREMAINE LLP

62. This action presents an actual case or controversy between HomeAway and the City concerning the validity and enforceability of the Ordinance.

63. Because the Ordinance violates Section 230, 47 U.S.C. § 230, the First, Fourteenth Amendments, and Commerce Clause of the United States Constitution, and the Stored Communications Act, 18 U.S.C. § 2701 et seq., HomeAway asks for a declaration pursuant to 28 U.S.C. § 2201 that the law is invalid and unenforceable.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff-Intervenor HomeAway.com, Inc. respectfully requests that the Court:

1. Declare that the portions of the Ordinance to be codified at San Francisco Administration Code §§ 41A.5(e) and 41A.5(g)(4)(C)-(E) are preempted by 47 U.S.C. § 230 and 18 U.S.C. § 2701 et seq., and unconstitutional under the First and Fourteenth Amendments to the United States Constitution, and therefore invalid and unenforceable;

2. Preliminarily and permanently enjoin the City and its respective officers, agents, servants, employees, and attorneys, and those persons in concert or participation with them from taking any actions to enforce the portions of the Ordinance to be codified at San Francisco Administration Code §§ 41A.5(e) and 41A.5(g)(4)(C)-(E);

3. Award HomeAway its reasonable costs and attorneys' fees under 42 U.S.C. § 1988; and

4. Award HomeAway other and further relief as the Court deems just and proper.

DATED this 6th day of September, 2016.

Respectfully submitted,
DAVIS WRIGHT TREMAINE LLP

By:      */s/ Ambika K. Doran*
Thomas R. Burke
Sanjay M. Nangia
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
thomasburke@dwt.com
sanjaynangia@dwt.com

14

James C. Grant (admitted *pro hac vice*)
Ambika K. Doran (admitted *pro hac vice*)
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Telephone: (206) 757-8096
Facsimile: (206) 757-7096
jimgrant@dwt.com
ambikadoran@dwt.com

Attorneys for Plaintiff HomeAway.com, Inc.

DAVIS WRIGHT TREMAINE LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

15