JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
ELLEN M. RICHMOND (State Bar No. 277266)
ellen.richmond@mto.com
JOSHUA PATASHNIK (State Bar No. 295120)
josh.patashnik@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, CA 94105-4000
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

JOHN W. SPIEGEL (State Bar No. 78935)
john.spiegel@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

Attorneys for Plaintiff Airbnb, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AIRBNB, INC. and HOMEAWAY.COM, INC.,<br><br>          Plaintiffs,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>          Defendant. | Case No. 3:16-cv-03615-JD<br><br>**FIRST AMENDED COMPLAINT OF AIRBNB, INC. FOR DECLARATORY AND INJUNCTIVE RELIEF** |

For its complaint, Plaintiff Airbnb, Inc. ("Airbnb") alleges as follows:

**INTRODUCTION**

1.      This is an action under 42 U.S.C. § 1983, 18 U.S.C. § 2707, the Court's equitable powers, and the Declaratory Judgment Act, 28 U.S.C. § 2201, to enjoin and declare unlawful the enforcement against Airbnb of Sections 41A.5(e) and 41A.5(g)(4)(C)-(E) of the San Francisco Administrative Code, enacted by Defendant City and County of San Francisco (the "City" or "San Francisco") on August 11, 2016 and effective on September 11, 2016 (the "Ordinance").[1]

2.      The Ordinance is the City's second attempt to impose liability on Hosting Platforms for short-term rentals that do not comply with City law.  The City's first attempt was through an ordinance enacted by the City on June 24, 2016 (the "Original Ordinance").  Airbnb filed its original Complaint in this action on June 27, 2016 to challenge the Original Ordinance, Dkt. No. 1, and the City enacted the Ordinance in response to Airbnb's legal challenge.  As Supervisor Campos—one of the co-sponsors of the Original Ordinance—explained, the Ordinance was introduced because the City "read [Airbnb's] brief," "said, you make a good point," and decided "we're going to modify."[2]  But despite the City's attempt to fix the shortcomings of the Original Ordinance, the Ordinance continues to suffer from many of the same fatal shortcomings as its predecessor.

3.      The Ordinance is preempted and unconstitutional for multiple reasons.  It directly conflicts with, and is preempted by, the Communications Decency Act of 1996, 47 U.S.C. § 230 (the "CDA").  As the Ordinance's sponsors have described it, it is intended to "regulate the business activities" of Hosting Platforms and require that they "do business with law-abiding

---

[1] The Ordinance was passed by the Board of Supervisors on August 2, 2016.  The Mayor did not sign the Ordinance, rendering it enacted on August 11.  Pursuant to its terms, the Ordinance becomes effective 30 days after it is enacted, on September 11.

[2] Caleb Pershan, *Airbnb Again at the Center of Political Play This Election Year as Supervisors Fast-Track Amendments*, SFist Blog, July 26, 2016, http://sfist.com/2016/07/26/supervisor_campos_airbnb_legislatio.php (last visited Sept. 5, 2016).

hosts," rather than those who are "out of compliance with the law."[3]  The Ordinance, however, continues to impose liability on Hosting Platforms for third-party rental advertisements that are not associated with a City registration number.[4]  As such, the Ordinance unquestionably treats online platforms such as Airbnb as the publisher or speaker of third-party content and is completely preempted by the CDA.  In addition, the law violates the First and Fourteenth Amendments because it imposes an impermissible content-based regulation on speech, imposes criminal liability without proof of *mens rea* or scienter, and is impermissibly vague.  The enforcement of the Ordinance against Airbnb should be immediately and permanently enjoined.[5]

4.  Since February 2015, San Francisco law has permitted residents to rent out their residential units on a short-term basis if they register their units with the City, which assigns the unit a registration number and lists it on a City-run registry.  S.F. Admin. Code § 41A.5(g)(1)(E), (g)(3)(A).  Residents also are required to include their registration numbers on any "listing" on a "Hosting Platform"—defined as an entity that provides an "online platform that allows [Residents] to advertise the Residential Unit through a website," *id*. § 41A.4—and residents face liability for failing to do so, *id*. §§ 41A.5(g)(1)(F), (g)(2)(A).

5.  The Ordinance—like the Original Ordinance before it—fundamentally and impermissibly alters that regulatory scheme by holding Hosting Platforms criminally and civilly liable for their users' posting of listings without registration numbers.  Specifically, the Ordinance states that Hosting Platforms can provide "Booking Services"—essentially, calendaring

---

[3] Video, *Hearing of the San Francisco Board of Supervisors* (July 12, 2016), goo.gl/nO02ro, at 2:27:40–2:30:49 (last visited Sept. 5, 2016); *see also* Video, *Hearing of the San Francisco Board of Supervisors Land Use and Transportation Committee* (July 25, 2016), goo.gl/Y7H0en, at 9:24–9:32 (last visited Sept. 5, 2016) (Supervisor Peskin stating that motivation of Ordinance is to require "hosting platforms do business with law abiding hosts").

[4] Video, *Hearing of the San Francisco Board of Supervisors* (July 26, 2016), goo.gl/IJEKVC, at 6:54:40–6:54:45 (last visited Sept. 5, 2016).

[5] This action is both an as-applied and a facial challenge against the Ordinance.  It is an as-applied challenge in that it seeks only to prohibit the City from enforcing certain provisions of the Ordinance against Airbnb; and it is a facial challenge in that certain provisions, on their face, violate the law and cannot be enforced against any Hosting Platform in any set of factual circumstances.

reservations or providing payment processing services where the platform receives a fee for such services—only for short-term rentals that "are lawfully registered" on the City's short-term rental registry "at the time the Residential Unit is rented for short term rental." *Id.* § 41A.5(g)(4)(C). Failure to comply with that provision may result in civil or criminal liability for Hosting Platforms, including up to six months in jail and fines of up to $1,000 per violation. *See id.* §§ 41A.5(e), 41A.6(d)(1).

