# EXHIBIT K

**City and County of San Francisco, Government Audit and Oversight Committee**

**June 2, 2016 Meeting Transcript**

**Administrative Code - Short Term Residential Rentals and Hosting Platforms**

Transcript Range from 8:48 to 29:31 and 2:26:09 to 2:38:47 (excluding public comments)

|        | **Begin Transcription 8:48** |
|--------|------------------------------|
| Peskin | Madam Clerk, could you please read the next item? |
| Clerk  | Yes, Item #3 is an ordinance amending the Administrative Code to revise the residential unit conversion ordinance to require housing platforms to verify that a residential unit is on the City registry prior to listing. |
| Peskin | Thank you, and we have been joined by the chief sponsor of this ordinance – Supervisor David Campos, and I want to thank Supervisor Campos for his leadership on this issue, as well as the coalition of housing advocates, homeowners, tenants, public safety advocates, hotel workers, the hotel council, the apartment association, the tenants union; uh, for lending their support to this very reasonable and long overdue piece of legislation intended to fix some of the loopholes in my predecessor's well-intended, but yet evolving and still flawed legislation around short-term rentals.  With that, let me turn it over to Supervisor Campos. |
| Campos | Thank you very much, Mr. Chairman.  And I want to thank you and your staff for working so closely with us on this item.  I'm proud to be the co-sponsor of this piece of legislation with you and colleagues, I want to thank the committee for their attention to this matter.  I am handing out amendments that we will be introducing to the legislation.  But, essentially, where we are and what's before you today – and I want to thank all of the members of the public on both sides of this issue who have come out for this item.  What's before you today is a very modest and very simple proposal that is aimed at helping us, here in San Francisco, preserve the very precious housing stock that we have.  And we know that we have a housing crisis and what we are doing through this very modest amendment is simply closing a loophole in our current short term rental law.  I would like to once again, thank Supervisor Peskin and a coalition that has been working on this for quite some time.  I also want to thank for their co-sponsorship – Supervisor Mar and Supervisor Avalos.  This legislation mandates that web platforms support, not hinder, the enforcement of our current short term law here in San Francisco.

Let me be very clear – this is not about changing the existing law – it simply about making sure that this law that has been in effect for 18 months or so, that this law is actually enforced.  And it's ultimately about corporate responsibility… about an industry that has made, and continues to make, tens of millions of dollars in this business, in this line of work, taking responsibility for the negative impact that their having on the housing stock.  And why is that important?  It's important because we have been facing for the last two to three years, a housing crisis unlike anything that San Francisco has seen. |

Again, this proposal is about enforcement and the proposal specifically mandates that hosting platforms like Airbnb verify that a host has actually registered with the City and County before they actually advertise their short term rental on their website.  It's that simple.  If a hosting platform fails to do so, we believe that that hosting platform has a responsibility to be a good citizen, that hosting platform under this amendment would be penalized up to $1,000 a day.  While the current law has set rules for hosts stipulating that all hosts must register with the City and County and post a registration number; as of today, more than 75% of the 7,000 plus Airbnb hosts (and that's just 7,000 with Airbnb alone) have not registered.  And yet, what we see is platforms like Airbnb allowing those folks, knowing that they are breaking the law, to advertise on their platform.  Two budget and legislative analysts' reports, as well as extensive reporting by the San Francisco Chronicle (of all entities), show that this industry continues to exacerbate our worsening housing crisis by taking even more units off the market.  Last year, the budgeting analyst did a report that found that Airbnb alone is responsible for taking up to 2,000 entire units completely off the housing market for the purpose of engaging in commercial short term rentals.  This is why we need to bring the hosting platforms into the regulatory scheme by making sure that they have a role in helping enforcement.

