# EXHIBIT N

**City and County of San Francisco, Board of Supervisors**

**July 26, 2016 Hearing Transcript**

**Transcript Range from 6:50:25 to 7:02:52**

| Clerk | Item 71 was referred without recommendation. It's an ordinance to amend the administrative code to revise the residential unit conservation ordinance. |
|---|---|
| President Breed | Supervisor Campos. |
| Supervisor Campos | Yes President Breed, and I don't know if we need to recuse. |
| President Breed | Yes. Can we entertain a motion to excuse Supervisor Farrell? Moved by Supervisor Campos, seconded by Supervisor Tang. Colleagues, can we take this without objection? Without objection, the motion to excuse Supervisor Farrell passes. Supervisor Campos. |
| Supervisor Campos | Thank you President Breed. Colleagues, before you are technical amendments to the short-term rental legislation that I co-authored with Supervisor Peskin, and I want to thank our City Attorney, that office, Deputy City Attorney Robb Kapla, for all the work that they have done. The intent of the ordinance is straightforward: to require that hosting platforms do business with law abiding hosts to ensure that they are not aiding and abetting illegal activity. After consultation with the City Attorney about Airbnb's legal arguments, which we know that they filed and we reviewed in the litigation, we agreed that we can simultaneously address the concerns that have been raised in those filings and fulfill the intent of this ordinance. And we can do that with a very few modest revisions, which you have before you. The amendments do a few things. First, they make language more precise. Second, they make modest changes in recordkeeping requirements. Third, they tailor enforcement to work through administrative subpoenas rather than a publication option. These are simple fixes that are designed to eliminate some of the arguable ambiguities that Airbnb has latched on in their lawsuit. The amendments clarify that the City is regulating the business activity of hosting platforms, not website content, as Airbnb and others have alleged. The amendments make clear that the hosting platform may not conduct a business activity where it collects or receives a fee for booking short-term units that are not registered with the City. Let me just make a couple of points clear because I know some of these questions came up when Supervisor Peskin presented this in committee. It does not matter when the platform receives a fee for booking services. For instance, whether it receives the fee in advance of, at the time of, or after the booking, it doesn't matter. Nor does it matter whether it collects the fee directly from the host |

| | |
|---|---|
| | or the user, or indirectly from a third party.  In any instance, the hosting platform will be in violation once the unregistered unit is rented using its booking services.  If a hosting platform simply lists advertisements on its platforms and does not charge a fee, and we have the example of Craigslist, then the hosting platform would not be required to verify registration.  The fact is, we need to make our current short term rental law enforceable.  More than 75% Airbnb hosts are not registered as of today.  This means that our current law is simply not working.  Without an enforceable law, we cannot truly regulate short-term rentals to ensure that housing for residents of San Francisco isn't being taken off the market for housing to engage in short-term rentals.  The City's Budget and Legislative Analyst found that Airbnb alone took up to 2,000 entire units completely off the housing market, making those housing units unavailable to long term residents of the City.  Our hope is that the hosting platforms, Airbnb and others, will drop their lawsuit, will work with the City and County of San Francisco to ensure that this industry supports rather than harms San Francisco.  At this juncture, it is only fair that Airbnb and others help us enforce the law when they themselves actually helped to write that law.  Colleagues, I have circulated the amendments to the legislation and ask again for your support. |
| President Breed | Thank you.  Supervisor Wiener. |
| Supervisor Wiener | Thank you.  In terms of the amendments, yesterday in committee, was it yesterday I guess, I had asked a question about just making sure that this legislation was going to really apply to all hosting platforms.  I know there was a question about that and I've always been of the view that this isn't just about Airbnb or one company, it's about all hosting platforms, and we need to make sure that our regulations are broad and not tailored to go after one company.  I think Airbnb has about half the listings in San Francisco, so it's in our interest to make sure we're being broad.  And so I believe these amendments may address that, but with some clarification, I just want to see whether Supervisor Campos or the City Attorney, just an explanation about how confident we are that this applies broadly to hosting platforms. |
| Deputy City Attorney Kapla | Deputy City Attorney Robb Kapla.  Yes, the ordinance as originally drafted and with the amendments are designed to apply the regulations to any hosting platform that performs and provides these booking services and collects a fee for those services.  It's meant solely upon those who perform and engage in the business activity and perform the business conduct of providing those services for short term rentals. |
| Supervisor Wiener | So for example, a VRBO or HomeAway, whatever they go by, where you can as an owner pay a subscription and then they will connect you to people but then the transaction to rent is done |

