1  JONATHAN H. BLAVIN (State Bar No. 230269)
   jonathan.blavin@mto.com
2  ELLEN M. RICHMOND (State Bar No. 277266)
   ellen.richmond@mto.com
3  JOSHUA PATASHNIK (State Bar No. 295120)
   josh.patashnik@mto.com
4  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, Twenty-Seventh Floor
5  San Francisco, CA 94105-4000
   Telephone:  (415) 512-4000
6  Facsimile:  (415) 512-4077

7  JOHN W. SPIEGEL (State Bar No. 78935)
   john.spiegel@mto.com
8  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, Thirty-Fifth Floor
9  Los Angeles, California 90071-1560
   Telephone:  (213) 683-9100
10 Facsimile:  (213) 687-3702

11 Attorneys for Plaintiff Airbnb, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AIRBNB, INC. and HOMEAWAY.COM, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendant. | Case No. 3:16-cv-03615-JD<br><br>**DECLARATION OF DAVID OWEN IN SUPPORT OF PLAINTIFFS' JOINT MOTION FOR A PRELIMINARY INJUNCTION** |

# DECLARATION OF DAVID OWEN

I, David Owen, declare as follows:

1. I am Head of Policy Strategy for Airbnb, Inc. ("Airbnb"). I am over the age of 18 years and maintain an office at 888 Brannan Street, Suite 400, San Francisco, CA 94103. I have personal knowledge of the matters set forth in this declaration, and if called as a witness, I could and would testify under oath as follows.

## The Airbnb Platform

2. Airbnb was founded in 2008. Airbnb provides an Internet platform and online marketplace through which third parties listing their accommodations ("hosts") and third parties desiring to book accommodations ("guests") can locate each other, communicate with each other, and enter into direct agreements to reserve and book travel accommodations on a short and long-term basis.

3. Airbnb's Internet website, located at www.airbnb.com, provides a means by which interested parties can choose to list their accommodations, a means by which hosts and guests can locate and connect with each other, a means for them to communicate and message one another directly on the platform and determine the material terms for their bookings, and also enables the provision of payment processing services to permit hosts to receive payments electronically.

4. Airbnb has no possessory interest in any of the property or accommodations that third-party hosts may list on the Internet platform. Airbnb therefore is not a proprietor, owner or operator of any accommodation offered by hosts on the Internet platform. Airbnb does not own, manage, operate, or lease hosts' accommodations, and it cannot and does not grant possessory interests or licenses in accommodations offered by hosts.

5. A true and correct copy of Airbnb's Terms of Service, available at https://www.airbnb.com/terms, is attached hereto as Exhibit 1. All users of Airbnb must accept and consent to the Terms of Service in order to post listings on the site or to book reservations. As the Terms of Service state, Airbnb "is not an owner or operator of properties" and "does not own, sell, resell, furnish, provide, rent, re-rent, manage, and/or control properties."

6. Hosts, and not Airbnb, decide whether to list their properties, when to make them available on their calendars, and only hosts set their prices and material terms and decide with whom and when to transact. Airbnb has no control over the physical properties, does not have the right to book or resell or remarket any accommodations for any host, and does not set or otherwise determine the rental price of the accommodations or other terms like security deposits or cleaning fees.

7. Hosts create, and are responsible for, the content that is contained in each individual rental advertisement. As the Terms of Service (Exhibit 1) state, hosts "alone are responsible for any and all Listings and Member Content [they] post." Hosts provide the descriptions of their accommodations, set the length of stay of any particular rental, determine the prices and whether the entire property or a portion thereof is available for booking, and decide when and with whom they want to enter into agreements. Airbnb does not control the content that is created by hosts and is not responsible for it. Airbnb makes available to hosts and guests a variety of ancillary services, such as a payment processing platform and liability protection programs, but it is hosts themselves, not Airbnb, who exercise control over the content and settings of each rental listing.

8. As the Terms of Service (Exhibit 1) provide, "In consideration for the use of Airbnb's online marketplace and platform, Airbnb charges Service Fees." A service fee is received from both the guest and from the host, and is determined as a percentage of the accommodation fee set solely by the host. Airbnb ultimately is compensated for and able to provide its services, including its publishing and listing services, through the receipt of such service fees, which help cover the costs associated with running Airbnb's website and services.

9. Airbnb does not charge hosts any upfront fees at the time they post their listings. Not charging hosts an upfront fee for listing their rentals removes barriers to entry and makes it more likely for hosts to post their listings on Airbnb. Based on Airbnb's experience, the absence of an upfront listing or advertising fee imposed on hosts has been important to the growth and development of the platform.

