THOMAS R. BURKE (CA State Bar No. 141930)
SANJAY M. NANGIA (CA State Bar No. 264986)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: sanjaynangia@dwt.com

JAMES C. GRANT (*pro hac vice*)
 jamesgrant@dwt.com
AMBIKA K. DORAN (*pro hac vice*)
 ambikadoran@dwt.com
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Telephone: (206) 757-8136
Facsimile: (206) 757-7136

Attorneys for HomeAway.com, Inc.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AIRBNB, INC. and HOMEAWAY.COM, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendant. | Case No. 3:16-cv-03615-JD<br><br>**DECLARATION OF BILL FURLONG IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

I, Bill Furlong, declare:

1. I am Vice President of North American business for HomeAway.com, Inc. ("HomeAway"). I make this statement from personal knowledge and am competent to testify to the matters herein.

2. Since 2006, HomeAway has operated an online forum that allows property owners to list their properties for short-term rentals and connect with individuals who are looking to rent a house or apartment when visiting a city, rather than stay in a hotel. Three of HomeAway's

websites are directed primarily to listings and travelers in the United States: HomeAway.com, VRBO.com, and VacationRentals.com. These sites provide listings and allow owners to connect with travelers in all fifty states. Thousands of owners have listed properties in San Francisco on HomeAway's websites in 2016, and I would estimate that more than 10,000 listings have been posted for properties in the city in the last five years.

3. HomeAway does not own or operate any properties and is not a party to rental transactions between listing owners and travelers. Instead, HomeAway's websites provide a forum for owners to advertise their properties and users to review and find properties. Listing owners arrange bookings and rentals with travelers directly.

4. Owners listing their properties on HomeAway's websites can pay for the services in one of two ways. First, they can buy subscriptions to list their properties for a specified period of time (such as a year). Second, they may choose a pay-per-booking option, paying for HomeAway's services based on a percentage of the total cost of a confirmed booking.

5. To list a property on a HomeAway website, an owner must first register for an account. This requires filling out online forms to provide personal information such as name, address, telephone number, and credit card information. HomeAway takes steps to safeguard such personally identifying information (and does the same for such information provided by travelers using the HomeAway websites).

6. Once an owner has an account, he or she can create a listing by providing information about the property, the rental rate and other charges, and other details. After an owner provides this information, the listing appears on the HomeAway website almost immediately. Owners provide the information for their listings, and they are solely responsible for the contents of their listings. HomeAway does not author or generate listings on its own. HomeAway does not review listings before they appear on the website. Attached as **EXHIBIT A** is a true and correct copy of the forms that owners complete to create a listing.

7. HomeAway makes clear that owners are responsible for knowing and complying with the relevant laws. For example, owners listing on HomeAway agree "they are responsible for and agree to abide by all laws, rules, ordinances, or regulations applicable to their listings and

2

rental of their properties, including but not limited to laws and requirements relating to taxes…." Attached as **EXHIBIT B** is a true and correct copy of HomeAway's Terms and Conditions.

8. HomeAway also provides a guide to help owners understand the laws where they offer short-term rentals, which is available at https://help.homeaway.com/articles/What-are-my-city-s-potential-regulations. The website warns that "[b]efore you advertise your property for rent, you should review the state and local laws that may apply." Under the heading "San Francisco," the following text appears:

> Rentals in San Francisco, California, for less than 30 days, may be subject to the City's Administrative Code Chapters 37 and 41A. The regulations indicate that to rent your home, you must be a permanent resident. That is, you must live in your home for at least 275 days per year, or if you have owned or rented for less than a year, 75% of the days.
>
> The regulations also require: registration with the San Francisco Planning Department before renting; collection and remittance of transient occupancy taxes for all short-term rentals; and filing quarterly reports reflecting rental activity and the taxes paid based on that activity. Details about the laws and regulations can be found in the City of San Francisco's Short Term Rental Starter Kit. Additional information about San Francisco's transient occupancy tax can be found here.

9. Owners and travelers can make arrangements to book and rent properties in several ways. In general, they can do so by messaging each other through HomeAway's websites (a service called HomeAway Secured Communication), or by providing or exchanging telephone numbers or personal email addresses and communicating with one another directly. For example, for some listings, a traveler can click a link on the HomeAway websites to make an "inquiry" regarding a property, which goes through HomeAway's systems and causes an email to be sent to the owner about the traveler's message. As noted, further communications between the owner and traveler may occur either through HomeAway's secured system or offline.