6. The enforcement of the Ordinance against Airbnb is preempted by the CDA, which aims "to promote the continued development of the Internet" and "to preserve" its "vibrant and competitive free market." 47 U.S.C. § 230 (b)(1)-(2). In furtherance of these goals, the CDA expressly preempts state and local laws that treat a website "as the publisher or speaker of any information provided by another information content provider." *Id.* (c)(1), (e)(3). The Ordinance violates the CDA by (a) regulating Airbnb's provision of Booking Services, which derive from and are inextricably intertwined with Airbnb's role as a publisher of third-party content; (b) requiring Airbnb to monitor, review, and verify content associated with third-party rental advertisements; and (c) directly regulating the structure and operation of Airbnb's website. By imposing these obligations and duties, and by imposing criminal and civil liability on Airbnb for failure to comply, the Ordinance impermissibly treats Airbnb as the publisher or speaker of third-party content, and it is therefore preempted by the CDA.

7. The Ordinance also violates Airbnb's First Amendment rights. It is a content-based restriction that burdens protected commercial speech, in the form of third-party rental listings published on Airbnb's hosting platform. The Ordinance seeks to punish Airbnb for enabling Booking Services with respect to listings that do not comply with San Francisco law. To justify this content-based restriction on speech, the City must show that the Ordinance is narrowly tailored to further a substantial government interest. The City cannot carry this burden because, instead of targeting speech, the City instead could simply enforce its existing short-term rental law directly against hosts who violate it.

8. The Ordinance also violates Airbnb's rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment because it seeks to impose criminal

FIRST AMENDED COMPLAINT

CASE NO. 3:16-CV-03615-JD

penalties on Hosting Platforms like Airbnb without requiring any showing of *mens rea* or scienter. The City has impermissibly created a strict-liability crime for providing Booking Services in connection with rentals that are not "lawfully registered," even if the Hosting Platform has no knowledge of that fact.

9. The Ordinance also is impermissibly vague as to what actions by Hosting Platforms trigger liability under the Ordinance and what measures Hosting Platforms must undertake to comply with the Ordinance.

10. Finally, the Ordinance violates the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*, by requiring Airbnb to divulge to the City certain confidential information pertaining to Airbnb users without providing the necessary legal process, such as a valid subpoena to obtain basic subscriber information.

## PARTIES

11. Plaintiff Airbnb is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in San Francisco, California. It maintains a website that provides an online marketplace for people to list, explore, and book both short-term and long-term housing accommodations.

12. Defendant City and County of San Francisco is an incorporated municipality in northern California.

## JURISDICTION AND VENUE

13. This Court has jurisdiction of this action under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because Airbnb alleges violation of its rights under the Constitution and laws of the United States.

14. The Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because the action presents an actual controversy within the Court's jurisdiction.

15. Venue is proper under 28 U.S.C. § 1391 because the defendant is located and resides in this judicial district and in the State of California; and because a substantial part of the events giving rise to Airbnb's claims for relief occurred in this judicial district.

16.     This action should be assigned to the San Francisco Division of this Court under Civil Local Rule 3-2 because this action arises in the City and County of San Francisco. A substantial part of the events giving rise to Airbnb's claims for relief occurred in the City and County of San Francisco.

## FACTUAL ALLEGATIONS

### Airbnb

17.     Founded in 2008, Airbnb provides an Internet platform through which persons desiring to book accommodations ("guests"), and persons listing unique accommodations available for rental ("hosts"), can locate each other and enter into direct agreements to reserve and book travel accommodations on a short and long-term basis.

18.     Airbnb does not manage, operate, lease or own hosts' accommodations, and it is not a party to the direct agreements between guests and hosts for the booking of accommodations offered by hosts. Airbnb's platform provides a means by which hosts can choose to list their rentals; guests can locate those rentals; and hosts and guests can message each other directly on the platform to determine the terms for their bookings. Airbnb also provides electronic storage of these communications on its platform. Airbnb also enables the provision of payment processing services to permit hosts to receive payments electronically.

19.     In consideration for use of its platform, including its listing and publishing services, Airbnb receives a service fee from both the host and the guest, determined as a percentage of the accommodation fee set solely by the host. Airbnb ultimately is compensated for and able to provide its services, including its publishing and listing services, through the receipt of such service fees, which help cover the costs associated with running Airbnb's website and services.

20.     Airbnb does not charge hosts any upfront fees at the time they post their listings. Not charging hosts an upfront fee for listing their rentals removes barriers to entry and makes it more likely for hosts to post their listings on Airbnb. Based on Airbnb's experience, the absence of an upfront listing or advertising fee imposed on hosts has been important to the growth and development of the platform.

21.     Hosts, and not Airbnb, decide whether to list their properties and with whom and when to transact, provide the descriptions of their rentals, set their own lengths of stay, and determine the prices of their rentals.  As Airbnb's Terms of Service state, hosts "alone are responsible for any and all Listings and Member Content [they] post."[6]

22.     Under Chapter 41A of the San Francisco Administrative Code, hosts are also responsible for registering their short-term rentals, obtaining a registration number from the City, and including their City-issued registration numbers "on any Hosting Platform listing."  S.F. Admin. Code §§ 41A.5(g)(1)(F), (g)(2)(A).