This is something that Planning Department staff, as much as they may try to walk away from those comments, Planning Department staff, when asked about how to enforce this law, have recommended in the past, and will also, uh, uh, have made it very clear, as have the Budget and Legislative analysts, that the change that we're making is consistent with what is required to have proper enforcement.  The weakness of the current law is the fact that corporate accountability is non-existent.  Corporate accountability is not a part of the equation.  And we believe that, when after two years, we still have 75% of folks out of compliance, that it shows that the law is simply not working.  Again, our law, this amendment does not change anything about the rules that are in place – it simply ensures that hosting platforms follow the law and help the City – not hinder compliance.  Let me say this … that I met with many in the home-sharing community.  I support casual hosts.  I support the mom-and-pop who are using this as a way to make ends meet.  We have no problem with that and we've made that very clear and there is nothing in this law that actually places any burden on those hosts.  But left unregulated, this industry will continue to exacerbate the housing crisis and as much as Airbnb and other platforms may try to hide behind the mom-and-pop casual hosts; those are not the target of this legislation.  At the end of the day, this is simply about enforcement and compliance.  Some have claimed that this legislation would force platforms to police short term rentals.  Let me just say that that is a ridiculous notion.  If you are a rental car agency and you make sure that a person has a license before you let them rent a car from you; does that somehow turn you into policing the folks who rent cars from those entities – those companies?  I don't think it does.  And likewise, it doesn't do that with these platforms.

|  | I am a huge supporter of internet freedom and we work carefully with the City Attorney's office to make sure that we follow the very letter and spirit of the law and what the law provides. As Mark Rotenberg, Executive Director of the Electronic Privacy Information Center has said; if you're operating a business on the internet and providing business-related information pursuant to a licensed activity, it seems entirely reasonable that you comply with those obligations. This law, once again, was carefully written so that it does not come into conflict with Federal law. We're not forcing platforms to edit host content in any way; we're simply saying that with the platforms must be… uh, that they have to be responsible actors and not facilitate unregulated activity; which is the very problem that we have here. That facilitation is happening. Unscrupulous landlords have been abusing the loopholes in our law, robbing San Francisco's residents of the affordable housing they need and Airbnb – from our perspective, to take the analogy further, folks have been robbing residents of that housing and Airbnb has essentially been driving the getaway car. This is government stepping in and saying enough is enough. This has to stop.<br><br>Again, I want to thank a broad range of people who have worked with my office on this legislation – Supervisor Peskin, his Chief of Staff, Sunny Angulo; the San Francisco Tenants Union, Local 2; uh, CCHO, Tenants Together; the San Francisco Apartment Association. You can see it's a very interesting gathering of people who are not usually on the same page. Uh, the Senior and Disability Action, Share Better, Housing Rights Committee and many more. I also want to thank the City Attorney's office, especially Robb Kapla, for his phenomenal work on this piece of legislation. I also know that Kevin Guy, the director of the Office of Short Term Rentals is here and we want to thank him and his staff for the input they have provided. But, before I turn it over to our chief co-sponsor, Supervisor Peskin, I do have a question that I want to – through the Chair – ask the City Attorney. People have been raising concerns in the press about the Communications Decency Act and there's a lot of boasting on the part of Airbnb and others that, you know, they have a winning legal case and, as an attorney, and someone who has litigated many cases before – I know that people tend to do that, tend to say that and boast about those things. But, I want to just directly ask the City Attorney if you can address that issue, because this is not any lay person simply saying this is legally defensible – we want to hear directly from the City Attorney. |
|---|---|
| Peskin | Mr. Givner – good morning. |
| Givner | Good Morning. Deputy City Attorney – Jon Givner. Uh, at your direction, Supervisor, we drafted this ordinance in a way that minimizes any issues under the Communications Decency Act, the law that you mentioned. This ordinance does not regulate the content of any, of any posted information on the website of the hosting platform; rather it regulates the business activities, as you said, Supervisor, of the, of the hosting platforms. So, essentially, it extends the type of information that they must collect in order to engage in booking services and doesn't regulate the content of the website. |
| Campos | Well thank you very much, Mr. Givner, and again, we want to thank our City Attorney and you know, this is an office that has a stellar track record of defending |