|  | separately? Would that be captured under this legislation? |
|---|---|
| Deputy City Attorney Kapla | I wouldn't be able to say exactly how each platform performs their business activity, but if the fee is collected for providing a service that allows the reservation and/or payment services, then that fee would be providing booking services. If the transaction were to occur offline without their business activity, that would be possibly not, but we would have to look at the factual scenario. |
| Supervisor Wiener | Right, so if you're the platform and I own a home that I want to rent out, and I pay you a $1,000 a year so that I can be listed, my home can be listed on your website, and then someone finds me through your website and then separately they give me a check for the rent, is that covered, since I'm paying you the platform an annual fee for the privilege of being on your website? |
| Deputy City Attorney Kapla | If the fee is for services including booking services, yes. If it's solely an advertisement fee, no. |
| Supervisor Wiener | Okay, an advertising fee being essentially like Craigslist, or Craigslist may not even pay a fee. |
| Deputy City Attorney Kapla | Solely to publish, where they provide no services actually arranging the tourist use or taking that payment. |
| Supervisor Wiener | Right, but my understanding with, and I'm mentioning VRBO only by way of example because I'm aware of how they, I think, often do it. You make the reservation through the site, but you actually are emailing separately with the person to arrange payment, and so would that constitute a booking? |
| Deputy City Attorney Kapla | I believe they have several types of providing the service, but if the actual arrangement is made off the site and they do not charge for providing the booking service, then that would not be collecting or receiving a fee for booking service. That type of transaction. I do know that several companies have different types of services provided and when they offer the actual calendaring reservation and/or payment services and accept a fee for those services that business activity would be covered. We are regulating not companies, but actually business activity and conduct. The conduct we're regulating would be the provision and payment for booking services. |
| Supervisor Wiener | Does the payment for booking services, though, have to be specific to that transaction, or can it be an annual subscription fee that you are paying? That is what I'm trying to get at. |
| Deputy City Attorney Kapla | If the annual subscription fee pays for the provision of services and allows the user to use services for it, yes, it will be covered. |
| Supervisor Wiener | So you are paying an annual fee for the privilege of being listed on that website for a transaction, even though it's not specific to one booking, that could be enough? |
| Deputy City Attorney Kapla | Yes, it doesn't need to be specific for that booking if the payment covers booking services that you provide too. |
| Supervisor Wiener | Okay. |

-3-

| President Breed | Okay, Supervisor Campos. |
|---|---|
| Supervisor Campos | Thank you.  I just want to be very careful about this discussion because I don't want any of this to be used as a way of binding what the City's arguments are, because I think that the discussion is very fact specific, but what I can say is that our intent is to cover not just one platform but an entire set of platforms that engage in this kind of business activity, and I think that to the extent that there is an argument that they're not doing that and that they're simply publishing or doing something else that is outside the scope, we certainly want to hear those specific facts, but we've been very careful to make sure that we don't discuss, that we don't bind ourselves to something specific because one of the things that we also know from each one these companies is that their business model is also changing and that some of these companies may be doing things today or will be doing some things in the near future that might be different.  But that's what the intent is, is that. |
| President Breed | Thank you Supervisor Campos.  And just a quick question, do you think that based on your proposed amendments we should have a closed session discussion about this, or are we good to go with things as is? |
| Supervisor Campos | I mean, I feel pretty comfortable moving forward President Breed.  Obviously, it's up to the Board if they feel there is a need for a closed session discussion.  I think that the way I see these amendments are they are mainly there to clarify the original intent and to be more precise and concise in light of what the platforms have said, so I don't think that's necessary, but I'm certainly not opposed to it if people feel there is a need to do so. |
| President Breed | Ok.  And you have some proposed amendments for today. |
| Supervisor Campos | Yes.  So I'm sorry, I distributed that and I failed to make a motion, so I hereby make a motion to amend, along the lines of what we distributed. |
| President Breed | Okay.  Supervisor Campos has made a motion to amend.  It was seconded by Supervisor Peskin.  Colleagues, can we take the amendments without objection?  Without objection, the amendments pass.  And on the item as amended, colleagues can we take this item? |
| Clerk | President we have Supervisor Farrell who is… |
| President Breed | That's right, can you please call the roll on item no. 71 as amended? |
| Clerk | Supervisor Kim. |
| Supervisor Kim | Aye. |
| Clerk | Kim, aye.  Supervisor Mar.  Mar absent.  Supervisor Peskin. |
| Supervisor Peskin | Aye. |
| Clerk | Peskin, aye.  Supervisor Tang. |
| Supervisor Tang | Aye. |
| Clerk | Tang, aye.  Supervisor Wiener. |

-5-

| | |
|---|---|
| Supervisor Wiener | Aye. |
| Clerk | Wiener, aye.  Supervisor Yee. |
| Supervisor Yee | Aye. |
| Clerk | Yee, aye.  Supervisor Avalos. |
| Supervisor Avalos | Avalos, aye. |
| Clerk | Supervisor Breed. |
| President Breed | Aye. |
| Clerk | Breed, aye.  Supervisor Campos. |
| Supervisor Campos | Aye. |
| Clerk | Campos, aye.  Supervisor Cohen. |
| Supervisor Cohen | Aye. |
| Clerk | Cohen, aye.  There are 9 ayes. |
| President Breed | Okay, this ordinance as amended is passed unanimously on the first reading. |