10. Airbnb advises hosts and guests to be aware of applicable local laws in listing properties and making reservations on the site. For example, the Terms of Service (Exhibit 1) reference parties' "OBLIGATIONS TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS," and state that:

> IN PARTICULAR, HOSTS SHOULD UNDERSTAND HOW THE LAWS WORK IN THEIR RESPECTIVE CITIES. SOME CITIES HAVE LAWS THAT RESTRICT THEIR ABILITY TO HOST PAYING GUESTS FOR SHORT PERIODS…. IN MANY CITIES, HOSTS MUST REGISTER, GET A PERMIT, OR OBTAIN A LICENSE BEFORE LISTING A PROPERTY OR ACCEPTING GUESTS. CERTAIN TYPES OF SHORT-TERM BOOKINGS MAY BE PROHIBITED ALTOGETHER.

11. As a customer-education measure and in order to facilitate better informed decision-making by hosts and guests, Airbnb also provides information about the rules and regulations of particular cities in an effort to help ensure that hosts are fully aware of the relevant laws where they list rentals.

12. Airbnb maintains a "Responsible Hosting" section on the Airbnb website. Airbnb provides a variety of general information for hosts about applicable laws and regulations that they should follow, including safety guidelines and business regulations. A true and correct copy of the "Responsible hosting in the United States" website, available at https://www.airbnb.com/help/article/1376/responsible-hosting-in-the-united-states, is attached hereto as Exhibit 2.

13. Airbnb has a specific page from its "Responsible Hosting" website for San Francisco that provides information about the City's laws and regulations. The page states that with respect to "Short-Term Rental Registration," that "San Francisco requires hosts to register by scheduling an appointment with the Planning Department and paying a fee of $50." The page further informs hosts that "You may include your short-term rental permit number on your listing" in the "'Other Things to Note' field" by "typ[ing] in your permit number following the acceptable permit format for San Francisco. The format is: STR-xxxxxxx. An example would be: STR-1234567." A true and correct copy of the Airbnb webpage entitled "San Francisco, CA," available at https://www.airbnb.com/help/article/871/san-francisco--ca, is attached hereto as Exhibit 3.

14. As part of its Community Compact, Airbnb is committed to helping provide

solutions tailored to the needs of cities like San Francisco with historic housing challenges. For example, Airbnb discretionarily removes listings from its website that Airbnb believes may be offered by hosts with multiple entire home listings or are offered by unwelcome commercial operators. If Airbnb is alerted to shared spaces or private rooms that appear to be operated by unwelcome commercial operators or that do not reflect the community vision, it generally will remove such listings. Within the last year, Airbnb has removed numerous listings from its platform in San Francisco.

15. A true and correct copy of the Airbnb webpage describing its Community Compact, available at https://www.airbnbaction.com/wp-content/uploads/2015/11/Airbnb-Community-Compact.pdf, is attached hereto as Exhibit 4. A true and correct copy of the Airbnb webpage describing its efforts to remove San Francisco listings from its website that Airbnb believes are offered by hosts with multiple entire home listings or are offered by unwelcome commercial operators, available at https://www.airbnbaction.com/airbnb-in-san-francisco-by-the-numbers/, is attached hereto as Exhibit 5.

**The Ordinance**

16. I understand that the amendments to Chapter 41A of the San Francisco Administrative Code passed by the Board of Supervisors on August 2, 2016 (the "Ordinance") require, among other things, that hosting platforms such as Airbnb "verify" that each listing on the website is "lawfully registered at the time [it] is rented for short term rental" with the City and listed on the City's registry of short-term rentals, prior to providing "Booking Services," which the law defines as "any reservation and/or payment service" for short-term rentals where the platform "collects or receives, directly or indirectly through an agent or intermediary, a fee in connection" with such services. I understand that providing Booking Services with respect to a listing for short-term rental which is not "lawfully registered" subjects the hosting platform to penalties of up to $1,000 per day, and imprisonment of up to six months.

17. Verifying the existence of a short-term rental registration number before allowing booking and reservation services to go forward would require significant modifications to the Airbnb platform, require the expenditure of extensive financial and technical resources, and would

-4- Case No. 3:16-cv-03615-JD

DECLARATION OF DAVID OWEN

introduce substantial delays to the booking process. The Ordinance does not establish any procedures or plan for how compliance with this verification process could be achieved. Presumably, it would require a dedicated team of Airbnb employees to manually review and obtain registration number information from hosts on the Airbnb platform, or if they do not provide it, some other source, and then verifying that information with the City prior to enabling booking and reservation services.

18. In addition, I understand that the requirement that a hosting platform verify that each rental is "*lawfully* registered" could be interpreted to mean that a hosting platform must verify not only that the rental appears on the City's registry, but also that it complies with other laws governing short-term rentals in San Francisco (for instance, regarding insurance and taxation). It is not possible for Airbnb to know whether each rental complies with these laws. Monitoring hosts' compliance with these laws would require a team of employees dedicated to auditing hosts' tax, insurance, and other records. Doing so would be prohibitively expensive and highly impractical for numerous other reasons as well. Moreover, to the extent the Ordinance, by requiring hosting platforms to verify that each rental is "lawfully registered … at the time [it] is rented," would require hosting platforms to verify each rental at the time of *occupancy*, that would also be impossible. Airbnb cannot know at the time it provides booking services whether, in the future at the time of occupancy, the rental would be lawfully registered.