10. HomeAway also offers options for online reservations and payments (payments are handled and processed by a third-party service). For owners who have enabled the online

3

FURLONG DECLARATION
Case No. 3:16-cv-03615-JD
DWT 30212292v2 0098221-000004

booking feature, a traveler may make a booking request, which sends a message to the owner's "dashboard" (akin to an inbox) within HomeAway's online systems, and, once again, subsequent communications may take place through the website or offline.

11. When travelers use HomeAway's online booking feature, in the vast majority of instances, a reservation is not effective until accepted by the listing owner (usually within twenty-four hours). Owners using this feature may choose to make payment arrangements separately (*e.g.*, by communications through the website or offline) without using the online payment feature. That a traveler requested a booking does not mean an owner accepted or confirmed the reservation, or, even if he or she did, that the reservation was not later cancelled. For instances when owners use the online payment feature, HomeAway does not act as the merchant of record for properties in the United States and does not handle payments and charges to travelers' credit cards, nor adjustments, reversals or refunds for rentals that did not occur.

12. I understand that San Francisco has enacted a new ordinance regarding short-term residential rentals. I have reviewed the ordinance, including the language that "[a] Hosting Platform may provide, and collect a fee for, Booking Services in connection with short-term rentals for Residential Units located in the City and County of San Francisco only when those Residential Units are lawfully registered on the Short Term Residential Registry at the time the Residential Unit is rented for short term rental." I am not a lawyer and so cannot opine about the legal effect of this language, but it appears HomeAway could violate the law if an owner posted a listing for a property that is not "lawfully" registered at the time it "is rented." For the following reasons, such a requirement would make it extraordinarily difficult, if not impossible, to present listings by owners of properties in San Francisco.

13. Because HomeAway does not generally review listings before they appear on its websites, it does not know whether the properties featured are registered with the City. At a minimum, the ordinance would force HomeAway to adopt a new practice of checking with the City agency responsible for maintaining the Registry to confirm a property is registered before that listing is published. Given the volume of listings in San Francisco, this would require HomeAway to decide between removing San Francisco listings altogether or committing

4

FURLONG DECLARATION
Case No. 3:16-cv-03615-JD
DWT 30212292v2 0098221-000004

1 substantial resources to screening listings, which would significantly delay the time it takes for a listing to appear on the websites and effectively destroy two key benefits of its websites—speed and efficiency.

14. Even if HomeAway could verify a property has a registration number, there is no way for HomeAway to know whether a given property is registered at the time it "is rented." For example, and as noted above, owners and travelers often make arrangements for rentals by phone or using their personal email accounts and without using HomeAway's online payment or booking functions, meaning that in these instances, HomeAway has no way to know whether owners or travelers reached an agreement, much less whether a rental took place. Even for owners and travelers who use HomeAway's online booking function, HomeAway cannot know, before publishing a listing, whether the property is registered at the time it will be occupied by the traveler in the future, especially since bookings can take place more than a year in advance.

15. The ordinance prohibits HomeAway from allowing listings by owners who do not have a "lawful" registration. If this means HomeAway cannot permit listings by owners who have not complied with all applicable short-term rental laws, this would also pose substantial logistical problems. Again, HomeAway would either have to remove San Francisco listings altogether or to devote employees to research all owners' listings and inspect properties (with substantial costs). But even if it did, it could not be assured that HomeAway would not be subject to liability if the city believed a listing or property was non-compliant. And requiring such review would significantly encumber and delay owners' listings and use of the HomeAway websites by owners and travelers.

16. I understand that the ordinance also requires HomeAway to provide monthly signed affidavits that it has complied with these requirements. This would appear to require HomeAway to conduct a second review of each of thousands of listings to be sure that the property featured was "lawfully registered" at the time it was rented.

17. I understand that the ordinance also requires HomeAway to "maintain" certain information about a listing for three years, including, among other data, "dates for which the tourist or transient user procured use of the Residential Unit" and the property registration

5

FURLONG DECLARATION
Case No. 3:16-cv-03615-JD
DWT 30212292v2 0098221-000004

number. As mentioned above, HomeAway does not necessarily know when a property is rented. Thus, the ordinance appears to require HomeAway to collect information that it does not always collect in operating its website, including the dates of a rental and the registration number (the latter of which owners do not always provide). In addition, the ordinance appears to require HomeAway to retain the extensive, private communications between owners and travelers made through the HomeAway websites to the extent those communications may reflect rentals, so that the City may someday require HomeAway to turn over that information.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th day of September, 2016, at Austin, Texas.



Bill Furlong

FURLONG DECLARATION
Case No. 3:16-cv-03615
DWT 30212292v2 0098221-000004