23.     Airbnb advises its hosts and guests to be aware of and comply with local laws in listing and renting units listed on Airbnb.  The Airbnb Terms of Service reference at their outset parties' "OBLIGATIONS TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS," and that

> IN PARTICULAR, HOSTS SHOULD UNDERSTAND HOW THE LAWS WORK IN THEIR RESPECTIVE CITIES.  SOME CITIES HAVE LAWS THAT RESTRICT THEIR ABILITY TO HOST PAYING GUESTS FOR SHORT PERIODS….  IN MANY CITIES, HOSTS MUST REGISTER, GET A PERMIT, OR OBTAIN A LICENSE BEFORE LISTING A PROPERTY OR ACCEPTING GUESTS.  CERTAIN TYPES OF SHORT-TERM BOOKINGS MAY BE PROHIBITED ALTOGETHER.[7]

24.     Airbnb maintains a "Responsible Hosting" section on the Airbnb website specific to San Francisco that provides a variety of general information for hosts about applicable laws and regulations that they should follow, including safety guidelines and business regulations.[8]

25.     In addition, the Airbnb "Responsible Hosting" page for San Francisco informs hosts that "it's important for you to understand the laws in your city," provides links to the City's website describing applicable laws, and notifies hosts of the City's requirements with

---

[6] Airbnb Terms of Service, https://www.airbnb.com/terms (last visited Sept. 5, 2016).

[7] *Id.*

[8] Airbnb Responsible Hosting, San Francisco, CA, https://www.airbnb.com/help/article/871/san-francisco--ca (last visited Sept. 5, 2016).

FIRST AMENDED COMPLAINT

CASE NO. 3:16-CV-03615-JD

respect to "Short-Term Rental Registration."[9]  For example, the page states that "San Francisco requires hosts to register by scheduling an appointment with the Planning Department and paying a fee of $50."[10]  Airbnb further informs hosts that "You may include your short-term rental permit number on your listing" in the "'Other Things to Note' field" by "typ[ing] in your permit number following the acceptable permit format for San Francisco.  The format is: STR-xxxxxxx.  An example would be: STR-1234567."[11]

26.  Pursuant to its Community Compact—an expression of the company's commitment to communities and the principles that underlie it, published in November of 2015—Airbnb is committed to helping provide solutions tailored to the needs of cities like San Francisco with historic housing challenges.[12]  For example, Airbnb discretionarily removes listings that it believes may be offered by hosts with multiple "entire home" listings or by unwelcome commercial operators.  If Airbnb is alerted to shared spaces or private rooms that appear to be operated by unwelcome commercial operators or that do not reflect the community vision, it generally will remove such listings.  Within the last year, Airbnb has removed numerous San Francisco listings from its platform as part of its Community Compact efforts.

27.  A recent study by the city planning and research organization SPUR states that "[d]ata from Airbnb suggests that the vast majority of properties listed in San Francisco are not being removed from the long-term residential market."[13]

**Background Regarding Short-Term Rental Regulation in the City**

28.  The City's regulation of short-term rentals began in October 2014, when the Board of Supervisors enacted a set of amendments to Chapter 41A that made short-term rentals

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] Airbnb Community Compact, https://www.airbnbaction.com/wp-content/uploads/2015/11/Airbnb-Community-Compact.pdf (last visited Sept. 5, 2016).

[13] SPUR, *Non-Primary Residences and San Francisco's Housing Market*, Oct. 21, 2014, at 9, http://www.spur.org/sites/default/files/publications_pdfs/SPUR_Non-Primary_Residences.pdf (last visited Sept. 5, 2016).

generally lawful in San Francisco, subject to certain limitations and requirements. "Permanent Residents" who have occupied their units for at least 60 days may offer their homes for "Short-Term Rental." S.F. Admin. Code §§ 41A.4; 41A.5(g). Before offering such a rental, Permanent Residents must apply for and register the rental unit with the Planning Department, which assigns the unit a registration number and lists it on a City-run registry. *Id.* §§ 41A.5(g)(1)(E), (g)(3)(A). Residents also are required to "include[] the Department-issued registration number on any Hosting Platform listing," and face liability for failing to do so. *Id.* §§ 41A.5(g)(1)(F), (g)(2)(A). Hosting Platforms like Airbnb have no property interests in the units listed on their websites and no ability to obtain or create registration numbers.

29.     Residents are prohibited from renting residential units on a short-term basis for more than 90 days per year if the rental is "unhosted," i.e., if the host is not on site during the rental. There is no limit on the number of days per year the unit may be rented for Short-Term Rentals if the unit is "hosted," i.e., if the host remains in the unit during the rental (for instance, if the rental is for a room in a unit also occupied by the host). *Id.* § 41A.5(g)(1)(A).

30.     To register their properties, hosts must complete a two-step process. First, they must obtain a Business Registration Certificate from the Treasurer & Tax Collector.[14] Second, they must schedule an in-person appointment with the Office of Short-Term Rentals ("OSTR") and provide a completed application, proof of residency, Business Registration Certificate, and proof of at least $500,000 in liability insurance and that their property does not violate any City code. Thereafter, they must submit quarterly reports of all stays.[15] Hosts, unless exempted, must also obtain a Certificate of Authority from the Treasurer & Tax Collector and file monthly reports documenting the amount of rent received and Transient Occupancy Tax ("TOT")

---

[14] City and County of San Francisco Planning Department, Office of Short-Term Rental Registry & FAQs, http://sf-planning.org/office-short-term-rental-registry-faqs (last visited Sept. 5, 2016).
[15] *Id.*

FIRST AMENDED COMPLAINT

due.[16]  In addition, earlier this year, the City's Assessor-Recorder announced that owners must pay taxes on physical assets, meaning they must report the cost and acquisition year of "each piece of furniture, equipment, and supplies used in renting your residence, including furnishings from the kitchen, living room, dining room, and bedroom, such as televisions, computers, bed frames, mattresses, tables, chairs, stoves, fridges, appliances, dish washers, clothes washers and dryers, entertainment units, artwork, and any other property that you provide to your renters."[17]

31.    As part of the October 2014 amendments, the Board also imposed certain duties and obligations on Hosting Platforms, which must notify users of the City's regulations regarding short-term rentals and must collect and remit Transient Occupancy Taxes required under the Business and Tax Regulations Code.  *Id.* § 41A.5(g)(4)(A)-(B).  But the amendments did not impose liability on Hosting Platforms based in any way on the content of the third-party listings they publish, nor did it require them to verify any listings.  The October 2014 amendments went into effect in February 2015.