-3-

| | |
|---|---|
| | challenges to city law and a very successful record and I know that that will continue should there be litigation here.  I'll just close with an explanation of the amendments that I have handed out; and at some point, I will ask the committee to amend the legislation along those lines, but the amendment essentially do the following:  one, it clarifies the definition of a hosting platform; second, it clarifies what happens the first day the law goes into effect – just to have as much clarity as possible; it clarifies privacy protections for people who have registered with the City; and finally, it actually streamlines the compliance process.  And this is actually an amendment that was made at the request of the Office of Short Term Rentals.  So with that, colleagues, I look forward to the discussion and I respectfully ask for your support.  Again, thank you, Supervisor Peskin, to you and your office and to Carolyn Goossen in my office, who has been working on this for a long time. |
| Peskin | Thank you, Supervisor Campos.  I know there are many individuals here who would like to testify.  I've got a huge stack of speaker cards, so we're going to limit testimony to 2 minutes so that everybody will have a chance to testify.  I also wanted to thank the Office of Short Term Rentals and the City Administrator for offering the opportunity for anyone in this chamber, in this building today, who might want to register.  There is a table outside that is being staffed by Lee Mei Liu and anybody who would like to fill out an application to register a short term rental can do so out this door to my right – your left – so feel free to avail yourself of that opportunity if you wish to do so.  With that, I want to start by acknowledging that we have two members of the Planning Commission and would like to give them an opportunity to address this body.  The Planning Commission actually did a very comprehensive review of the short term rental regimen in San Francisco and made a large list of recommendations – some of which the Board took in 2014 in October when the original short term rental legislation was passed, and some of which were not taken – including the legislation that is before us today.  So, I want to welcome Commissioners Dennis Richards and Kathryn Moore.  If you would like to address this panel; and after that, we will go to members of the public.  Don't be shy. |
| Richards | Do I have two minutes? |
| Peskin | Commissioner – you are a commissioner. |
| Richards | Ok.  I think I've been on record as saying everybody in the room and esteemed supervisors that there is a definite benefit in this city to short term rentals.  I think from a cultural exchange point of view, from a business point of view in terms of additional business for local businesses, local small businesses especially; and for the people who are trying to make ends meet in San Francisco.  So, I don't think short term rentals is anything evil.  I think it's actually a kind of a nifty, interesting way that folks can actually use an unused asset – their extra bedroom when they are on vacation; their flat – for a reasonable period of time.  I remember the morning that I was on the Planning Commission in September of 2014, I remember making a couple of calls to a couple of supervisors that I knew.  A couple of the members of the Board of Supervisors; and I said to them that morning – you know the way the law is written as is, you need some type of better enforcement mechanism.  You need the ability to actually figure out who's renting and who's not and who's renting towards the time limit and who's not renting above the time limit and who's not renting above the time limit.  And I made this case, I made that case in the |

-4-

Planning Commission when this was heard I believe twice before us and even the staff report indicated that requiring registration number was the lynch pin, and I quote, in the report of actually making this law work and making it effective. I sat through a hearing here before, I believe Supervisor Wiener chaired it and I statements such as "Hey let's let this law work." I think enough time has gone by. We are now in June of 2016, fairly 16 months afterwards. The law has gone into place and with a 75% compliance rate, I think everybody can agree that it's really not working. And I know there has been blame around that it's too slow to get registered, it's too complicated, but I will be honest with you. The Office of Short Term Rentals has tried to streamline the process. I completely support streamlining the process, however, with a . . . Let me make an analogy here with a compliance rate of about 25%, I liken that to the country of Greece tax compliance rate. Can you imagine if the homeowner tax and property tax and sales tax compliance rate here was only 25%, we'd be in a real deep hurt. I think it's a fairness issue too. I have talked to many, many hosts who have been following the law and I actually was supporting a ballot initiative last year that did not win but in my conversation with every host, everybody who actually registered said, "You know this is a fairness issue, why do I have to go through registering through the process, through the reporting, and a lot of people don't." And I liken that to jumping turnstiles on the subway. If everybody starts jumping turnstiles on the subway, nobody is going to pay. The other thing I wanted to talk about was the loss of tax revenue. That has yet to come up in this discussion. It's great that Airbnb as a company, an entity, has an agreement with San Francisco to remit taxes on behalf of its host, however, all the other platforms don't. And if you are not registered as a host and your platform does not remit taxes, we are losing that tax money so I think that's part of the equation here that nobody is talking about. It's the elephant in the room. It's probably in the millions of dollars. As to the spurious argument about Airbnb or any hosting platform becoming a police entity, let me remind you when I opened up my checking account yesterday at the bank, they asked me for a Social Security Card. There was nobody from the IRS there at the bank. The bank legally had to require me to provide a Social Security Number. No different than a registration number. The other thing that I was asked yesterday, I went out for a drink and the bar asked me for my driver's license because they didn't want to lose their license. They were carding everybody because if they served minors, they get punished by getting a suspension of their license and they could go out of business so what's the difference between that and what we are asking for today. The other thing yesterday was when I went to Safeway, I gave them my credit card and they asked me for my license to verify that it was actually me who was making the charge. Again, it wasn't Visa or Mastercard standing there, it was Safeway between us is the agent. And lastly, the whole issue around any privacy concerns around a registration number, let me remind you this. I drive around in my car with a license plate on it. It doesn't tell people who I am. It doesn't tell them where I live but it identifies me and for appropriate law enforcement agencies that is exactly what we need. Can you imagine folks if 75% of the people did not drive around their car with a driver's license. It wouldn't make any sense. I believe that this is a common sense very good government piece of legislation and I 100% support it and I ask