19. These verification requirements would necessitate significant alterations to the Airbnb website and platform. For each booking, Airbnb would need to first verify whether a host rental is "lawfully registered" with the City (and possibly whether the rental complies with other City short-term rental laws as well). Presently, once a host decides to enter into a booking transaction with a guest, the Airbnb platform allows the transaction to go through immediately. There is no intermediate step or holding period during which Airbnb verifies that the listing is lawfully registered. Under the Ordinance, however, Airbnb would need to verify whether the listed rental is lawfully registered prior to enabling booking and reservation services, which would significantly delay the booking process. Further, if Airbnb is unable to confirm the registration number for a rental, even if it has a registration number and is otherwise lawful, Airbnb would not

-5- Case No. 3:16-cv-03615-JD
DECLARATION OF DAVID OWEN

process the booking to avoid the significant penalties discussed above.

20. These changes would not only require a re-design of how the Airbnb website presently operates, but it would make the website significantly less useful for hosts and guests. Hosts and guests place great value on being able to enter into a transaction immediately through Airbnb's platform once a host decides to enter into a booking transaction with a guest. The re-design necessary to comply with the Ordinance would eliminate this functionality, and would entail significant delays in confirming bookings for all listings in San Francisco on Airbnb's platform. It also would substantially reduce the number of bookings on the Airbnb platform, including potentially for otherwise lawful, registered rentals that Airbnb could not confirm.

21. I also understand that under the Ordinance, hosting platforms like Airbnb may allow hosts to publish unregistered rentals, though platforms cannot provide reservation and/or payment services with respect to such unregistered rentals. However, if the Airbnb platform were populated by published third-party listings for unregistered rentals that guests could search for and review but could not otherwise book and reserve, this would significantly undermine the user experience and would render the site highly confusing.

22. The effect of these changes to the Airbnb platform would substantially disrupt Airbnb's operations and would injure the significant business goodwill that Airbnb has generated from the users who rely upon its platform for their listings and lodging accommodations.

23. Alternatively, and in light of these issues, if the Ordinance goes into effect Airbnb very likely would need to verify and screen listings for registration information *before* allowing hosts to publish listings on the Airbnb website. Presently, there are approximately 10,022 listings on Airbnb in San Francisco, and in the normal course of business, hosts add new listings, change the status of listings and deactivate listings continually. For listings on the site covered by the Ordinance, Airbnb would need to verify that the listings are lawfully registered with the City.

24. Airbnb's review and verification of third-party listings prior to publishing them would reduce the number of listings on its website. Given the significant penalties under the law, if Airbnb is unable to confirm that a rental is lawfully registered, it will need to prevent the host from listing the rental, even if the rental may be registered and in fact comply with City law.

Further, the manual processes involved would introduce significant delays from when hosts post listings to when those listings in fact appear on the website. It also would require a re-design of how the Airbnb website presently operates.

25. To avoid the significant criminal and civil penalties discussed above, Airbnb also very likely would need to remove thousands of current San Francisco listings from its website. This would include the removal of listings that may otherwise be in compliance with San Francisco law as Airbnb will be unable to confirm that the listings are lawfully registered at the time the law goes into effect, as the law requires immediate compliance.

26. In addition, the City's current burdensome and outdated registration process means that listings could be removed for extensive periods of time due to delay in the registration process, or even removed unnecessarily or wrongly where the listing is registered but that is not yet reflected in the City's systems. Indeed, at a recent hearing, Supervisor Scott Wiener described the current registration process as "cumbersome," particularly for hosts that are only engaging in short-term rentals for a few days or weeks a year. Amendments were added to the law requiring the City to work on improvements to the registration process. Allowing the City to enforce the Ordinance against platforms now while the City is changing the registration process not only increases the level of confusion but also the burden of enforcement.

27. These changes—the significant delay that will be required in posting listings to the Airbnb website, preventing hosts from publishing certain listings on Airbnb, and the removal of substantial numbers of listings from the Airbnb site, including those that otherwise may comply with City law—would cause a significant disruption to Airbnb's operations and would substantially injure the significant business goodwill that Airbnb has earned from the hosts and guests who use and rely upon its platform.

28. Under either scenario discussed above in which Airbnb attempts to comply with the Ordinance—by verifying the registration numbers for rentals before enabling booking and reservation services, or before allowing hosts to publish listings—the trust and goodwill Airbnb has cultivated for potentially thousands of consumers will likely be irreparably lost, and such customers may never return to Airbnb even if the Ordinance is ultimately ruled invalid.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 6th day of September, 2016, in San Francisco, California.

By: _____
DAVID OWEN