32.    The City created the OSTR in July 2015 to enforce the foregoing provisions.  A report prepared by the City's Budget and Legislative Analyst's Office in April 2016 stated that the OSTR "continues to levy fines against hosts found to be non-compliant" with the law, and while "there still remains a sizeable gap between the number of registered hosts and the number of hosts advertising short-term rentals on online platforms," the "OSTR may be able to further close that gap in coming months as the OSTR became fully staffed in December 2015."[18]

---

[16] City and County of San Francisco Treasurer & Tax Collector, Transient Occupancy Tax (TOT) Frequently Asked Questions for Hosts, Website Companies and Merchants of Record, http://sftreasurer.org/tot_host_website_merchant_faq (last visited Sept. 5, 2016).

[17] City and County of San Francisco Office of the Assessor-Recorder, Short-Term Rental Business Personal Property Taxation Frequently Asked Questions (FAQ), http://sfassessor.org/sites/default/files/2016.8.9__STR%20FAQ%20--%20ASR%20Header%20and%20Footer.pdf at 1 (last visited Sept. 5, 2016).

[18] City and County of San Francisco Board of Supervisors, Budget and Legislative Analyst's Office, "Short Term Rentals 2016 Update," (Apr. 7, 2016), http://www.sfbos.org/Modules/ShowDocument.aspx?documentid=55575 at 21 (last visited Sept. 5, 2016).

The report further noted that the OSTR saw "a wave of compliant behavior towards the end of

2   2015" and has developed "new strategies to pro-actively identify non-compliant hosts."[19]

3                          **The Original Ordinance**

4            33.      The City altered its regulation of short-term rentals by enacting the Original

5    Ordinance on June 24, 2016.  The Original Ordinance required Hosting Platforms to verify that

6    third-party rental listings had a valid registration number before publishing the listing.  Hosting

7    Platforms could comply with that requirement by either "[p]roviding the verified registration

8    number on each listing" or "[s]ending the verified registration number, Residential Unit street

9    address (including any unit number), and host name to the [OSTR] by electronic mail prior to

10   posting the listing."  The Original Ordinance imposed criminal and civil penalties for failure to

11   comply with its verification requirement and for publishing third-party rental listings of unverified

12   rentals.

13           34.      The Original Ordinance also set forth a monitoring regime, requiring the

14   OSTR to "actively monitor Hosting Platform listings to ensure that Hosting Platforms are only

15   listing Residential Units that are listed on the Registry."  If the OSTR found non-compliant

16   listings, it was required to provide notice to platforms of those listings.  Platforms were then

17   required to respond within one business day by "confirming, for each listing identified in the

18   notice, that the listing has a valid registration number and providing that number and any other

19   requested information," including "unit address and host information."

20           35.      The Original Ordinance was proposed by Supervisors David Campos and

21   Aaron Peskin.  Supervisor Peskin stated that its purpose was to "hold[] the Hosting Platforms

22   accountable for the hundreds of units (rented by) unscrupulous individuals."[20]  Similarly,

23   Supervisor Campos described it as "hold[ing] *Airbnb and other Hosting Platforms accountable for*

24

25   _____

     [19] *Id.* at 3, 18.

26   [20] Caleb Pershan, *Campos Proposes Law To Fine Airbnb Directly For Unregistered SF Listings*,
27   SFist Blog, Apr. 25, 2016, http://sfist.com/2016/04/25/campos_proposes_legislation_to_hold.php
     (last visited Sept. 5, 2016); *see also* Aaron Peskin, Facebook Post, Apr. 25, 2016,
28   https://www.facebook.com/aaron.peskin/posts/1607597332893162 (last visited Sept. 5, 2016).

*advertising illegal short term rentals.*"[21]  After the law was passed, Supervisor Campos stated that it targeted "the entirety of the conduct" of Hosting Platforms and "change[d] [the methods of] enforcement" for the City's short-term rental regulations.[22]

36.     During committee meetings regarding the Original Ordinance, City officials acknowledged potential "issues under the Communications Decency Act" that the Original Ordinance might create, but claimed that it was drafted "in a way that minimizes" those concerns.[23]

## Airbnb's Lawsuit and the Ordinance

37.     Airbnb sued to enjoin enforcement of the Original Ordinance and filed a motion for a preliminary injunction on June 27, 2016, and HomeAway filed a complaint in intervention on July 12, 2016.  Airbnb and HomeAway's lawsuits challenged the law on the grounds that it violated the CDA, Stored Communications Act, and First and Fourteenth Amendments.

38.     In response to the lawsuit, Supervisor David Campos—one of the co-sponsors of the Original Ordinance—introduced the Ordinance on July 12, 2016.  Supervisor Campos explained that the Ordinance was introduced because the City "read [Airbnb's] brief," "said, you make a good point," and decided "we're going to modify."[24]  The Ordinance passed the Board of Supervisors on August 2, 2016, was enacted on August 11, and becomes effective on September 11.

---

[21] SF Bay Times, Facebook Post Sharing Press Release from Supervisor David Campos, Apr. 25, 2016, https://www.facebook.com/SanFranciscoBayTimes/posts/1188030017882628 (last visited Sept. 5, 2016) (emphasis added).

[22] David McCabe, *Airbnb Takes Its Fight to Court*, The Hill, July 4, 2016, http://thehill.com/policy/technology/286333-airbnb-takes-its-fight-to-court (last visited Sept. 5, 2016).