| | |
|---|---|
| | that the Supervisors voted unanimously to approve it.  Thank you. |
| Peskin | Thank you Commissioner.  Commissioner Moore, anything you would like to add and then we will go to public comment. |
| Moore | Since Commissioner Richards took more than two minutes I'll make it very simple.  My position about Airbnb is quite clear.  I am in support of where you are and my simple comment would be without more there's no ability to enforce laws and we have come to that point. |
| Chairman | Thank you Commissioner. |
| | **End transcription 29:31** |
| | **Begin transcription 2:26:09** |
| Peskin | Seeing no other members of the public, we will close public comment.  Thank you all for staying through this long hearing.  I want to not only thank Supervisor Campos and all of the supporters and commenters on this legislation, I also wanted to point out that this legislation is very consistent with recommendations that came from the City Administrator and the Office of Short Term Rentals actually back in January, in early January, the Office of Short Term Rentals wrote a letter to Brian Chesky, the CEO of Airbnb, as well as to other platforms, FlipKey, Craigslist, HomeAway, VRBO, suggesting a number of improvements, including that the websites have some process for acknowledging registration compliance so I want to say we are finally getting to implement that here today.  And I am hopeful . . . this is an evolving area of law.  This is not just happening in San Francisco, it's happening in cities across the country and everybody is trying to figure their way to get the right regulatory system in place, that on the one hand allows people to make ends meet and on the other hand does not lead to the loss of thousands of units of affordable housing that are meant to be occupied by residents of a vibrant city, workers in a vibrant city, so we are I think evolving this legislation here today.  And with that I would like to turn it over to Committee member Campos and ask Vice-Chair Yee if he has any comments. |
| Campos | I actually will defer to Supervisor Yee. |
| Peskin | Supervisor Yee, the floor is yours. |
| Yee | Thank you very much Chair Peskin, and I want to thank the public for coming out and giving their comments today.  It was very enlightening.  Some of these stories I've heard before and certainly stories like Jennifer's and Ms. Lee's and Ms. Mullen's from Sunnyside, is not unique.  My office has received many calls with similar type stories.  There seems to be some confusion from people that came today in terms of ones that might have voiced their opposition to this legislation in what it does and what it doesn't do.  I mean . . . they do bring up some concerns.  Can the Office of Short Term Rentals actually improve their system so that people could actually get registered a little easier.  This is a question that begs an answer for a future, maybe, hearing.  The penalty charge again as Supervisor Peskin noted is already on the books and it's just saying to the platforms that you are also responsible as well as anybody else and that there was also confusion if this was only for Airbnb.  It is for all the hosting platforms.  So given that, I . . . for me, I don't understand the opposition that much, mainly because I think this is so straightforward to me.  It is basically asking our hosting platforms to work with us.  To stop the proliferation of unregistered hosts that are out there basically doing a lot |