[23] Video, *Hearing of the San Francisco Board of Supervisors Government Audit and Oversight Committee* (June 2, 2016), http://goo.gl/PhCCsI, at 19:22–20:22 (last visited Sept. 5, 2016).

[24] Caleb Pershan, *Airbnb Again at the Center of Political Play This Election Year as Supervisors Fast-Track Amendments*, SFist Blog, July 26, 2016, http://sfist.com/2016/07/26/supervisor_campos_airbnb_legislatio.php (last visited Sept. 5, 2016).

39.     The Ordinance, like the Original Ordinance, imposes criminal and civil liability on Hosting Platforms for short-term rental listings that do not have a registration number; it merely changes when that liability attaches.  The Ordinance states that a "Hosting Platform may provide, and collect a fee for, Booking Services in connection with short-term rentals for Residential Units [in the City] *only when those Residential Units are lawfully registered* on the Short Term Residential Rental Registry at the time the Residential Unit is rented for short-term rental."  S.F. Admin. Code § 41A.5(g)(4)(C) (emphasis added).  A Hosting Platform is defined as any entity that participates "in the short-term rental business by providing, and collecting or receiving a fee for, Booking Services . . . usually . . . through an online platform that allows an Owner to advertise the Residential Unit through a website provided by the Hosting Platform."  *Id.* § 41A.4.  Booking Services, in turn, are defined as "any reservation and/or payment service provided by a person or entity that facilitates a short-term rental transaction between an Owner or Business Entity and a prospective tourist or transient user, and for which the person or entity collects or receives, directly or indirectly through an agent or intermediary, a fee in connection with the reservation and/or payment services provided for the short-term rental transaction."  *Id.*

40.     According to counsel for the City, if a website collects "solely" an "advertisement fee" for publishing a listing, it would not be subject to liability under the Ordinance, but if the website also provides "Booking Services," defined to include "the actual calendaring [of the] reservation" and payment processing, then it would be subject to liability under the Ordinance for any short-term rentals that are not lawfully registered.[25]  Supervisor Campos also stated at the hearing on the Ordinance that "If a Hosting Platform simply lists advertisements on its platform and does not charge a fee and we have the example of Craigslist, then the Hosting Platform would not be required to verify registration" under the Ordinance.[26]

---

[25] Video, *Hearing of the San Francisco Board of Supervisors* (July 26, 2016), goo.gl/IJEKVC, at 6:57:45–6:59:05 (last visited Sept. 5, 2016)

[26] *Id.* at 6:53:25–6:53:36; *see* Video, *Hearing of the San Francisco Board of Supervisors Land Use and Transportation Committee* (July 25, 2016), goo.gl/Y7H0en, at 12:50–12:54 (last visited Sept. 5, 2016).

FIRST AMENDED COMPLAINT

41.     As with the Original Ordinance, failure to comply with the Ordinance's requirements may result in criminal or civil liability.  First, "any Hosting Platform that provides a Booking Service for a Residential Unit to be used for Tourist or Transient Use in violation of the Hosting Platform's obligations under this chapter 41A shall be guilty of a misdemeanor," punishable by a fine of $1,000, six months in jail, or both.  S.F. Admin. Code § 41A.5(e).  Second, "administrative penalties" will be assessed for the "failure of a Hosting Platform to comply with" the law, in the amount of up to $484 for initial violations and up to $968 for subsequent violations.  *Id.* § 41A.6(d)(1).

42.     The Ordinance also requires Hosting Platforms to submit proof of compliance and allows the OSTR to issue subpoenas to confirm compliance.  First, it requires Hosting Platforms to submit a monthly "affidavit to the [OSTR] verifying that the Hosting Platform has complied with subsection (g)(4)(C) of this Section 41A.5 in the immediately preceding month."  *Id.* § 41A.5(g)(4)(D).  It further requires Hosting Platforms to maintain records of short-term bookings made through the platform for three years following those bookings, *id.* § 41A.5(g)(4)(E), and a separate provision of the Ordinance grants the OSTR subpoena power to seek those records, *id.* § 41A.7(b)(2).

43.     The Ordinance, like the Original Ordinance, provides that the OSTR "shall actively monitor Hosting Platform listings" and that, "[w]ithin 15 business days of the effective date" of the Ordinance, the OSTR "shall complete a comprehensive review of active Hosting Platform listings and produce an inventory of potentially non-compliant listings discovered during the review."  *Id.* § 41A.7(b).  "Subsequent reviews of Hosting Platform listings shall be performed on at least a monthly basis."  *Id.*

44.     The sponsors of the Ordinance have made numerous statements regarding the Board of Supervisors' intent in changing the law.  According to Supervisor Campos, the Ordinance made "a very few set of modest revisions" to the Original Ordinance, and that the "intent of" the Ordinance remains the same—to "regulate the business activities" of Hosting Platforms to require that they "do business with law-abiding hosts," rather than those who are "out

of compliance with the law."[27]  In Supervisor Campos's view, "it is only fair that Airbnb and others help us enforce the law."[28]

45.     The sponsors of the Ordinance have suggested that imposing liability on Hosting Platforms for publishing third-party rental listings will make the City's regulatory scheme more effective and efficient in preventing unlawful conduct.