| | |
|---|---|
| | of damage to our rental stock.  But also really to me what I am hearing from my district is that it's really changing the unique character of some of our neighborhoods.  And what it's doing is that, as Ms. Mullen's was describing in the Sunnyside area.  So because of all this I also . . . I agree with Supervisor Peskin that this is not the end the legislation of around this.  This is evolving.  We need to see what works.  What doesn't work.  What's going to be better for the City in general.  And it's less about the individuals and less about the platforms themselves.  It's really about what do we see our City to be in the future so I will be supporting this legislation and I want to thank Supervisors Campos and Peskin and Mar and Avalos for sponsoring this legislation.  Thank you very much. |
| Peskin | Thank you Supervisor Yee.  And let me just add I've heard loud and clear and look forward to working with members of the Board and Mr. Guy in the short term rental office about process improvements relative to registration.  We've heard that loud and clear and thank you to those of you who imparted that message to us.  And then relative to Ms. Halpern's situation, we should also examine the law to make sure that when a landlord has a tenant who is causing the violation that, that is accounted for in the legislation, it seems to be a catch 22 and is untenable.  And as I commented earlier this whole short term rental phenomenon has done something that no other issue could ever do for this City.  It has brought landlords and tenant leaders together.  It has brought the Tenant's Union and the San Francisco Apartment Association together.  It has brought the hotel employees and restaurant employees, unite here Local 2, together with the Hotel Council of San Francisco, so obviously this is an issue that needs more addressing by the legislative branch of our government and that is precisely what we are here to do today.  And as Supervisor Yee said, "This is an evolving area of law."  No one has really been down this path before.  This first was dealt with in 2014 where it's not even two years later and we are making the tweaks that I think are necessary to make and we will continue to do so as we learn more about how this phenomenon actually works as we make the process improvements relative to registration and the like.  With that Supervisor Campos. |
| Campos | Thank you Mr. Chairman and again I want to thank my colleagues who are supporting this and I was proud to be working on this legislation with Supervisor Peskin and his staff and also Supervisors Avalos and Mar.  And thank Supervisor Yee for his comments and for his support as well as President Breed.  I do want to go back to the comments that we heard from a number of the hosts about improving the process of registration.  And let me say this, that like Supervisor Peskin, I am fully committed to doing whatever we can to improve that process and to that end, I remain open to any specific ideas, suggestions that people have to improve the registration.  That said, the comments that I have heard from Airbnb, the industry have not focused on improving the experience of the hosts when it comes to registration.  I actually think that the industry and Airbnb in particular would be wise to focus its energy on that instead of what we have seen in the past which is to oppose any effort to regulate.  And with that in mind, I want to say that I understand why Airbnb and the industry spent the millions of dollars that it did on the opposition of Prop F.  I supported Prop F but I know that there were many things in there that people could understandably raise issues with.  I honestly . . . I am |

-7-

|   |   |
|---|---|
|   | scratching my head on why Airbnb or the industry would have any problem with this piece of legislation.  I actually think that, you know, having been on this Board of Supervisors for now almost 8 years I still don't understand why they would take the time and spend the energy to oppose something that is so commonsensical, so modest.  And you know what is interesting about the comments that people who came here to speak against this piece of legislation is how the comments actually focused on general issues of concern but not the specifics of this legislation because this legislation really doesn't do any of the things that people who oppose it claim it does.  And I actually think that the more people find out about how modest of a proposal this is, the more I think the opposition will just go away.  And with that in mind I encourage Airbnb, I encourage the industry to join our efforts to come on board because this is one of those things that is such a no brainer.  You know enforcing, the most basic fundamental element of regulation which is the registration system, endorsing that.  I mean, that's a given.  That should be a no brainer, and it's one of those things that I hope that Airbnb and the industry sees the light, just like I think they eventually saw the light on the simplicity and the basic nature of doing something like paying your taxes.  This is up there with paying your taxes.  This is something that is sort of . . . this should not be a debatable issue, so that's the hope that I have.  You know.  And I think that as this goes forward to the Board of Supervisors, I think there is an opportunity for the City family, the elected family, as Mayor Lee calls it, to come together on something that is so simple and you know just basic.  So with that, before an action is taken I would ask the Committee to please adopt the amended version that I circulated. |
| Peskin | I will take that as a motion by Supervisor Campos to adopt the amendments that are before us.  Can we take that without objection?  The amendments are adopted.  I just want to thank Carolyn Goossen in Supervisor Campos's office for her work on this and also shout out Dale Carlson for his stewardship of this issue over now . . . the last couple of years and with that colleagues, can we send this to the full Board as amended with recommendation without objection that will be . . . Is this as a Committee report or not as a Committee report?  As a Committee Report |
| Campos | Mr. Chairman, and one thing, if we can actually excuse President Breed. |
| Peskin | And a motion to excuse President Breed from that vote.  OK, let's move without objection, President Breed is excused, and without objection we will send the item as amended with recommendation as a Committee Report for a hearing on Tuesday, June 7th at the Board of Supervisors.  Thank you all for your testimony. |
|   | **End Transcription 2:38:47** |