46.     Instead of punishing Airbnb for providing services in connection with unlawful listings, the City could enforce its short-term rental law directly against hosts who violate it, as provided under Chapter 41A.  As of February 2016, the City had assessed nearly $700,000 in fines against hosts.[29]  The April 2016 report prepared by the City's Budget and Legislative Analyst's Office also stated that the City can "simplify the short-term rental registration process as the existing system might deter otherwise compliant short-term rental hosts,"[30] and both the Original Ordinance and Ordinance require the OSTR to promulgate rules accomplishing that goal, S.F. Admin. Code § 41A.7(a).  Supervisor Scott Wiener recently stated that there has been an "acceleration in the number of hosts registering," and the City is "moving in a positive direction" in enforcing the law.[31]

47.     As it currently operates, Airbnb's platform allows a rental transaction to be completed immediately once the host and guest agree to it.  Requiring Airbnb to verify that a particular short-term rental property is lawfully registered with the City before allowing a

[27] Video, *Hearing of the San Francisco Board of Supervisors* (July 12, 2016), goo.gl/nO02ro, at 2:28:40–2:29:45 (last visited Sept. 5, 2016); *see also* Video, *Hearing of the San Francisco Board of Supervisors Land Use and Transportation Committee* (July 25, 2016), goo.gl/Y7H0en, at 9:24–9:32 (last visited Sept. 5, 2016) (Supervisor Peskin stating that motivation of Ordinance is to require "hosting platforms do business with law abiding hosts").

[28] Video, *Hearing of the San Francisco Board of Supervisors* (July 26, 2016), goo.gl/IJEKVC, at 6:54:40–6:54:45 (last visited Sept. 5, 2016).

[29] City and County of San Francisco Board of Supervisors, Budget and Legislative Analyst's Office, "Short Term Rentals 2016 Update," (Apr. 7, 2016), http://www.sfbos.org/Modules/ShowDocument.aspx?documentid=55575 at 2 (last visited Sept. 5, 2016).

[30] *Id.* at 4.

[31] Video, *Hearing of the San Francisco Board of Supervisors* (June 7, 2016), http://goo.gl/FWvlZw (starting at 43:00) (last visited Sept. 5, 2016).

transaction to go forward would require significant modifications to the Airbnb platform, introduce substantial delays to the booking process (making Airbnb significantly less appealing to customers), and require Airbnb to expend substantial financial and technical resources.

48. Hosts and guests place great value on being able to enter into transactions with each other immediately, without any intervening involvement by Airbnb, once the host and guest have agreed to the transaction. It would substantially undermine the user experience if the Airbnb website were populated by third-party listings that guests either could not book at all or could book only after a substantial delay to allow for verification by Airbnb of the listing's legality.

49. The Ordinance does not set forth any procedures for how compliance with the Ordinance's verification requirement could be achieved. It is unclear whether or how Airbnb could even do so, as the City must "redact [from the Registry] any Permanent Resident names and street and unit numbers from the records available for public review," S.F. Admin. Code § 41A.4, and the SCA prohibits Airbnb from divulging to the City for verification purposes any "information pertaining to" its users, including names and addresses, 18 U.S.C. § 2702(a)(3).

50. The Ordinance's requirement that Hosting Platforms provide "Booking Services" only for properties that are "lawfully registered" at the time of rental will also impose significant burdens on Airbnb. In addition to confirming whether a registration number exists at all for a rental, even if such a number does exist, a property arguably may not be "lawfully" registered for a number of reasons, including if the host does not have insurance, has not filed monthly tax reports, or has not accurately reported and paid taxes on "each piece of furniture, equipment, and supplies used in renting [the] residence, including furnishings from the kitchen, living room, dining room, and bedroom, such as televisions, computers, bed frames, mattresses, tables, chairs, stoves, fridges, appliances, dish washers, clothes washers and dryers, entertainment units, artwork, and any other property that [the host] provide[s] to [] renters as part of the rental

activity."[32]  It will be impossible for Airbnb to determine whether hosts will meet these requirements, either at the time of booking (which is when Airbnb provides Booking Services), at the time of occupancy, or both.

51.    In light of these difficulties, if the Ordinance goes into effect, it very likely would require Airbnb to screen and remove from its site any listing for which Airbnb is unable to verify that the underlying rental is "lawfully registered."  Airbnb likely would have to screen new listings in the first place, before posting them, to determine whether the listings are for short-term rentals that are registered with the City (though, as described above, the Ordinance sets forth no mechanism for doing so) and possibly would have to confirm that the listings otherwise comply with San Francisco law (and are therefore "lawfully" registered).  In addition, to comply with the Ordinance, Airbnb would need to remove a substantial number of existing listings from its site, including listings that otherwise comply with San Francisco law.  Screening and removing listings would cause a substantial disruption to Airbnb's business and have a significant detrimental effect on Airbnb's goodwill and reputation among both hosts and guests, thus threatening irreparable injury to Airbnb's business.

52.    The Ordinance also creates the incorrect perception that Airbnb's own activities are unlawful.  This perception will lead to the sort of reputational injury and loss of goodwill that irreparably harms a business.

**CLAIM 1: VIOLATION OF THE COMMUNICATIONS DECENCY ACT, 47 U.S.C. § 230, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**

53.    Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

54.    Airbnb is a provider of an interactive computer service within the meaning of 47 U.S.C. § 230, because it operates the interactive online platform Airbnb.com.  Airbnb

---

[32] City and County of San Francisco Office of the Assessor-Recorder, Short-Term Rental Business Personal Property Taxation Frequently Asked Questions (FAQ), http://sfassessor.org/sites/default/files/2016.8.9__STR%20FAQ%20--%20ASR%20Header%20and%20Footer.pdf at 1 (last visited Sept. 5, 2016).

provides information to multiple users by giving them computer access to a computer server within the meaning of 47 U.S.C. § 230(f)(2).

55.     The third-party hosts that create listings on Airbnb's platform are persons responsible for the creation or development of information provided through Airbnb, within the meaning of 47 U.S.C. § 230(f)(3).  Additionally, the registration numbers hosts obtain and are required to include in their listings are also information developed or created by another information content provider.

56.     The Ordinance violates and conflicts with 47 U.S.C. § 230, and Airbnb's rights thereunder, because it imposes duties and obligations on Airbnb that derive from Airbnb's status as a publisher or speaker of third-party content and treats Airbnb as the publisher or speaker of information provided by another information content provider, all in a manner prohibited by section 230.

57.     First, the Ordinance imposes criminal and civil liability on Airbnb for providing "Booking Services" in connection with short-term rentals that do not have registration numbers.  S.F. Admin. Code § 41A.5(e).  Providing Booking Services is intertwined with and derives from Airbnb's role as a publisher of third-party advertisements.  The Ordinance further violates the CDA by premising liability on Airbnb's receipt of funds from transactions that involve publishing functions.

58.     Second, the Ordinance effectively requires Airbnb to monitor, review, and verify content associated with third-party rental advertisements.  Specifically, Airbnb must verify whether rentals are "lawfully registered" on the City's short-term rental registry, and the existence of a registration number, which hosts are required under the Ordinance to include on their listings.  The act of monitoring and verifying content associated with a third-party listing is a protected editorial act, and this verification requirement derives from Airbnb's status as a publisher or speaker of third-party content, in violation of the CDA.

59.     Third, the Ordinance violates the CDA by directly regulating the structure and operation of Airbnb's website.  By requiring Airbnb to verify that a listing is "lawfully registered" prior to providing Booking Services, the Ordinance effectively requires Airbnb to alter

the structure of its website to allow verification prior to providing such services. Further, by regulating certain models of Hosting Platforms but not others, the Ordinance directly attacks the way Airbnb has structured and operated its website in a manner that it has determined allows third-party content to flourish on its site.

60.    The Ordinance is a "State or local law that is inconsistent with" section 230, in violation of 47 U.S.C. § 230(e)(3).

61.    The enforcement of the Ordinance against Airbnb violates and is preempted by 47 U.S.C. § 230.

62.    The Ordinance also interferes with or impedes the accomplishment of the full purposes and objectives of federal law, violates the Supremacy Clause, U.S. Const. art. VI, cl. 2, and is invalid and preempted.

63.    Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the City to prevent its enforcement of the Ordinance, which would conflict with and violate the CDA.

**CLAIM 2: VIOLATION OF THE FIRST AMENDMENT OF THE U.S. CONSTITUTION AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**
**(Content-Based Restriction on Speech)**

64.    Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

65.    The Ordinance is a content-based restriction that burdens Airbnb's protected commercial speech as an online platform for rental advertisements and listings provided by third parties. The Ordinance seeks to impose both criminal and civil penalties on Airbnb for providing Booking Services in connection with publishing third-party rental listings that are not "lawfully registered" on the City's short-term rental registry. The Ordinance constitutes a content-based restriction on speech because the City necessarily must examine the content of rental listings on Airbnb's platform in order to enforce the law against Airbnb. The Ordinance itself recognizes as much by instructing the OSTR to undertake a "comprehensive review of active Hosting

FIRST AMENDED COMPLAINT

Platform listings" in order to "produce an inventory of potentially non-compliant listings." S.F. Admin. Code § 41.7(b).

66.      The restriction and burden on speech imposed by the Ordinance is not narrowly or appropriately tailored to promote a compelling or substantial interest on the part of the City, and is not likely to achieve any such interest in a direct and material way. Instead of seeking to impose liability on Hosting Platforms like Airbnb that publish listings created by third parties, the City could instead enforce its short-term rental laws directly against hosts who rent their residences in a manner that does not comply with the law. The City has not shown, and cannot show, that this less-speech-restrictive alternative would not be an adequate means of achieving the City's policy goals.

67.      The enforcement of the Ordinance against Airbnb therefore violates the First Amendment of the United States Constitution, as applied to the City by the Fourteenth Amendment.

68.      Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the City, whose enforcement of the Ordinance would conflict with and violate the First Amendment.

**CLAIM 3: VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**
**(Imposition of Criminal Penalties Without Scienter)**

69.      Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

70.      The imposition of criminal penalties under the Ordinance violates the First Amendment and Due Process Clause of the Fourteenth Amendment of the United States Constitution because the Ordinance purports to impose strict criminal liability for any Hosting Platform that "provide[s], and collect[s] a fee for, Booking Services" in connection with any third-party listing that advertises a rental that is not "lawfully registered" on the City's short-term rental registry, in the absence of proof of *mens rea* or scienter. S.F. Admin. Code §§ 41A.5(e), 41A.5(g)(4)(C).

71. The Ordinance seeks to impose criminal penalties on Hosting Platforms like Airbnb without requiring a showing that the platform *knew* that it was providing Booking Services for a short-term rental that lacked a registration number and was not otherwise "lawfully registered." The Ordinance therefore would impose strict criminal liability on Airbnb for providing Booking Services for rentals that are not "lawfully registered," even if Airbnb has no knowledge of that fact.

72. Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the City, whose enforcement of the Ordinance through criminal penalties would conflict with and violate the First Amendment and Due Process Clause of the Fourteenth Amendment.

**CLAIM 4: VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**
**(Vagueness)**

73. Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

74. The imposition of criminal penalties under the Ordinance violates the First Amendment and Due Process Clause of the Fourteenth Amendment of the United States Constitution because the Ordinance is unconstitutionally vague and fails to provide an ordinary person with notice of the conduct it punishes.

75. The Ordinance is impermissibly vague, without limitation, because it fails to inform an ordinary person what it means for a Hosting Platform to "provide . . . Booking Services," what constitutes "any reservation and/or payment service," and what is required for a short-term rental to be "lawfully registered on the Short Term Residential Rental Registry at the time the Residential Unit is rented for short term rental." *See* S.F. Admin. Code §§ 41A.4, 41A.5(g)(4)(C). By failing to adequately define these terms, the Ordinance is impermissibly vague as to what measures Hosting Platforms like Airbnb must undertake to comply with its requirements.

76.     Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the City, whose enforcement of the Ordinance through criminal penalties would conflict with and violate the First Amendment and Due Process Clause of the Fourteenth Amendment.

**CLAIM 5: VIOLATION OF THE STORED COMMUNICATIONS ACT, 18 U.S.C. §§ 2701 ET SEQ., AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 18 U.S.C. § 2707, 42 U.S.C. § 1983, AND THE COURT'S EQUITABLE POWERS**

77.     Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

78.     Under the SCA, "a provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service . . . to any governmental entity," without a subpoena or other legal process, absent one of the other applicable exceptions, none of which apply here.  18 U.S.C. §§ 2702(a)(3), (c)(1); 2703(c).

79.     Airbnb is a provider of an electronic communication service within the meaning of the SCA, as it provides to its users "the ability to send or receive wire or electronic communications."  18 U.S.C. § 2510(15).  Airbnb also is a provider of a remote computing service within the meaning of the SCA, as it provides to users "computer storage or processing services by means of an electronic communications system."  *Id.* § 2711(2).

80.     The City is a "governmental entity" under the SCA.  *See id.* § 2711(4) (defining "governmental entity" as "a department or agency of the United States or any State or political subdivision thereof").

81.     Through its verification and affidavit requirements, the Ordinance would require hosting platforms to disclose information pertaining to its users to the City, as part of determining whether Airbnb hosts' rentals are "lawfully registered" on the City's registry and certifying to the City under oath the company's compliance with the law.  S.F. Admin. Code §§ 41A.5(g)(4)(C)-(D).

82.     The Ordinance thus violates and conflicts with the SCA, and Airbnb's rights thereunder, because it requires Airbnb to "divulge a record or other information pertaining

to a subscriber to or customer of such service" to a "governmental entity," without a subpoena or other form of legal process. 18 U.S.C. §§ 2702(a)(3), (c)(1); 2703(c). The Ordinance also interferes with or impedes the accomplishment of the full purposes and objectives of the SCA and is preempted on that basis as well.

83.     Pursuant to 18 U.S.C. § 2707(a)-(b), 42 U.S.C. § 1983, and this Court's equitable powers, Airbnb seeks injunctive relief against the City to prevent its enforcement of the Ordinance, which would conflict with and violate the SCA.

### CLAIM 6: DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201

84.     Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

85.     This action presents an actual controversy between Airbnb and the City concerning the validity of the Ordinance and its enforceability against Airbnb and other online Hosting Platforms.

86.     Based on the foregoing allegations, Airbnb is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that the Ordinance cannot be enforced against Airbnb because such enforcement would violate the CDA, 47 U.S.C. § 230, the Supremacy Clause, U.S. Const. art. VI, cl. 2, the First and Fourteenth Amendments of the United States Constitution, and the SCA, 18 U.S.C. § 2701 *et seq*.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Airbnb respectfully requests that the Court:

87.     Declare that, as applied to Airbnb, the Ordinance violates 47 U.S.C. § 230 and the Supremacy Clause, and is preempted on that basis, because it would permit the imposition of civil or criminal penalties as a result of the publication of third-party rental advertisements or other information provided by third-party hosts on Airbnb.com and impose duties on Airbnb with respect to its protected editorial acts concerning third-party rental advertisements.

88.     Declare that, as applied to Airbnb, the Ordinance violates the First and Fourteenth Amendments of the United States Constitution because it would place content-based restrictions on speech by imposing civil and criminal penalties on Airbnb as a result of third-party

rental listings, and the restrictions the Ordinance would impose are not narrowly tailored to promote a compelling or substantial interest on the part of the City.

89.     Declare that, as applied to Airbnb, the Ordinance violates the First Amendment and Due Process Clause of the Fourteenth Amendment of the United States Constitution because it purports to impose strict criminal liability for the provision of Booking Services for short-term rentals that are not "lawfully registered," in the absence of proof of *mens rea* or scienter.

90.     Declare that, as applied to Airbnb, the Ordinance violates the First Amendment and Due Process Clause of the Fourteenth Amendment of the United States Constitution because the Ordinance is unconstitutionally vague and fails to provide an ordinary person with notice of the conduct it punishes.

91.     Declare that, as applied to Airbnb, the Ordinance violates the SCA and the Supremacy Clause, and is preempted on that basis, because it would require Airbnb to divulge to the City information pertaining to Airbnb users and customers without providing the necessary legal process, such as a valid subpoena to obtain basic subscriber information.

92.     Preliminarily and permanently enjoin the City; its officers, agents, servants, employees, and attorneys; and those persons in concert or participation with them from taking any actions to enforce against Airbnb provisions Sections 41A.5(e) and 41A.5(g)(4)(C)-(E) of the Ordinance, as well as the other portions of Chapter 41A of the San Francisco Administrative Code providing for enforcement and penalties that would penalize Airbnb—including any investigation, arrest, prosecution, or penalty—for: (a) the publication of third-party rental advertisements or other information of third-party hosts on Airbnb's platform; (b) the provision of Booking Services, or the collection of fees, in connection with short-term rentals that are not "lawfully registered"; (c) the failure to screen, monitor, and/or verify whether a host or rental listing is "lawfully registered"; or (d) the failure to provide the City with an affidavit certifying that Airbnb has complied with the Ordinance.

93.     Award Airbnb its reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

FIRST AMENDED COMPLAINT

1              94.     Award Airbnb such other and further relief as the Court deems just and

2 proper.

3

4 DATED: September 6, 2016             MUNGER, TOLLES & OLSON LLP

5

6                                      JOHN W. SPIEGEL
                                     JONATHAN H. BLAVIN

7                                      ELLEN M. RICHMOND
                                     JOSHUA PATASHNIK

8

9                            By:   */s/ Jonathan H. Blavin*

10                                JONATHAN H. BLAVIN
                       Attorneys for Plaintiff Airbnb, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT

                                                              CASE NO. 3:16-CV-03615-JD