# EXHIBIT A

AMENDED IN BOARD
10/7/14

FILE NO. 140381                                    ORDINANCE NO.  218-14

1    [Administrative, Planning Codes – Amending Regulation of Short-Term Residential Rentals
     and Establishing Fee]
2

3    **Ordinance amending the Administrative Code to provide an exception for permanent**

4    **residents to the prohibition on short-term residential rentals under certain conditions;**

5    **to create procedures, including a registry administered by the Planning Department, for**

6    **tracking short-term residential rentals and compliance; to establish an application fee**

7    **for the registry; amending the Planning Code to clarify that short-term residential**

8    **rentals shall not change a unit's type as residential; affirming the Planning**

9    **Department's determination under the California Environmental Quality Act; and**

10   **making findings of consistency with the General Plan, and the eight priority policies of**

11   **Planning Code, Section 101.1.**

12          NOTE:        Unchanged Code text and uncodified text are in plain Arial font.
                         Additions to Codes are in _single-underline italics Times New Roman font_.
13                       Deletions to Codes are in ~~_strikethrough italics Times New Roman font_~~.
                         Board amendment additions are in double-underlined Arial font.
14                       Board amendment deletions are in ~~strikethrough Arial font~~.
                         Asterisks (*   *   *   *) indicate the omission of unchanged Code
15                       subsections or parts of tables.

16

17          Be it ordained by the People of the City and County of San Francisco:

18          Section 1. The Board of Supervisors of the City and County of San Francisco hereby

19   finds and determines that:

20          (a)      General Plan and Planning Code Findings.

21          (1)      On August 7, 2014, at a duly noticed public hearing, the Planning

22   Commission in Resolution No. 19213 found that the proposed Planning Code amendments

23   contained in this ordinance were consistent with the City's General Plan and with Planning

24   Code Section 101.1(b) and recommended that the Board of Supervisors adopt the proposed

25   Planning Code amendments. A copy of said Resolution is on file with the Clerk of the Board of

Supervisor Chiu
**BOARD OF SUPERVISORS**                                                        Page 1
                                                                               10/17/2014

1    Supervisors in File No. 140381 and is incorporated herein by reference. The Board finds that

2    the proposed Planning Code amendments contained in this ordinance are on balance

3    consistent with the City's General Plan and with Planning Code Section 101.1(b) for the

4    reasons set forth in said Resolution.

5            (2)    Pursuant to Planning Code Section 302, the Board finds that the

6    proposed ordinance will serve the public necessity, convenience and welfare for the reasons

7    set forth in Planning Commission Resolution No. 19213, which reasons are incorporated

8    herein by reference as though fully set forth.

9        (b)    Environmental Findings.  The Planning Department has determined that the

10   actions contemplated in this ordinance comply with the California Environmental Quality Act

11   (California Public Resources Code Section 21000 et seq.). Said determination is on file with

12   the Clerk of the Board of Supervisors in File No. 140381 and is incorporated herein by

13   reference. The Board affirms this determination.

14       (c)    General Findings.

15           (1)    The widespread conversion of residential housing to short-term rentals,

16   commonly referred to as hotelization, was prohibited by this Board because, when taken to

17   extremes, these conversions could result in the loss of housing for permanent residents. But,

18   with the advent of new technology, the rise of the sharing economy, and the economic and

19   social benefits to residents of sharing resources, short-term rental activity continued to

20   proliferate. This has not only led the City to strengthen enforcement of short-term rental laws,

21   but also prompted an examination of parameters to regulate short-term rentals and create a

22   pathway to legalize this activity. The goal of regulation is to ensure compliance with all

23   requirements of the Municipal Code, including but not limited to the Business and Tax

24   Regulations Code and the Residential Rent Stabilization and Arbitration Ordinance, and

25   accountability for neighborhood quality of life.

1       (2)    The exception created here for permanent residents would allow for

2 reasonable flexibility in renting residential spaces on an occasional basis; however, this

3 exception is only intended for residents who meet the definition of permanent resident so that

4 these units remain truly residential in use. Thus, the exception is only for primary residences

5 in which permanent residents are present for a significant majority of the calendar year.

6       (3)    The hosting platforms, as part of a new but growing industry, would also

7 benefit from regulation to ensure good business standards and practices. Such regulation

8 includes required notification to users of local short-term rental laws and transient occupancy

9 tax obligations to San Francisco.

10       (4)    The Office of the Treasurer & Tax Collector retains all of its existing

11 authority under the Business & Tax Regulations Code with regard to the subject matter of this

12 ordinance.

13

14      Section 2.  The Administrative Code is hereby amended by revising Sections 37.9(a),

15 41A.4, 41A.5, and 41A.6, to read as follows:

16

17     **SEC. 37.9.  EVICTIONS.**    Notwithstanding Section 37.3, this Section shall apply as of

18 August 24, 1980, to all landlords and tenants of rental units as defined in Section 37.2(r).

19     (a)    A landlord shall not endeavor to recover possession of a rental unit unless:

20       (1)    The tenant:

21          (A)    Has failed to pay the rent to which the landlord is lawfully entitled

22 under the oral or written agreement between the tenant and landlord:

23             (i)    Except that a tenant's nonpayment of a charge prohibited

24 by Section 919.1 of the Police Code shall not constitute a failure to pay rent; and

25

Supervisor Chiu
**BOARD OF SUPERVISORS**

1                    (ii)     Except that, commencing August 10, 2001, to and including

2    February 10, 2003, a landlord shall not endeavor to recover or recover possession of a rental

3    unit for failure of a tenant to pay that portion of rent attributable to a capital improvement

4    passthrough certified pursuant to a decision issued after April 10, 2000, where the capital

5    improvement passthrough petition was filed prior to August 10, 2001, and a landlord shall not

6    impose any late fee(s) upon the tenant for such non-payment of capital improvements costs;

7    or

8                  (B)     Habitually pays the rent late; or

9                  (C)     Gives checks which are frequently returned because there are

10    insufficient funds in the checking account; or

11             (2)    The tenant has violated a lawful obligation or covenant of tenancy other

12    than the obligation to surrender possession upon proper notice or other than an obligation to

13    pay a charge prohibited by Police Code Section 919.1, and failure to cure such violation after

14    having received written notice thereof from the landlord.

15                  (A)     Provided that notwithstanding any lease provision to the contrary,

16    a landlord shall not endeavor to recover possession of a rental unit as a result of subletting of

17    the rental unit by the tenant if the landlord has unreasonably withheld the right to sublet

18    following a written request by the tenant, so long as the tenant continues to reside in the rental

19    unit and the sublet constitutes a one-for-one replacement of the departing tenant(s). If the

20    landlord fails to respond to the tenant in writing within fourteen (14) days of receipt of the

21    tenant's written request, the tenant's request shall be deemed approved by the landlord.

22                  (B)     Provided further that where a rental agreement or lease provision

23    limits the number of occupants or limits or prohibits subletting or assignment, a landlord shall

24    not endeavor to recover possession of a rental unit as a result of the addition to the unit of a

25    tenant's child, parent, grandchild, grandparent, brother or sister, or the spouse or domestic

partner (as defined in Administrative Code Sections 62.1 through 62.8) of such relatives, or as a result of the addition of the spouse or domestic partner of a tenant, so long as the maximum number of occupants stated in Section 37.9(a)(2)(B)(i) and (ii) is not exceeded, if the landlord has unreasonably refused a written request by the tenant to add such occupant(s) to the unit. If the landlord fails to respond to the tenant in writing within fourteen (14) days of receipt of the tenant's written request, the tenant's request shall be deemed approved by the landlord. A landlord's reasonable refusal of the tenant's written request may not be based on the proposed additional occupant's lack of creditworthiness, if that person will not be legally obligated to pay some or all of the rent to the landlord. A landlord's reasonable refusal of the tenant's written request may be based on, but is not limited to, the ground that the total number of occupants in a unit exceeds (or with the proposed additional occupant(s) would exceed) the lesser of (i) or (ii):

(i)     Two persons in a studio unit, three persons in a one-bedroom unit, four persons in a two-bedroom unit, six persons in a three-bedroom unit, or eight persons in a four-bedroom unit; or

(ii)    The maximum number permitted in the unit under state law and/or other local codes such as the Building, Fire, Housing and Planning Codes; or

(3)     The tenant is committing or permitting to exist a nuisance in, or is causing substantial damage to, the rental unit, or is creating a substantial interference with the comfort, safety or enjoyment of the landlord or tenants in the building, and the nature of such nuisance, damage or interference is specifically stated by the landlord in writing as required by Section 37.9(c); or

(4)     The tenant is using or permitting a rental unit to be used for any illegal purpose, *provided however that a landlord shall not endeavor to recover possession of a rental unit*

1    *solely as a result of a first violation of Chapter 41A that has been cured within 30 days written notice to*

2    *the tenant*; or

3           (5)    The tenant, who had an oral or written agreement with the landlord which

4    has terminated, has refused after written request or demand by the landlord to execute a

5    written extension or renewal thereof for a further term of like duration and under such terms

6    which are materially the same as in the previous agreement; provided, that such terms do not

7    conflict with any of the provisions of this Chapter; or

8           (6)    The tenant has, after written notice to cease, refused the landlord access

9    to the rental unit as required by State or local law; or

10          (7)    The tenant holding at the end of the term of the oral or written agreement

11   is a subtenant not approved by the landlord; or

12          (8)    The landlord seeks to recover possession in good faith, without ulterior

13   reasons and with honest intent:

14              (i)    For the landlord's use or occupancy as his or her principal

15   residence for a period of at least 36 continuous months;

16              (ii)    For the use or occupancy of the landlord's grandparents,

17   grandchildren, parents, children, brother or sister, or the landlord's spouse, or the spouses of

18   such relations, as their principal place of residency for a period of at least 36 months, in the

19   same building in which the landlord resides as his or her principal place of residency, or in a

20   building in which the landlord is simultaneously seeking possession of a rental unit under

21   Section 37.9(a)(8)(i). For purposes of this Section 37.9(a)(8)(ii), the term spouse shall include

22   domestic partners as defined in San Francisco Administrative Code Sections 62.1 through

23   62.8.

24              (iii)    For purposes of this Section 37.9(a)(8) only, as to landlords who

25   become owners of record of the rental unit on or before February 21, 1991, the term "landlord"

1   shall be defined as an owner of record of at least 10 percent interest in the property or, for

2   Section 37.9(a)(8)(i) only, two individuals registered as domestic partners as defined in San

3   Francisco Administrative Code Sections 62.1 through 62.8 whose combined ownership of

4   record is at least 10 percent. For purposes of this Section 37.9(a)(8) only, as to landlords who

5   become owners of record of the rental unit after February 21, 1991, the term "landlord" shall

6   be defined as an owner of record of at least 25 percent interest in the property or, for Section

7   37.9(a)(8)(i) only, two individuals registered as domestic partners as defined in San Francisco

8   Administrative Code Sections 62.1 through 62.8 whose combined ownership of record is at

9   least 25 percent.

10          (iv)     A landlord may not recover possession under this Section

11   37.9(a)(8) if a comparable unit owned by the landlord is already vacant and is available, or if

12   such a unit becomes vacant and available before the recovery of possession of the unit. If a

13   comparable unit does become vacant and available before the recovery of possession, the

14   landlord shall rescind the notice to vacate and dismiss any action filed to recover possession

15   of the premises. Provided further, if a noncomparable unit becomes available before the

16   recovery of possession, the landlord shall offer that unit to the tenant at a rent based on the

17   rent that the tenant is paying, with upward or downward adjustments allowed based upon the

18   condition, size, and other amenities of the replacement unit. Disputes concerning the initial

19   rent for the replacement unit shall be determined by the Rent Board. It shall be evidence of a

20   lack of good faith if a landlord times the service of the notice, or the filing of an action to

21   recover possession, so as to avoid moving into a comparable unit, or to avoid offering a

22   tenant a replacement unit.

23          (v)     It shall be rebuttably presumed that the landlord has not acted in

24   good faith if the landlord or relative for whom the tenant was evicted does not move into the

25

1    rental unit within three months and occupy said unit as that person's principal residence for a

2    minimum of 36 continuous months.

3            (vi)    Once a landlord has successfully recovered possession of a rental

4    unit pursuant to Section 37.9(a)(8)(i), then no other current or future landlords may recover

5    possession of any other rental unit in the building under Section 37.9(a)(8)(i). It is the intention

6    of this Section that only one specific unit per building may be used for such occupancy under

7    Section 37.9(a)(8)(i) and that once a unit is used for such occupancy, all future occupancies

8    under Section 37.9(a)(8)(i) must be of that same unit, provided that a landlord may file a

9    petition with the Rent Board, or at the landlord's option, commence eviction proceedings,

10   claiming that disability or other similar hardship prevents him or her from occupying a unit

11   which was previously occupied by the landlord.

12           (vii)   If any provision or clause of this amendment to Section 37.9(a)(8)

13   or the application thereof to any person or circumstance is held to be unconstitutional or to be

14   otherwise invalid by any court of competent jurisdiction, such invalidity shall not affect other

15   chapter provisions, and clauses of this Chapter are held to be severable; or

16           (9)     The landlord seeks to recover possession in good faith in order to sell the

17   unit in accordance with a condominium conversion approved under the San Francisco

18   subdivision ordinance and does so without ulterior reasons and with honest intent; or

19           (10)    The landlord seeks to recover possession in good faith in order to

20   demolish or to otherwise permanently remove the rental unit from housing use and has

21   obtained all the necessary permits on or before the date upon which notice to vacate is given,

22   and does so without ulterior reasons and with honest intent; provided that a landlord who

23   seeks to recover possession under this Section 37.9(a)(10) shall pay relocation expenses as

24   provided in Section 37.9C except that a landlord who seeks to demolish an unreinforced

25   masonry building pursuant to Building Code Chapters 16B and 16C must provide the tenant

1  with the relocation assistance specified in Section 37.9A(f) below prior to the tenant's vacating

2  the premises; or

3      (11)    The landlord seeks in good faith to remove temporarily the unit from

4  housing use in order to be able to carry out capital improvements or rehabilitation work and

5  has obtained all the necessary permits on or before the date upon which notice to vacate is

6  given, and does so without ulterior reasons and with honest intent. Any tenant who vacates

7  the unit under such circumstances shall have the right to reoccupy the unit at the prior rent

8  adjusted in accordance with the provisions of this Chapter. The tenant will vacate the unit only

9  for the minimum time required to do the work. On or before the date upon which notice to

10  vacate is given, the landlord shall advise the tenant in writing that the rehabilitation or capital

11  improvement plans are on file with the Central Permit Bureau of the Department of Building

12  Inspection and that arrangements for reviewing such plans can be made with the Central

13  Permit Bureau. In addition to the above, no landlord shall endeavor to recover possession of

14  any unit subject to a RAP loan as set forth in Section 37.2(m) of this Chapter except as

15  provided in Section 32.69 of the San Francisco Administrative Code. The tenant shall not be

16  required to vacate pursuant to this Section 37.9(a)(11), for a period in excess of three months;

17  provided, however, that such time period may be extended by the Board or its Administrative

18  Law Judges upon application by the landlord. The Board shall adopt rules and regulations to

19  implement the application procedure. Any landlord who seeks to recover possession under

20  this Section 37.9(a)(11) shall pay relocation expenses as provided in Section 37.9C; or

21      (12)    The landlord seeks to recover possession in good faith in order to carry

22  out substantial rehabilitation, as defined in Section 37.2(s), and has obtained all the necessary

23  permits on or before the date upon which notice to vacate is given, and does so without

24  ulterior reasons and with honest intent. Notwithstanding the above, no landlord shall endeavor

25  to recover possession of any unit subject to a RAP loan as set forth in Section 37.2(m) of this

1  Chapter except as provided in Section 32.69 of the San Francisco Administrative Code; Any

2  landlord who seeks to recover possession under this Section 37.9(a)(12) shall pay relocation

3  expenses as provided in Section 37.9C; or

4       (13)   The landlord wishes to withdraw from rent or lease all rental units within

5  any detached physical structure and, in addition, in the case of any detached physical

6  structure containing three or fewer rental units, any other rental units on the same lot, and

7  complies in full with Section 37.9A with respect to each such unit; provided, however, that

8  guestrooms or efficiency units within a residential hotel, as defined in Section 50519 of the

9  Health and Safety Code, may not be withdrawn from rent or lease if the residential hotel has a

10  permit of occupancy issued prior to January 1, 1990, and if the residential hotel did not send a

11  notice of intent to withdraw the units from rent or lease (Administrative Code Section 37.9A(f),

12  Government Code Section 7060.4(a)) that was delivered to the Rent Board prior to January 1,

13  2004; or

14       (14)   The landlord seeks in good faith to temporarily recover possession of the

15  unit solely for the purpose of effecting lead remediation or abatement work, as required by

16  San Francisco Health Code Articles 11 or 26. The tenant will vacate the unit only for the

17  minimum time required to do the work. The relocation rights and remedies, established by

18  San Francisco Administrative Code Chapter 72, including but not limited to, the payment of

19  financial relocation assistance, shall apply to evictions under this Section 37.9(a)(14).

20       (15)   The landlord seeks to recover possession in good faith in order to

21  demolish or to otherwise permanently remove the rental unit from housing use in accordance

22  with the terms of a development agreement entered into by the City under Chapter 56 of the

23  San Francisco Administrative Code.

24       (16)   The tenant's Good Samaritan Status (Section 37.2(a)(1)(D)) has expired,

25  and the landlord exercises the right to recover possession by serving a notice of termination of

1  tenancy under this Section 37.9(a)(16) within 60 days after expiration of the Original and any

2  Extended Good Samaritan Status Period.

3       * * * *

4

5  **SEC. 41A.4.  DEFINITIONS.**

6       *Whenever used in this Chapter 41A, the following words and phrases shall have the definitions*

7  *provided in this Section:*

8       **Business Entity.** *A corporation, partnership, or other legal entity that is not a natural*

9  *person that owns or leases one or more residential units.*

10       **Complaint.**  *A complaint submitted to the Department* ~~by an interested party~~ *alleging*

11  *a violation of this Chapter 41A and that includes the* ~~r~~Residential ~~u~~Unit's *address, including unit*

12  *number, date(s) and nature of alleged violation(s), and any available contact information for the*

13  ~~o~~Owner *and/or resident of the* ~~r~~Residential ~~u~~Unit *at issue.*

14       **Conversion or Convert.** *A change of use from* ~~r~~Residential ~~u~~Use *to* ~~t~~Tourist *or*

15  ~~t~~Transient ~~u~~Use, *including, but not limited to, renting a* ~~r~~Residential ~~u~~Unit *as a* ~~t~~Tourist *or* ~~t~~Transient

16  ~~u~~Use.

17       **Department.**  *The Planning Department.*

18       **Director.**  *The Director of the Planning Department.*

19       **Hosting Platform.**  *A person or entity that provides a means through which an* ~~o~~Owner

20  *may offer a* ~~r~~Residential ~~u~~Unit *for* ~~t~~Tourist *or* ~~t~~Transient ~~u~~Use. *This service is usually, though not*

21  *necessarily, provided through an online platform and generally allows an* ~~o~~Owner *to advertise the*

22  ~~r~~Residential ~~u~~Unit *through a website provided by the* ~~h~~Hosting ~~p~~Platform *and provides a means for*

23  *potential tourist or transient users to arrange* ~~t~~Tourist *or* ~~t~~Transient ~~u~~Use *and payment, whether the*

24  *tourist or transient pays rent directly to the* ~~o~~Owner *or to the* ~~h~~Hosting ~~p~~Platform.

25

1        ***Interested Party.*** *A* p*P*ermanent *R*Resident *of the building in which the* t*T*ourist *or*

2  t*T*ransient u*U*se *is alleged to occur,* any homeowner association of associated with the building

3  Residential Unit in which the Tourist or Transient Use is alleged to occur, the Owner of the

4  Residential Unit in which the Tourist or Transient Use is alleged to occur, *the City and County of*

5  *San Francisco, or any non-profit organization exempt from taxation pursuant to Title 26, Section 501*

6  *of the United States Code, which has the preservation or improvement of housing as a stated purpose in*

7  *its articles of incorporation or bylaws.*

8        ***Owner.*** *Owner includes any person who is the owner of record of the real property. As*

9  *used in this Chapter 41A, the term "Owner" includes a lessee where the lessee is offering a*

10  r*R*esidential u*U*nit for t*T*ourist or t*T*ransient use.

11        ***Permanent Resident.*** *A person who occupies a* r*R*esidential u*U*nit for at least 60

12  *consecutive days with intent to establish that unit as his or her primary residence. A* p*P*ermanent

13  r*R*esident *may be an owner or a lessee.*

14        ***Primary Residence.*** *The* p*P*ermanent r*R*esident's *usual place of return for housing as*

15  *documented by* at least two of the following: *motor vehicle registration*~~,~~; *driver's license*~~,~~; *voter*

16  *registration*~~,~~; tax documents showing the Residential Unit as the Permanent Resident's

17  residence for the purposes of a *home owner's tax exemption*~~,~~; *or* ~~other such evidence~~ a utility bill.

18  A person may have only one Primary Residence.

19        ~~(a)~~ **Residential Unit.** Room or rooms, including a condominium or a room or

20  dwelling unit that forms part of a tenancy-in-common arrangement, in any building, or portion

21  thereof, which is designed, built, rented, leased, let or hired out to be occupied for r*R*esidential

22  u*U*se~~, or which is occupied as the home or residence of four or more households living independently~~

23  ~~of each other in dwelling units~~ as defined in the San Francisco Housing Code~~, provided that the~~

24  ~~residential unit was occupied by a permanent resident on or after February 8, 1981. It is presumed that~~

25

1    ~~a residential unit was occupied by a permanent resident on or after February 8, 1981, and the owner~~

2    ~~has the burden of proof to show that a residential unit is not subject to this Chapter~~.

3    *(b)* **Residential Use.** Any use for occupancy of a *dwelling* r*Residential* u*U*nit by a

4    p*Permanent* r*Resident*.

5    ***Short-Term Residential Rental.*** *A* t*T*ourist or t*T*ransient u*U*se where all of the

6    *following conditions are met:*

7    *(a)* *the* r*Residential* u*U*nit is offered for t*T*ourist or t*T*ransient u*U*se by the

8    p*Permanent* r*Resident of the* r*Residential* u*U*nit;

9    *(b)* *the* p*Permanent* r*Resident is a natural person;*

10   *(c)* *the* p*Permanent* r*Resident has registered the* Residential U*u*nit and maintains

11   *good standing on the Department's Short-Term Residential Rental Registry; and*

12   *(d)* *the* r*Residential* u*U*nit; *is not subject to the Inclusionary Affordable Housing*

13   *Program set forth in Planning Code Section 415 et seq.*~~;~~ *is not a residential hotel unit* ~~as defined in~~

14   subject to the  provisions of *Chapter 41,* unless such unit has been issued a Permit to Convert

15   under Section 41.12; is not otherwise a designated as a below market rate or income-

16   restricted Residential Unit under City, state, or federal law; *and no other requirement of federal or*

17   *state law, this Municipal Code, or any other* ~~application~~ applicable *law or regulation prohibits the*

18   *permanent resident from subleasing, renting, or otherwise allowing Short-Term Residential Rental of*

19   *the* r*Residential* u*U*nit.

20   ***Short-Term Residential Rental Registry or Registry.*** *A database of information*

21   *maintained by the Department that includes information regarding* p*Permanent* r*Residents who are*

22   *permitted to offer* r*Residential* u*U*nits *for Short-Term Residential Rental.* Only one Permanent

23   Resident per Residential Unit may be included on the Registry at any given time. *The* r*Registry*

24   *shall be available for public review to the extent required by law, except that, to the extent permitted by*

25

1  *law, the Department shall redact any* p*P*ermanent r*R*esident names from the records available for

2  public review.

3     ~~(c)~~   **Tourist or Transient Use.** *Any U*use of a r*R*esidential u*U*nit for occupancy for

4  less than a 30-day term of tenancy, or occupancy for less than 30 days of a r*R*esidential u*U*nit

5  leased or owned by a b*B*usiness e*E*ntity, whether on a short-term or long-term basis,

6  including any occupancy by employees *or guests of a* b*B*usiness e*E*ntity for less than 30 days

7  where payment for the r*R*esidential u*U*nit is contracted for or paid by the b*B*usiness e*E*ntity.

8     ~~(d)   Permanent Resident. A person who occupies a residential unit for at least 60~~

9  ~~consecutive days with intent to establish that unit as his or her principal place of residence.~~

10    ~~(e)   Conversion or Convert. The change of the use or to rent a residential unit from~~

11  ~~residential use to tourist or transient use.~~

12    ~~(f)   Owner. Owner includes any person who is the owner of record of the real property.~~

13  ~~Owner includes a lessee where an interested party alleges that a lessee is offering a residential unit for~~

14  ~~tourist or transient use.~~

15    ~~(g)   Interested Party. A permanent resident of the building in which the tourist or transient~~

16  ~~use is alleged to occur, the City and County of San Francisco, or any non-profit organization exempt~~

17  ~~from taxation pursuant to Title 26, Section 501 of the United States Code, which has the preservation~~

18  ~~or improvement of housing as a stated purpose in its articles of incorporation or bylaws.~~

19    ~~(h)   Director. The Director of the Department of Building Inspection.~~

20

21    **SEC. 41A.5.  UNLAWFUL CONVERSION; REMEDIES.**

22    (a)    **Unlawful Actions.** *Except as set forth in subsection 41A.5(g), i*~~I~~t shall be unlawful

23  for

24       (1)    any O~~o~~wner to offer a~~n apartment~~ R~~r~~esidential U~~u~~nit for rent for T~~t~~ourist or

25  T~~t~~ransient U~~u~~se~~,~~*;*

1         (2)    any ~~O~~owner to offer a ~~R~~residential ~~U~~unit for rent to a ~~B~~business ~~E~~entity

2 that will allow the use of a ~~R~~residential ~~U~~unit for ~~T~~tourist or ~~T~~transient ~~U~~use~~,~~; or

3         (3)    any ~~B~~business ~~E~~entity to allow the use of a ~~R~~residential ~~U~~unit for ~~T~~tourist

4 or ~~T~~transient ~~U~~use.

5     (b)    **Records Required.** The ~~O~~owner and ~~B~~business ~~E~~entity, *if any,* shall retain and

6 make available to the Department ~~or Building Inspection occupancy~~ records to demonstrate

7 compliance with this Chapter *41A upon written request as provided herein. Any Permanent Resident*

8 *offering his or her Primary Residence as a Short-Term Residential Rental shall retain and make*

9 *available to the Department records to demonstrate compliance with this Chapter 41A, including but*

10 *not limited to records demonstrating Primary Residency,* ~~and~~ *the number of days per calendar year he*

11 *or she has occupied the Residential Unit,* and the number of days per calendar year, with dates

12 and the duration of each stay, the Residential Unit has been rented for Short-Term Residential

13 Rental Use.

14     (c)    **Determination of Violation.** Upon the filing of a *written C*~~c~~omplaint that an

15 Owner or Business Entity has engaged in an *alleged* unlawful ~~c~~*C*onversion ~~has occurred~~ or

16 that a Hosting Platform is not complying with the requirements of subsection (g)(~~5~~4)(A), the

17 Director shall take reasonable steps necessary to determine the validity of the ~~c~~*C*omplaint.

18 The Director may independently determine whether an ~~O~~owner or ~~B~~business ~~E~~entity may be

19 renting a ~~R~~residential ~~U~~unit for ~~T~~tourist or ~~T~~transient ~~U~~use ~~as defined~~ in *violation of* this Chapter

20 *41A* or whether a Hosting Platform has failed to comply with the requirements of subsection

21 (g)(~~5~~4)(A). To determine if there is a violation of this Chapter *41A*, the Director may initiate an

22 investigation of the subject property or Hosting Platform's allegedly unlawful activities. This

23 investigation may include, but is not limited to, an inspection of the subject property and/or a

24 request for any pertinent information from the ~~O~~owner, ~~or~~ *Business Entity,* or Hosting Platform,

25 such as leases, business records, or other documents. The Director shall have discretion to

1    determine whether there is a potential violation of this Chapter 41A and whether to conduct an

2    administrative review hearing as set forth below. Notwithstanding any other provision of this

3    Chapter 41A, any alleged violation related to failure to comply with the requirements of the

4    Business and Tax Regulations Code shall be enforced by the Treasurer/Tax Collector under

5    the provisions of that Code.

6         (d)    **Civil Action.** Following the filing of a _C_~~c~~omplaint and the determination of a

7    violation by the Director through an administrative review hearing as set forth in this Chapter

8    41A, _the City_ ~~and County of San Francisco~~ may institute civil proceedings for injunctive and

9    monetary relief against a Hosting Platform for violation of subsection (g)(4)(A) or the City _or_

10   any other i~~I~~nterested p~~P~~arty may institute _civil_ proceedings for injunctive and monetary relief

11   _against an Owner or Business Entity_. In addition, ~~the~~ _an_ O~~o~~wner,_ or_, ~~or B~~~~b~~usiness E~~e~~ntity _in_

12   _violation of this Chapter or a Hosting Platform in violation of subsection (g)(4)(A)_ may be liable

13   for civil penalties of not more than $1,000 per day for the period of the unlawful ~~rental~~_activity_. If

14   the City or the i~~I~~nterested p~~P~~arty is the prevailing party, the City or the i~~I~~nterested p~~P~~arty shall

15   be entitled to the costs of enforcing this Chapter _41A_, including reasonable attorneys' fees,~~ up~~

16   ~~to the amount of the monetary award,~~ pursuant to an order of the Court. Any monetary award

17   obtained by the City and County of San Francisco in such a civil action shall be deposited in

18   the ~~Mayor's Office of Housing,~~ Housing Affordability Fund ~~less the reasonable costs incurred~~

19   ~~by the City and County of San Francisco in pursuing the civil action~~ Department to be used for

20   enforcement of Chapter 41A. The Department, through the use of these funds, shall

21   reimburse City departments and agencies, including the City Attorney's Office, for all costs

22   and fees incurred in the enforcement of this Chapter 41A.

23        (e)    **Criminal Penalties.** Any O~~o~~wner or B~~b~~usiness E~~e~~ntity who rents a R~~r~~esidential

24   U~~u~~nit for T~~t~~ourist or T~~t~~ransient U~~u~~se ~~as defined~~ in _violation of_ this Chapter _41A without correcting_

25   _or remedying the violation as provided for in subsection 41A.6(b)(7)_ shall be guilty of a

1    misdemeanor. Any person convicted of a misdemeanor hereunder shall be punishable by a

2    fine of not more than $1,000 or by imprisonment in the County Jail for a period of not more

3    than six months, or by both. Each R~residential U~unit rented for T~tourist or T~transient U~use

4    shall constitute a separate offense.

5        (f)      **Method of Enforcement, Director.** The Director shall have the authority to

6    enforce this Chapter against violations thereof by any or all of the means provided for in this

7    Chapter 41A.

8        *(g)*      *Exception for Short-Term Residential Rental.*

9        *(1)*      *Notwithstanding the restrictions set forth in this Section 41A.5, a Permanent*

10    *Resident may offer his or her Primary Residence as a Short-Term Residential Rental if* ~he or she~*:*

11        *(A)*      occupies t~The~ Residential Unit is occupied by the Permanent

12    Resident occupies the Residential Unit *for no less than 275 days* out of the preceding per out of

13    any given the *calendar year* in which the Residential Unit is rented as a Short-Term Residential

14    Rental or, proportional share thereof if he or she if the Permanent Resident has not rented or

15    owned the Residential Unit for the full preceding calendar year, for no less than 75% of the

16    days he or she has owned or rented the Residential Unit;

17        *(B)*      The Permanent Resident *maintains records for two years*

18    *demonstrating compliance with this Chapter, including but not limited to information demonstrating*

19    *Primary Residency, the number of days per calendar year he or she has occupied the Residential Unit,*

20    the number of days per calendar year the Residential Unit has been rented as a Short-Term

21    Residential Rental, *and compliance with the insurance requirement in Subsection (D). These records*

22    *shall be made available to the Department upon request;*

23        *(C)*      The Permanent Resident *complies with any and all applicable*

24    *provisions of state and federal law and the San Francisco Municipal Code, including but not limited to*

25    *the requirements of the Business and Tax Regulations Code by, among any other applicable*

1  *requirements, collecting and remitting all required transient occupancy taxes, and the occupancy*

2  *requirements of the Housing Code;*

3  (D)  The Permanent Resident *maintains* homeowner's or renter's

4  property or casualty*liability insurance* appropriate to cover the Short-Term Residential Rental

5  Use *in the aggregate of not less than $*150,000*500,000 or conducts each Short-Term Residential*

6  *Rental transaction through a Hosting Platform that provides* a guarantee program relating to

7  property damage in an amount not less than $150,000 to owners per incident*equal or greater*

8  *coverage. Such coverage shall defend and indemnify the Owner(s), as named additional*

9  *insured, and any tenant(s) in the building for their bodily injury and property damage arising*

10 *from the Short-Term Residential Use;*

11 (E)  registers, and maintains registry of, the *The Residential Unit is*

12 *registered* on the Short-Term Residential Rental Registry prior to offering the Residential Unit for

13 use as a Short-Term Residential Rental. Offering a Residential Unit for Short-Term

14 Residential Rental while not maintaining good standing on the registry shall constitute a

15 violation of this Chapter 41A; and

16 (F)  includes t*he Permanent Resident includes the Department-issued*

17 *registration number* is included *on any* hHosting pPlatform *listing or other listing offering the*

18 *Residential Unit for use as a Short-Term Residential Rental;*

19 (G)  f*For units subject to the rent control provisions of Section 37.3, the*

20 *Permanent Resident complies with the initial rent limitation for subtenants and charges no more rent*

21 *than the rent the* primary Permanent r*Resident is paying to any landlord per month; and*

22 (H)  The Permanent Resident *can demonstrate to the satisfaction of the*

23 *Department that the Residential Unit and the property on which it is located is not subject to any*

24 *outstanding Building, Electrical, Plumbing, Mechanical, Fire, Health, Housing, Police, or Planning*

25 *Code enforcement, including any notices of violation, notices to cure, orders of abatement, cease and*

1   *desist orders, or correction notices. The Department shall not include a property that is subject to any*

2   *such outstanding violations in the Registry.* If such a violation occurs once a Residential Unit has

3   been included in the Registry, the Department shall suspend the Residential Unit's registration

4   and registration number until the violation has been cured.

5   (2)   Additional Requirements.

6   (A)   Offering a Residential Unit for Short-Term Residential Rental,

7   including but not limited to advertising the Residential Unit's availability, while not maintaining

8   good standing on the Registry shall constitute an unlawful conversion in violation of this

9   Chapter 41A and shall subject the person or entity offering the unit in such a manner to the

10   administrative penalties and enforcement procedures, including civil penalties, of this Chapter.

11   (B)   Only one Permanent Resident may be associated with a

12   Residential Unit on the Registry, and it shall be unlawful for any other person, even if that

13   person meets the qualifications of a "Permanent Resident", to offer a Residential Unit for

14   Short-Term Residential Rental.

15   (C)   A Permanent Resident offering a Residential Unit for Short-Term

16   Residential Rental shall maintain a valid business registration certificate.

17   (D)   A Permanent Resident offering a Residential Unit for Short-Term

18   Residential Rental shall post a clearly printed sign inside his or her Residential Unit on the

19   inside of the front door that provides information regarding the location of all fire extinguishers

20   in the unit and building, gas shut off valves, fire exits, and pull fire alarms.

21   (2~~3~~)   *Short-Term Residential Rental Registry Applications,* ~~and~~ *Fee,* and Reporting

22   Requirement.

23   (A)   *Application. Registration shall be for a two-year term, which may be*

24   *renewed by the Permanent Resident by filing a completed renewal application. Initial and renewal*

25   *applications shall be in a form prescribed by the Department. The Department shall determine, in its*

1  *sole discretion, the completeness of an application.* Upon receipt of a complete initial application,

2  the Department shall send mailed notice to the owner of record of the Residential Unit,

3  informing the owner that an application to the Registry for the unit has been received. If the

4  Residential Unit is in a RH-1(D) zoning district, the Department shall also send mailed notice

5  to any directly associated homeowner association that has previously requested such notice.

6  *Both the initial application and any renewal application shall contain information sufficient to*

7  *show that the Residential Unit is the Primary Residence of the applicant,* and *that the applicant is the*

8  *unit's Permanent Resident,* and that the applicant has the required insurance coverage and

9  business registration certificate. *In addition to the information set forth here, the Department may*

10  *require any other additional information necessary to show the Permanent Resident's compliance with*

11  *this Chapter 41A. Primary Residency* may shall *be established by showing the Residential Unit is*

12  *listed as the applicant's residence on* at least two of the following: any *motor vehicle registration,;*

13  *driver's license,;* or *voter registration,;* or tax documents showing the Residential Unit *as the*

14  Permanent Resident's *Primary Residence for home owner's tax exemption purposes,* and*; or* any

15  other information as required by the Department utility bill. *A renewal application shall contain*

16  *sufficient information to show that the applicant is the Permanent Resident and has occupied the unit*

17  *for at least 275 days of each of the two preceding calendar years. Upon the Department's*

18  *determination that an application is complete, the unit shall be entered into the Short-Term Residential*

19  *Rental Registry and assigned an individual registration number.*

20  *(B)    Fee.  The fee for the initial application and for each renewal shall be*

21  *$50, payable to the Director. The application fee shall be due at the time of application. Beginning with*

22  *fiscal year 2014-2015, fees set forth in this Section may be adjusted each year, without further action*

23  *by the Board of Supervisors, as set forth in this Section.* Not later than April 1Within six months of

24  the effectiveoperative date of this ordinance and after holding a duly noticed informational

25  hearing at the Planning Commission, *the Director shall report to the Controller the revenues*

1  *generated by the fees for the prior fiscal year and the prior fiscal year's costs of establishing and*

2  *maintaining the registry* and enforcing the requirements of this Chapter 41A, *as well as any other*

3  *information that the Controller determines appropriate to the performance of the duties set forth in this*

4  *Chapter.* After the hearing by the Planning Commission, but N*not later than* May 15August 1,

5  2015, *the Controller shall determine whether the current fees have produced or are projected to*

6  *produce revenues sufficient to support the costs of establishing and maintaining the registry,* enforcing

7  the requirements of this Chapter 41A *and any other services set forth in this Chapter and that the*

8  *fees will not produce revenue that is significantly more than the costs of providing such services. The*

9  *Controller shall, if necessary, adjust the fees upward or downward for the upcoming fiscal year as*

10 *appropriate to ensure that the program recovers the costs of operation without producing revenue that*

11 *is significantly more than such costs. The adjusted rates shall become operative on July 1.*

12          (C)     Reporting Requirement.  To maintain good standing on the

13 Registry, the Permanent Resident shall submit a report to the Department on January 1 of

14 each year regarding the number of days the Residential Unit or any portion thereof has been

15 rented as a Short-Term Residential Rental since either initial registration or the last report,

16 whichever is more recent, and any additional information the Department may require to

17 demonstrate compliance with this Chapter 41A.

18          (454)  *Requirements for Hosting Platforms.*

19          (A)     *Notice to Users of Hosting Platform.  All Hosting Platforms shall provide*

20 *the following information in a notice to any user listing a Residential Unit located within the City and*

21 *County of San Francisco through the Hosting Platform's service. The notice shall be provided prior to*

22 *the user listing the Residential Unit and shall include the following information: that Administrative*

23 *Code Chapters 37 and 41A regulate Short-Term Rental of Residential Units; the requirements for*

24 *Permanent Residency and registration of the unit with the Department; and the transient occupancy tax*

25 *obligations to the City.*

1     *(B) A Hosting Platform shall comply with the requirements of the Business*

2 *and Tax Regulations Code by, among any other applicable requirements, collecting and remitting all*

3 *required Transient Occupancy Taxes, and this provision shall not relieve a Hosting Platform of liability*

4 *related to an occupant's, resident's, Business Entity's, or Owner's failure to comply with the*

5 *requirements of the Business and Tax Regulations Code.* A Hosting Platform shall maintain a record

6 demonstrating that the taxes have been remitted to the Tax Collector and shall make this

7 record available to the ~~Department~~ Tax Collector upon request. ~~Additionally, a Hosting~~

8 ~~Platform's failure to provide the required notice to users under subsection 41A.5(g)(4)(A) shall~~

9 ~~be a violation of this Chapter.~~

10     *(C) Any* ~~such~~ *violation* of a Hosting Platform's responsibilities under ~~this~~

11 ~~subsection (g)(5)(A)~~ *shall subject the Hosting Platform to* the administrative penalties and

12 enforcement provisions of this Chapter, including but not limited to payment of civil penalties ~~a~~

13 ~~fine payable to the Department~~ *of up to $1,000 per day for the period of the failure to*

14 *comply*~~provide notice or the failure to provide the required information to the Department~~, with

15 the exception that any violation related to failure to comply with the requirements of the

16 Business and Tax Regulations Code shall be enforced by the Treasurer/Tax Collector under

17 that Code.

18     ~~(5~~6~~5)~~ *The exception set forth in this subsection (g) provides an exception only to the*

19 *requirements of this Chapter 41A. It does not confer a right to lease, sublease, or otherwise offer a*

20 *residential unit for Short-Term Residential Use where such use is not otherwise allowed by law, a*

21 *homeowners association agreement or requirements,* any applicable covenant, condition, and

22 restriction, *a rental agreement, or any other restriction, requirement, or enforceable agreement. All*

23 *Owners and residents are required to comply with the requirements of Administrative Code Chapter*

24 *37, the Residential Rent Stabilization and Arbitration Ordinance, including but not limited to the*

25 *requirements of Section 37.3(c).*

1    *(676)  Department Contact Person. The Department shall designate a contact person*

2    *for members of the public who wish to file Complaints under this Chapter or who otherwise seek*

3    *information regarding this Chapter or Short-Term Residential Rentals. This contact person shall also*

4    *provide information to the public upon request regarding quality of life issues, including for example*

5    *noise violations, vandalism, or illegal dumping, and shall direct the member of the public and/or*

6    *forward any such Complaints to the appropriate City department.*

7    *(787)  Notwithstanding any other provision of this Chapter, nothing in this Chapter*

8    *shall relieve an individual, Business Entity, or Hosting Platform of the obligations imposed by any and*

9    *all applicable provisions of state law and the San Francisco Municipal Code including but not limited*

10   *to those obligations imposed by the Business and Tax Regulations Code. Further, nothing in this*

11   *Chapter shall be construed to limit any remedies available under any and all applicable provisions of*

12   *state law and the San Francisco Municipal Code including but not limited to the Business and Tax*

13   *Regulations Code.*

14   (98)    Annual Department Reporting Requirement.  Within one year of the

15   effective date of this ordinance and annually thereafter, the Department shall provide a report

16   to the Board of Supervisors regarding the Department's administration and enforcement of the

17   Short-Term Residential Rental program. The study shall make recommendations regarding

18   proposed amendments to this Chapter 41A necessary to reduce any adverse effects of the

19   Short-Term Residential Rental program.

20   **SEC. 41A.6.  PROCEDURES FOR DETERMINING ADMINISTRATIVE PENALTIES.**

21   (a)    **Notice of Complaint.** Within ~~15~~30 days of the filing of a Ceomplaint and upon

22   the Director's independent finding that there may be a violation of this Chapter, the Director

23   shall notify the Oeowner by certified mail that the Oeowner's Reesidential Ueunit is the subject of

24   an investigation for an unlawful use and provide the date, time, and place of an administrative

25   review hearing in which the eOwner can respond to the Ceomplaint. If the Director finds there

is no violation of this Chapter or basis for an investigation for an unlawful activity, the Director shall so inform the complainant within 30 days of the filing of the Complaint. If the Complaint concerns the failure of a Hosting Platform to comply with the requirements of subsection (g)(~~54~~)(A), within ~~15~~30 days of the filing of the Complaint and upon the Director's independent finding that there may be a violation of this Chapter, the Director shall notify the Hosting Platform by certified mail that the Hosting Platform is the subject of an investigation for failure to comply with the requirements of ~~this Chapter~~that subsection and provide the date, time, and place of an administrative review hearing in which the Hosting Platform can respond to the Complaint.

(b)     **Administrative Review Hearings**. In the event the Director determines that an administrative review hearing shall be conducted, the Director's appointed hearing officer will hold an administrative review hearing within ~~60~~45 days of the ~~filing of the Ccomplaint~~ Director's finding that there may be a violation of this Chapter 41A to review all information provided by the Interested Party, members of the public, City staff, and the Owner or Hosting Platform for the investigation and the hearing officer shall thereafter make a determination whether the ~~O~~owner or Hosting Platform has violated this Chapter.

(1)     For hearings regarding alleged unlawful conversions, ~~N~~notice of the hearing shall be conspicuously posted on the building that is the subject of the hearing. ~~The Oowner shall state under oath at the hearing that the notice remained posted for at least seven calendar days prior the hearing.~~ The Director shall appoint a hearing officer to conduct the hearing.

(2)     Pre-hearing Submission. No less than ten ~~working~~ days prior to the administrative review hearing, parties to the hearing shall submit written information to the Director including, but not  limited to, the issues to be determined by the hearing officer and

1   the evidence to be offered at the hearing. Such information shall be forwarded to the hearing

2   officer prior to the hearing along with any information compiled by the Director.

3           (3)    Hearing Procedure. If more than one hearing is requested for ~~R~~residential

4   ~~U~~units located in the same building at or about the same time, the Director shall consolidate

5   all of the hearings into one hearing. The hearing shall be ~~tape~~ recorded. Any party to the

6   hearing may at his or her own expense cause the hearing to be recorded by a certified court

7   reporter. Parties may be represented by counsel and shall have the right to cross-examine

8   witnesses. All testimony shall be given under oath. Written decisions and findings shall be

9   rendered by the hearing officer within ~~20~~30 ~~working~~ days of the hearing. Copies of the findings

10   and decision shall be served upon the parties by certified mail. A notice that a copy of the

11   findings and decision is available for inspection between the hours of 9:00 a.m. and 5:00 p.m.

12   Monday through Friday shall be posted by the ~~O~~owner or the Director in the building in the

13   same location in which the notice of the administrative review hearing was posted.

14           (4)    Failure to Appear. In the event the ~~O~~owner<u>, authorized Hosting Platform

15   representative,</u> or an interested party fails to appear at the hearing, the hearing officer may

16   nevertheless make a determination based on the evidence in the record and files at the time

17   of the hearing, and issue a written decision and findings.

18           (5)    Finality of the Hearing Officer's Decision and Judicial Review. The

19   decision of the hearing officer shall be final. Within 20 days after service of the hearing

20   officer's decision, any party may seek judicial review of the hearing officer's decision.

21           (6)    Hearing Officer Decision and Collection of Penalties. ~~If any imposed~~

22   ~~administrative penalties and costs have not been deposited at the time of the Hearing~~

23   ~~Officer's decision~~<u>Upon the Hearing Officer's decision</u>, the Director may proceed to collect the

24   penalties and costs pursuant to the lien procedures set forth in Subsection 41A.6(~~e~~<u>d</u>),

25   consistent with the Hearing Officer's decision.

1    (7)    Remedy of Violation. If the Hearing Officer determines that a violation has

2  occurred, the Hearing Officer's Decision ~~should~~shall:

3    (A~~i~~)    Specify a reasonable period of time during which the O~~o~~wner,

4  Business Entity, or Hosting Platform must correct or otherwise remedy the violation; ~~and~~

5    (B~~ii~~)    ~~State that if the violation is not corrected or otherwise remedied~~

6  ~~within this period,~~Detail the amount of any administrative penalties the O~~o~~wner or Hosting

7  Platform shall be ~~may be~~ required to pay ~~the administrative penalties~~as set forth in Subsection

8  41A.6(c); and,

9    (C)    For violations by Owners. ~~S~~state that if the violation is not corrected

10  or otherwise remedied within this period, the Department shall remove or prohibit the registration

11  of the Residential Unit from the Short-Term Residential Registry for one year even if the

12  Residential Unit otherwise meets the requirements for Short-Term Residential Rental ~~and may~~

13  ~~prohibit the offending Owner from including such Residential Unit on any Hosting Platform for~~

14  ~~a period of one year~~.

15    (8)    If the Hearing Officer determines that no violation has occurred, the

16  determination is final.

17  (c)    Imposition of ~~Administrative~~ Penalties for ~~Unabated~~ Violations and

18  Enforcement Costs.

19    (1)    Administrative Penalties. If ~~the violation has continued unabated beyond~~

20  ~~the time specified in the notice required by~~ the Hearing Officer determines that a violation has

21  occurred, an administrative penalty ~~of~~ shall be assessed as follows:

22    (A)    for the initial violation, not more than four times the standard hourly

23  administrative rate of $~~104.00~~121.00 ~~shall be charged~~ for each unlawfully converted unit, or for

24  each identified failure of a Hosting Platform to comply with the requirements of subsection

25

1  (g)(54), per day from the ~~day the unlawful use activity commenced~~ notice of Complaint until

2  such time as the unlawful ~~use~~ activity terminates;

3          (B)     for the second violation ~~within six months of any hearing held~~

4  ~~pursuant to this Chapter~~ by the same Owner(s), Business Entity, or Hosting Platform, *not more*

5  *than eight times the standard hourly administrative rate of $121.00 for each unlawfully converted unit,*

6  or for each identified failure of a Hosting Platform to comply with the requirements of

7  subsection (g)(54), per day *from the day the unlawful* ~~use~~activity *commenced until such time as the*

8  *unlawful* ~~use~~ activity *terminates;* and

9          (C)     for the third and any subsequent violation ~~within 12 months of any~~

10  ~~hearing held pursuant to this Chapter~~ by the same Owner(s), Business Entity, or Hosting

11  Platform, *not more than twelve times the standard hourly administrative rate of $121.00 for each*

12  *unlawfully converted unit* or for each identified failure of a Hosting Platform to comply with the

13  requirements of subsection (g)(54) per day *from the day the unlawful* ~~use~~ activity *commenced*

14  *until such time as the unlawful* ~~use~~ activity *terminates.*

15          (2)     ~~Enforcement Costs. The Oowner or Hosting Platform shall reimburse the~~

16  ~~City for the costs of enforcement of this Chapter, which shall include, but not be limited to,~~

17  ~~reasonable attorneys' fees.~~

18          (3)     *Prohibition on* Registration and *Listing Unit(s) on Any Hosting Platform.* ~~If the~~

19  ~~violation has continued unabated beyond the time specified in the notice required by the~~

20  ~~Hearing Officer~~In the event of multiple violations, *the Department shall* remove the Residential

21  Unit(s) from the Registry for one year and *include the Residential Unit(s) on a list maintained by*

22  *the Department of Residential Units that may not be listed* ~~by any Permanent Resident~~ *on any*

23  *Hosting Platform until compliance. Any Owner* or Business Entity *who continues to list a Residential*

24  *Unit in violation of this section shall be liable for additional* administrative penalties and *civil*

25  *penalties of up to $1,000 per day of unlawful inclusion.*

1    (d)    **Notice of** ~~Continuing~~ **Violation and Imposition of Penalties**. The Director shall

2  notify the *O~~o~~*wner or Hosting Platform by certified mail ~~that~~ of the violation ~~has continued~~

3  ~~unabated~~ and that administrative penalties shall be imposed pursuant to this Chapter 41A.

4  The notice shall state the time of the ~~continued~~ existence of the violation and the resulting

5  imposition of penalties. Payment of the administrative penalties and enforcement costs shall

6  be made within 30 days of the certified mailed notice to the *O~~o~~*wner or Hosting Platform. If the

7  administrative penalties and enforcement costs are not paid, the Director shall refer the matter

8  to the Treasurer/Tax Collector and/or initiate lien procedures to secure the amount of the

9  penalties and costs against the real property that is subject to this Chapter, under Article XX

10 of Chapter 10 of the ~~San Francisco~~ Administrative Code to make the penalty, plus accrued

11 interest, a lien against the real property regulated under this Chapter. Except for the release of

12 the lien recording fee authorized by Administrative Code Section 10.237, all sums collected by

13 the Tax Collector pursuant to this ordinance shall be ~~held in trust by the Treasurer and~~

14 ~~distributed as provided in Section 41A.5(d) of this Chapter~~ deposited as set forth in subsection

15 (e) below.

16    (e)    **Deposit of Penalties**. ~~Administrative penalties paid pursuant to this Chapter~~

17 ~~shall be deposited in the Mayor's Office of Housing, Housing Affordability Fund less the~~

18 ~~reasonable costs incurred by the City and County of San Francisco in pursuing enforcement~~

19 ~~under this Chapter 41A. If enforcement costs were imposed, such funds shall be distributed~~

20 ~~according to the purpose for which they were collected.~~ Any fees and penalties collected

21 pursuant to this Chapter 41A shall be deposited in the Department, which shall reimburse City

22 departments and agencies, including the City Attorney's Office, for all costs and fees incurred

23 in the enforcement of this Chapter 41A.

24

25

1    Section 3.  The Planning Code is hereby amended by revising Sections 102.7, 102.13,

2    790.88 and 890.88, to read as follows:

3

4    **SEC. 102.7. DWELLING UNIT.**

5    A room or suite of two or more rooms that is designed for, or is occupied by, one family

6    doing its own cooking therein and having only one kitchen. A housekeeping room as defined

7    in the Housing Code shall be a dwelling unit for purposes of this Code. For the purposes of

8    this Code, a live/work unit, as defined in Section 102.13 of this Code, shall not be considered

9    a dwelling unit. *Notwithstanding the foregoing, use of a dwelling unit as a Short-Term Residential*

10   *Rental in compliance with Administrative Code Section 41A.5 shall not alter the use type as a*

11   *residential use.*

12   * * * *

13

14   **SEC. 102.13.  LIVE/WORK UNIT.**

15   A live/work unit is a structure or portion of a structure combining a residential living

16   space for a group of persons including not more than four adults in the same unit with an

17   integrated work space principally used by one or more of the residents of that unit; provided,

18   however, that no otherwise qualifying portion of a structure which contains a Group A

19   occupancy under the San Francisco Building Code shall be considered a live/work unit.

20   *Notwithstanding the foregoing, use of a live/work unit as a Short-Term Residential Rental in*

21   *compliance with Administrative Code Section 41A.5 shall not alter the use type as a live/work unit.*

22   * * * *

23

24   **SEC. 790.88.  RESIDENTIAL USE.**

25

1    A use which provides housing for San Francisco residents, rather than visitors,

2    including a dwelling unit or group housing, as defined in Subsections (a) and (b) below, or a

3    residential hotel, as defined in Section 790.47 of this Code and in Chapter 41 of the San

4    Francisco Administrative Code.  *Notwithstanding the foregoing, use of a dwelling unit as a Short-*

5    *Term Residential Rental in compliance with Administrative Code Section 41A.5 shall not alter the use*

6    *type as a residential use.*

7         (a)    Dwelling Unit. A residential use which consists of a suite of two or more rooms

8    and includes sleeping, bathing, cooking, and eating facilities, but has only one kitchen.

9         (b)    Group Housing. A residential use which provides lodging or both meals and

10   lodging without individual cooking facilities for a week or more at a time in a space not defined

11   as a dwelling unit. Group housing includes, but is not limited to, a rooming house, boarding

12   house, guest house, lodging house, residence club, commune, fraternity and sorority house,

13   monastery, nunnery, convent, and ashram. It also includes group housing operated by a

14   medical or educational institution when not located on the same lot as such institution.

15         * * * *

16

17   **SEC. 890.88.  RESIDENTIAL USE.**

18        A use which provides housing for San Francisco residents, rather than visitors,

19   including a dwelling unit or group housing, as defined in Subsections (a) and (b) below, or a

20   residential hotel, as defined in Section 890.47 of this Code and in Chapter 41 of the San

21   Francisco Administrative Code.  *Notwithstanding the foregoing, use of a dwelling unit as a Short-*

22   *Term Residential Rental in compliance with Administrative Code Section 41A.5 shall not alter the use*

23   *type as a residential use.*

24        (a)    Dwelling Unit. A residential use which consists of a suite of two or more rooms

25   and includes sleeping, bathing, cooking, and eating facilities, and has only one kitchen.

Supervisor Chiu
**BOARD OF SUPERVISORS**

Page 30
10/17/2014

1    (b)    Group Housing. A residential use which provides lodging or both meals and

2    lodging without individual cooking facilities for a week or more at a time in a space not defined

3    as a dwelling unit. Group housing includes, but is not limited to, a roominghouse, boarding

4    house, guest house, lodging house, residence club, commune, fraternity and sorority house,

5    monastery, nunnery, convent, and ashram. It also includes group housing operated by a

6    medical or educational institution when not located on the same lot as such institution.

7    (c)    Single Room Occupancy (SRO) Unit. A dwelling unit or group housing room

8    consisting of no more than one occupied room with a maximum gross floor area of 350 square

9    feet and meeting the Housing Code's minimum floor area standards. The unit may have a

10    bathroom in addition to the occupied room. As a dwelling unit, it would have a cooking facility

11    and bathroom. As a group housing room, it would share a kitchen with one or more other

12    single room occupancy unit/s in the same building and may also share a bathroom. A single

13    room occupancy building (or "SRO" building) is one that contains only SRO units and non

14    nonaccessory living space.

15

16    Section 4.  Other Uncodified Provisions.

17    (a)    Effective Date. This ordinance shall become effective 30 days after enactment.

18    Enactment occurs when the Mayor signs the ordinance, the Mayor returns the ordinance

19    unsigned or does not sign the ordinance within ten days of receiving it, or the Board of

20    Supervisors overrides the Mayor's veto of the ordinance.

21    (b)    Operative Date. This ordinance shall become operative on February 1, 2015.

22    (c)    Undertaking for the General Welfare.  In enacting and implementing this

23    ordinance, the City is assuming an undertaking only to promote the general welfare. It is not

24    assuming, nor is it imposing on its officers and employees, an obligation for breach of which it

25

1    would be liable in money damages to any person who claims that such breach proximately

2    caused injury.

3         (ed)    No Conflict with State or Federal Law. Nothing in this ordinance shall be

4    interpreted or applied so as to create any requirement, power, or duty in conflict with any

5    State or federal law.

6         (de)    Severability. If any of section, subsection, sentence, clause, phrase or word of

7    this ordinance is for any reason held to be invalid or unconstitutional by a decision of any

8    court of competent jurisdiction, such decision shall not affect the validity of the remaining

9    portions of the ordinance.  The Board of Supervisors hereby declares that it would have

10   passed this ordinance and each and every section, subsection, sentence, clause, phrase, and

11   word not declared invalid or unconstitutional without regard to whether any other portion of

12   this ordinance would be subsequently declared invalid or unconstitutional.

13        (ef)    Scope of Ordinance.  In enacting this ordinance, the Board of Supervisors

14   intends to amend only those words, phrases, paragraphs, subsections, sections, articles,

15   numbers, punctuation marks, charts, diagrams, or any other constituent parts of the Municipal

16   Code that are explicitly shown in this ordinance as additions, deletions, Board amendment

17   additions, and Board amendment deletions in accordance with the "Note" that appears under

18   the official title of the ordinance.

19

20   APPROVED AS TO FORM:
     DENNIS J. HERRERA, City Attorney

21   By:

22        MARLENA G. BYRNE
          Deputy City Attorney

23

24   n:\legana\as2014\1200498\00963400.doc

25



# City and County of San Francisco
## Tails
## Ordinance

City Hall
1 Dr. Carlton B. Goodlett Place
San Francisco, CA 94102-4689

---

**File Number:** 140381        **Date Passed:** October 21, 2014

Ordinance amending the Administrative Code to provide an exception for permanent residents to the prohibition on short-term residential rentals under certain conditions; to create procedures, including a registry administered by the Planning Department, for tracking short-term residential rentals and compliance; to establish an application fee for the registry; amending the Planning Code to clarify that short-term residential rentals shall not change a unit's type as residential; affirming the Planning Department's determination under the California Environmental Quality Act; and making findings of consistency with the General Plan, and the eight priority policies of Planning Code, Section 101.1.

September 15, 2014 Land Use and Economic Development Committee - AMENDED, AN AMENDMENT OF THE WHOLE BEARING SAME TITLE

September 15, 2014 Land Use and Economic Development Committee - CONTINUED AS AMENDED

September 29, 2014 Land Use and Economic Development Committee - AMENDED, AN AMENDMENT OF THE WHOLE BEARING SAME TITLE

September 29, 2014 Land Use and Economic Development Committee - RECOMMENDED AS AMENDED

October 07, 2014 Board of Supervisors - AMENDED

     Ayes: 11 - Avalos, Breed, Campos, Chiu, Cohen, Farrell, Kim, Mar, Tang, Wiener and Yee

October 07, 2014 Board of Supervisors - AMENDED

     Ayes: 11 - Avalos, Breed, Campos, Chiu, Cohen, Farrell, Kim, Mar, Tang, Wiener and Yee

October 07, 2014 Board of Supervisors - AMENDED

     Ayes: 11 - Avalos, Breed, Campos, Chiu, Cohen, Farrell, Kim, Mar, Tang, Wiener and Yee

October 07, 2014 Board of Supervisors - AMENDED

     Ayes: 11 - Avalos, Breed, Campos, Chiu, Cohen, Farrell, Kim, Mar, Tang, Wiener and Yee

October 07, 2014 Board of Supervisors - NOT AMENDED

     Ayes: 5 - Avalos, Campos, Kim, Mar and Yee

     Noes: 6 - Breed, Chiu, Cohen, Farrell, Tang and Wiener

October 07, 2014 Board of Supervisors - AMENDED

     Ayes: 11 - Avalos, Breed, Campos, Chiu, Cohen, Farrell, Kim, Mar, Tang, Wiener and Yee

---

October 07, 2014 Board of Supervisors - AMENDED
    Ayes: 11 - Avalos, Breed, Campos, Chiu, Cohen, Farrell, Kim, Mar, Tang, Wiener and Yee

October 07, 2014 Board of Supervisors - NOT AMENDED
    Ayes: 5 - Avalos, Campos, Kim, Mar and Yee
    Noes: 6 - Breed, Chiu, Cohen, Farrell, Tang and Wiener

October 07, 2014 Board of Supervisors - PASSED ON FIRST READING AS AMENDED
    Ayes: 7 - Breed, Chiu, Cohen, Farrell, Kim, Tang and Wiener
    Noes: 4 - Avalos, Campos, Mar and Yee

October 07, 2014 Board of Supervisors - DUPLICATED AS AMENDED

October 21, 2014 Board of Supervisors - NOT AMENDED
    Ayes: 5 - Avalos, Campos, Kim, Mar and Yee
    Noes: 6 - Breed, Chiu, Cohen, Farrell, Tang and Wiener

October 21, 2014 Board of Supervisors - NOT AMENDED
    Ayes: 5 - Avalos, Campos, Kim, Mar and Yee
    Noes: 6 - Breed, Chiu, Cohen, Farrell, Tang and Wiener

October 21, 2014 Board of Supervisors - NOT AMENDED
    Ayes: 5 - Avalos, Campos, Kim, Mar and Yee
    Noes: 6 - Breed, Chiu, Cohen, Farrell, Tang and Wiener

October 21, 2014 Board of Supervisors - FINALLY PASSED
    Ayes: 7 - Breed, Chiu, Cohen, Farrell, Kim, Tang and Wiener
    Noes: 4 - Avalos, Campos, Mar and Yee

File No. 140381

I hereby certify that the foregoing
Ordinance was FINALLY PASSED on
10/21/2014 by the Board of Supervisors of
the City and County of San Francisco.

Angela Calvillo
Clerk of the Board

Mayor

10/27/14
Date Approved

# EXHIBIT B



**SAN FRANCISCO**
# PLANNING DEPARTMENT

## Executive Summary
## Planning and Administrative Code Text Change
### HEARING DATE: AUGUST 7, 2014

1650 Mission St.
Suite 400
San Francisco,
CA 94103-2479

Reception:
415.558.6378

Fax:
415.558.6409

Planning
Information:
415.558.6377

| | |
|---|---|
| *Date:* | July 31, 2014 |
| *Project Name:* | **Amendments Relating to Short-Term Rentals** |
| *Case Number:* | **2014.0707T [Board File No. 140381]** |
| *Initiated by:* | Supervisor David Chiu/ Introduced April 15, 2014 |
| *Staff Contact:* | Aaron Starr, Acting Manager Legislative Affairs |
| | aaron.starr@sfgov.org, 415-558-6362 |
| *Reviewed by:* | AnMarie Rodgers, Senior Policy Advisor |
| | anmarie.rodgers@sfgov.org, 415-558-6395 |
| *Recommendation:* | **Recommend Approval with Modifications** |

## PLANNING CODE AND ADMINISTRATIVE CODE AMENDMENT

The proposed Ordinance would amend the Administrative Code to provide an exception for permanent residents to the prohibition on short-term residential rentals under certain conditions; to create procedures, including a registry administered by the Department of Building Inspection, for tracking short-term residential rentals and compliance; to establish an application fee for the registry; amending the Planning Code to clarify that short-term residential rentals shall not change a unit's type as residential; and making environmental findings, and findings of consistency with the General Plan, and the eight priority policies of Planning Code, Section 101.1.

### The Way It Is Now:

1. The Administrative Code prohibits residential units in buildings with four or more units from being rented out for less than 30 days.

2. The term Short-Term Residential Rental and Hosting Platform are not defined in the Planning or Administrative Code.

3. The Planning Code requires conditional use authorization to convert a residential unit to a hotel use (AKA bed and breakfast). Renting out a residential unit for less than 30 days is not permitted per the Planning Code.

4. Hotels are not permitted in RH-1(D), RH-1, and RH-1(S) zoning districts and are limited to 5 rooms or less in RH-2, RH-3, RM, and RTO Districts. Hotels are permitted to have more than 5 rooms in RC districts, and regardless of the number of rooms require Conditional Use approval.

5. Under the direction of the Zoning Administrator, the Planning Department's enforcement division enforces violations of the Planning Code, including the prohibition on renting residential units out as short-term rentals.

**The Way It Would Be:**

**Administrative Code Changes:**

1. The Administrative Code would be amended to permit permanent residents of residential units in buildings with two or more units to rent their unit as a Short-Term rental for up to 90-days a year.  Single-family homes would not be subject to Chapter 41A and thus would be able to be used as short-term rentals for an unlimited number of days, and hosted rentals[1] would also be unlimited.

2. The Administrative Code would be amended to add the term Short-Term Residential Rentals, which would be defined as follows:

   **Short-Term Residential Rental.** A tourist or transient use where all of the following conditions are met:
   (a) the residential unit is offered for tourist or transient use by the permanent resident[2] of the residential unit;
   (b) the permanent resident is a natural person; and,
   (c) the permanent resident has registered the unit and maintains good standing on the Department's[3] short-term residential rental registry

3. The Administrative Code would be amended to add the term Hosting Platform, which would be defined as follows:

   **Hosting Platform.** A person or entity that provides a means through which an owner may offer a residential unit for tourist or transient use. This service is usually, though not necessarily, provided through an online platform and generally allows an owner to advertise the residential unit through a website provided by the hosting platform and provides a means for potential tourist or transient users to arrange tourist or transient use and payment, whether the tourist or transient pays rent directly to the owner or to the hosting platform.

4. In order to participate in the short-term rental program, the Ordinance requires the permanent resident to:

   1) Register their property with the City,
   2) Maintain residency in the unit for at least 275 days a year,
   3) Comply with all applicable laws, including remitting all required transient occupancy taxes;

---

[1] For the purposes of this report, a "hosted rental" is one where the permanent resident is present during the guest's stay; a "non-hosted rental" is when the permanent resident is not there during the guests stay.

[2] "Permanent Resident" is defined in the Administrative Code as "A person who occupies a residential unit for at least 60 consecutive days with intent to establish that unit as his or her primary residence." The proposed Ordinance would clarify that "a permanent resident may be either an owner or a lessee."

[3] The Ordinance places the Department of Building Inspection in charge of short-term rentals; however the Planning Department's recommendation is to have Planning in charge of short-term rentals.

4) Maintain records for at least two years that demonstrate compliance with City law,

5) Maintain a minimum of $150,000 worth of property or casualty insurance, either personally or through the hosting platform, and

6) Comply with prorated rent limitations for subtenants for units subject to rent control provisions of Section 37.3.

5.  The Ordinance requires short-term rental platforms to collect and remit required City Transit Occupancy Tax.

6.  The Department of Building Inspection (hereinafter "DBI") would be charged with enforcing the rules for short-term rentals.

7.  Enforcement for any violation is through an administrative review hearing, consistent with the existing enforcement procedures of Chapter 41A[4].  .  The proposed Ordinance would add a new enforcement provision that for a violation not corrected within the timeframe established by an administrative hearing officer, DBI may prohibit the an owner or lessee from listing the residential unit on any hosting platform for one year.

8.  The proposed legislation also amends Chapter 37.9 of the Administrative Code. Under the current provisions of Chapter 37.9, a landlord may evict a tenant if the tenant is using or permitting a rental unit to be used for any illegal purpose. The proposed legislation would carve out an exception to this where the "illegal purpose" does not include a first violation of Chapter 41A that has been cured within 30 days written notice to the tenant.

9.  The Ordinance requires hosting platforms to notify any host in San Francisco that:

1) The San Francisco Administrative Code regulates short-term rentals.

2) The Code includes requirements for permanent residency and registration of the unit, and

3) They may be liable transient occupancy tax.

**Planning Code Changes:**

The only changes to the Planning Code add the following language to Sections 102.7 "Dwelling Unit", 102.13 "Live Work Unit", 790.88 "Residential Use", 890.88 "Residential Use".

*Notwithstanding the foregoing, use of a dwelling unit as a Short-Term Residential Rental in compliance with Administrative Code Section 41A.5 shall not alter the use type as a residential use.*

This change would allow any residential unit in the City to be rented out as a Short-Term Residential Rental provided the rental is in compliance with Administrative Code Section 41A.5.  Single-family homes would not be limited to 90-days.  Currently using a residential unit  as a short-term rentals is prohibited by the Planning Code, unless the property owner applies for a conditional use application to operate a small inn or bed and breakfast.

---

[4] Under existing Chapter 41A procedures, DBI first sends a notice of complaint within 15 days of the complaint, and then if a hearing is determined to be required, DBI sets the hearing date within 60 days of the complaint.  Based on the outcome of the hearing, a decision is made as to whether or not the property owner is in violation.

## ISSUES AND CONSIDERATIONS

### Hosting Platforms

A short-term rental hosting platform is generally a web site that allows individuals to list their home or a room in their home for rent on a short-term basis.  There are five main hosting platforms accounting for approximately 80% of the total listings in San Francisco, these include VRBO, Airbnb, HomeAway, Craigslist, and FlipKey.  In most cases, the property owner either manages the listing, or has employed an agent to manage their property as a short-term rental.  These sites take a certain percentage of the rental cost from the host, and some have recently started collecting the city's hotel tax from renters.  Some of these platforms assert that the vast majority of its hosts are simply small-time "home sharers" who earn a few dollars here and there by occasionally renting out a spare room.[5]  However, as the San Francisco Chronicle recently reports, close to 5,000 San Francisco homes, apartments, and private or shared rooms were for rent via Airbnb, and two-thirds were entire houses or apartments, "showing how far Airbnb has come from its couch-surfer origins, and contradicting its portrayal as a service for people who rent out a spare room...6" Further, the Department's enforcement staff has seen instances where real estate investors are buying new properties with short-term renting exclusively in mind.

### Housing Affordability

The Planning Department's paramount concern is the impact that short-term rentals have on the availability and affordability of the City's housing stock.   This concern is derived from Objectives Two and Three in the City's Housing Element, which seek to "retain existing housing units" and "protect the affordability of the existing housing stock," respectively.   Based on surveys that the Department conducted, staff's conservative estimate is that at any one time, anywhere from 4,000-5,000[7] entire units have been removed from San Francisco housing stock and are being advertised online as short-term rentals. This number accounts for nearly 1.3% of all housing units in the City.  For comparison sake, there has been much public concern about the conversion of rental housing to condominiums. From 2009 to 2013, 2,669 units were converted into condominiums—about half the number of units that may currently be lost to tourist use[8].   To address that loss of rent controlled housing, the Board passed an Ordinance[9] that allowed condominium conversions currently in the queue to move forward, but halted all future condominium conversion for 10 years.

San Francisco is in a housing affordability crisis and is frequently described as among the worst in the nation.[10] [11] [12] [13]  Any decrease in residential space available for the City's permanent resident puts an

---

[5] "Can we stop pretending the sharing economy is all about sharing?" (June 30, 2014) Retrieved from www.time.com/money on July 1, 2014.

[6] "Window into Airbnb's hidden impact on S.F." (June 16, 2014) Retrieved from www.SFChronicle.com on July 1, 2014.

[7] This number represents the Department's best estimate of how many entire dwelling units are being listed on all five major short-term rental platforms in San Francisco.  It does not include hosted rentals, where a room or a shared room is being offered while the permanent resident is present.

[8] San Francisco Housing Inventory (2013). Retrieved from www.sfgov.org on July 1, 2014.

[9] Board File Number 120069, Enactment Number 117-13, passed 6/28/13

[10] Fortune Magazine.  July 10, 2014.  "Americas Housing Affordability Crisis is Getting Worse" Matthews, Chris. Retrieved at: http://fortune.com/2014/07/10/us-housing-affordability/

upward pressure on price, exacerbating an already untenable situation.  Further, based on the trends that the Department has seen over the past three years, residential units being rented out as short-term rentals will continue to grow for the foreseeable future (see discussion below).

Taking a unit or even a bedroom out of the long-term rental market and putting it into the short-term rental market also increases the value of the unit.  This commercialization of residential units may inflate the market and keep rents artificially higher than the market would otherwise support.  For instance, based on research the Department conducted in January of this year, a typical studios apartment in the City's Lower Haight neighborhood rents for about $1,900 per month[14].  A short-term rental in the Lower Haight for a similar studio apartment rents for about $180.00 per night for a total of $5,400 per month[15].  In another example, the Department found a six-bedroom, five-bath home in the City' Marina District that rents for about $11,000[16] per month.  A similar six-bedroom, five-bath home in the same neighborhood rents for $1,300 per night for a total of $39,000 per month[17].  The income that can be generated from short-term rentals could encourage speculators to pay more for a unit knowing that they could reap a larger return on their investment; could encourage landlords to seek legal means for eviction of rent control protected units so that the unit may be offered at higher prices; and it could also encourage permanent residents to offer to pay higher rents because they could supplement their income with short-term rentals.

**Neighborhood Character**

The Department is also concerned about how short-term rentals are impacting neighborhood character and the quality of life for San Francisco residents.  A neighborhood made up of permanent residents has a very different character than a neighborhood where everyone is a transient visitor.  While tourists are important for this City's economy and its cultural identity, it's primarily the residents of San Francisco that make it a unique and interesting place to visit.  Permanent residents have a vested interest in maintaining the unique quality of life in San Francisco.  They build community by developing longstanding relationships; help ensure that trash doesn't accumulate on the sidewalks, and are inherently motivated to be respectful of their neighbors.  Many of the complaints that the Department receives about short-term rentals have to do with the hours of activity tourists keep compared to long-term residents with regular nine to five work schedules.  Further, having short-term rentals unregulated

---

[11] A June 21, 2014 article in the NextCity, a city planning nonprofit wrote: "Mayor Lee has called the lack of affordable housing a "crisis" that "threatens to choke off [the city's] economic growth and prosperity for the future". Retrieved from: http://nextcity.org/daily/entry/san-francisco-apartment-cost-affordable-housing

[12] New York Times. April 14, 2014.  "In Many Cities, Rent Is Rising Out of Reach of Middle Class".  Dewan, Shaila.  Retrieved    from:    http://www.nytimes.com/2014/04/15/business/more-renters-find-30-affordability-ratio-unattainable.html

[13] The Economist. April 16, 2014. "The Spectre Haunting San Francisco". London, R.A. Retrieved from: http://www.economist.com/blogs/freeexchange/2014/04/housing-markets

[14] Craigslist.org listing, retrieved January, 2014

[15] Airbnb.com listing, retrieved January, 2014

[16] Craigslist.org listing, retrieved January, 2014

[17] Home2sanfrancsico.com listing, retrieved January 2014.

in residential districts is akin to allowing an unregulated number of hotels in a residential district, something which is either prohibited or at a minimum requires conditional use authorization.

**A Growing Issue**

Short-term rentals have probably been happening in San Francisco for some time, and internet based short-term rental platforms, such as VRBO (Vacation Rentals By Owner), have been around since the mid 1990's.  However, it wasn't until the last few years that hosting platforms started to become more prevalent.  This issue first came to the Department's attention in a significant way in 2011, when staff started to see an increase in the number of complaints from neighbors regarding short-term rentals.  Since then, Department records show a dramatic increase in the number of listings posted online in San Francisco.  In 2011, the Department counted 1,595 rental listings on one short-term rental site.  In 2012, that number increased to 2,533 and in January of this year that number increased to 6,960.  Approximately 70% of listings from one site were for an entire unit.  Other research has found 5,000 listings on one short-term rental platform alone, including both hosted and non-hosted rentals[18].  In 2012, the Department's enforcement team started to track short-term rentals with a separate tracking code.  That year the Department received 25 complaints related to short-term rental use.  In 2013 the number of complaints increased to 40, and as of June 27th of this year we have received approximately 95 complaints.

**Planning Department's Enforcement Efforts**

The Department's Zoning and Compliance Division has worked diligently to bring short-term rental violations into compliance with the Planning Code using current enforcement tools.  Despite limited resources (currently, the Department has seven full-time planners for enforcement of all Planning Code provisions citywide).  For this reason, the Department's enforcement program is generally complaint based and does not involve active monitoring or patrols for violations.  While staff prioritizes short-term rental cases because they represent a loss of housing, the Department does not currently have the resources to actively monitor short-term rental sites nor do these sites necessarily include all the information necessary to open an enforcement case for a specific property.  The current enforcement process typically takes 11 weeks before penalties can be assessed.  Prior to fiscal penalties, staff must send required notices to the property owner and tenant, giving alleged violators due process and the opportunity to comply with the law.  Additionally, these cases can be difficult to prove as ongoing violations, which are required to assess a penalty, due to the transient nature of the use.   Profits from short-term rentals are also so lucrative that even after a violation hosts may attempt to re-list their unit on a different website.

**Hotels, Inns and Bed & Breakfast Uses in Residential Districts**

The Planning Code currently allows short-term rentals in Residential Districts, but they have historically been known as bed and breakfast inns or small hotels[19].  To add a small hotel use in a residential neighborhood the law requires conditional use authorization by the Planning Commission.  Further, such uses are typically limited to 5 rooms, and even then are not permitted in all residential districts.  Conditional Use requires a notice to property owners within 300' of the property, a posted notice on the property, and a public hearing before the Planning Commission.  Principally permitting short-term rentals across the City without sufficient restrictions would allow hotel-like uses in a residential neighborhood without any public process or oversight.  The Department recognizes the difference

---

[18] "Window into Airbnb's hidden impact on S.F." (June 16, 2014) Retrieved from www.SFChronicle.com on July 1, 2014.

[19] Large hotels are generally prohibited.

between renting out a home while on vacation verses a fulltime bed and breakfast; however, as the Department's enforcement team has found, and as the SF Chronicle's own investigation affirmed[20], a significant number of people are using short-term rental sites to circumvent traditional oversight processes and are effectively adding a hotel-like use in a residential neighborhood.

## Overview of Other Jurisdictions

Various cities across the nation are searching for the best regulatory tools to regulate and accommodate short-term rentals in a manner consistent with community values. In general, cities that have adopted overly prescribed operating conditions and a highly regulated permitting process for short-term rentals, such as Chicago, have seen low participation rates.  Other cities, including Austin, seemingly have successfully implemented streamlined regulations that are more effective at maintaining livable and vibrant neighborhoods, while also allowing an emerging business sector to flourish.  Chicago and Austin represent two ends of the spectrum and will be explore in detail below.  In addition, New York City's dense housing stock and struggles with affordability make for an interesting comparison with San Francisco.  Further, New York State's Attorney General succeeded in getting critical information for enforcement.  For these reasons, this report takes a closer look at these three responses to address this emerging issue[21]:

**Chicago.**  Chicago defines "vacation rental" as a dwelling unit with up to six sleeping rooms that are available for rent to transients.  This definition applies to properties that are either tenant occupied or owner occupied as long as the unit will not be occupied by the tenant or owner during the time of the stay.  Offering just a room while the tenant or owner is present is allowed by right.  Vacation rentals, however, require a license at a cost of $500, renewable every two years.  The license requires the owner to obtain liability insurance policy, sets a maximum number of guests allowed by square footage, requires hosts to keep a registry to be maintained for three years, and requires the license number to be posted on all advertisements.  Further, vacation rental operators are required to provide all guests with soap, clean individual bath towels and linens, clean the unit between guests, and provide the guests with the number of a local contact person and post the license number and evacuation diagram within the unit. Operating without a license is a violation punishable by anywhere from $500-$1,000 for every day in operation, and all vacation rentals are required to remit the full hotel tax.  This law does not apply to owner occupied units. This use is limited to specific zoning districts and sets a cap on the number of permits that will be issued at any given time.

This ordinance has been criticized for its onerous operating requirements and although it was enacted in 2011, it has experienced extremely low registration numbers likely because of those high standards.  The main difference between Chicago's regulations and the proposed Ordnance is that Chicago only regulates rentals where the owner is not present, while the proposed Ordinance seeks to address both hosted and non-hosted short-term rentals.  Chicago's regulations also sets strict operating procedures, such as supplying fresh linens and soap, and has no limit on the number of days the unit can be rented.  The proposed Ordinance does not set strict operation procedures and limits the number of days a unit can be rented to 90 days.

---

[20] "Window into Airbnb's hidden impact on S.F." (June 16, 2014) Retrieved from www.SFChronicle.com on July 1, 2014.

[21] For a more comprehensive comparison between what other cities are doing and what the proposed Ordinance is proposing, please see the matrix in Exhibit C

**Austin.**  Austin passed an ordinance in 2012 regulating short-term rentals and requiring a license for every unit being offered for stays of less than 30 days. The license is obtained by submitting an application and paying a $285 registration fee. The license is good for one year and requires neighborhood notification at initial establishment.  Short-term rentals are also required to remit the full 9% hotel tax. Eligible properties are categorized into three types: those that are owner occupied and are renting either a portion or the entire unit, those that are not owner occupied and are a single or two-family property, and those that are a dwelling unit within a multi-family unit. Certain types are restricted by geographic or census tract caps and all properties are subject to building inspections at the initial period of application.   These licenses are issued and monitored through the Code Compliance Department by two full-time inspectors and one full-time administrative personnel who solely handle short-term rental registrations, respond to complaints and violations, and proactively seeking out violators through online advertisements. The program is funded through a fee on Austin utility bills.

In comparison to the proposed Ordinance, Austin limits the number of permits it issues for short-term rentals, requires neighborhood notification to establish a short-term rental and limits which districts and what types of housing are eligible for short-term rentals.  The proposed Ordinance, inclusive of Staff's recommendations does none of these.  Also, Austin does not limit the number of days a unit can be rented, while the proposed Ordinance limits the number of days a unit can be rented to 90 days.

**New York State.**  New York State passed a law in 2010 making it illegal to rent out apartments in residential buildings for less than 30 days. Owners of an apartment or a town house may only rent out one or two rooms and must be present in the home during the time of guests' stays. Additionally, each guest must have access to common areas of the home. In New York City enforcement is both reactive and proactive and handled by the Mayor's Office of Special Enforcement. Enforcement officers conduct random inspections of properties they believe to be operating as illegal hotels, gathering this information from monitoring online hosting platforms. Penalties range but can cost up to $2,500 per day (The proposed Ordinance includes a $1000.00 a day fine). New York's current regulations are similar to the existing ban on short-term rentals in San Francisco; however New York allows residents to rent out rooms in their homes on a short-term basis with no limit on the number of days.  San Francisco does not. Recently, New York State's Attorney General came to an agreement with one specific host platform, Airbnb, in which the company has agreed to provide anonymized data about hosts in New York. No such arrangement has been made with California's State Attorney General, or the San Francisco City Attorney. This data will not include names, addresses or other personally-identifiable information. The Attorney General's Office will have one year to review the anonymized data and then request information about individual hosts who may be subject to further investigation. Both the Attorney General and the Mayor's Office of Special Enforcement have stated their aim is to bring down hosts running illegal hotels out of many units or entire buildings, rather than individuals who rent their single apartment while occasionally out of town.

## REQUIRED COMMISSION ACTION

The proposed Ordinance is before the Commission so that it may recommend adoption, rejection, or adoption with modifications to the Board of Supervisors

## RECOMMENDATION

The Department recommends that the Commission recommend *approval with modifications* of the proposed Ordinance and adopt the attached Draft Resolution to that effect.

Recommend that the Ordinance is amended as follows:

1. Place short-term rental controls in the Planning Code so that the Planning Department is the agency responsible for enforcing on short-term rentals.
2. Modify the Ordinance so that the proposed city-run registry tracks the number of nights a unit has been rented.
3. Require any short-term rental platform or company doing business in San Francisco to provide information on the number of days a property was rented. Information should be reported back to the city on a quarterly basis at a minimum.
4. Identify units that are on the Short-Term Registry in the Department's Property Information Map[22].
5. Amend the Ordinance so that a posting on a short-term rental site without first registering with the City constitutes a violation that can be assessed a penalty, even if the unit was not rented.
6. Require the registration number from the City-run registry to accompany all short-term rental postings.
7. Grant citation authority[23] to the Planning Department if we are chosen to be the enforcement agency for short-term rentals and provide for increased penalties for repeat violators.
8. Subject hosted rentals to the same 90-night limit as non-hosted rentals.
9. Limit single-family homes to the same restrictions as multi-unit buildings.

## BASIS FOR RECOMMENDATION

The Department believes that short-term rentals need to be regulated in order to preserve the City's housing stock, reduce impacts on affordable housing, and to protect the livability of residential neighborhoods. The City's current regulations are no longer sufficient to address this new technology and its associated impacts, and if this industry remains unregulated, the Department believes that the City will continue to lose permanent housing. In crafting its recommendation, the Department sought to create a legal avenue for hosts who want to occasionally rent their primary residence on a short-term basis, while balancing concerns over housing affordability and neighborhood character. The recommendations below mainly focus on improving the enforcement and monitoring of short-term rentals; however the Department believes that the Ordinance also needs to be expanded to include both hosted and non-hosted rentals and that all of the City's dwelling units should be treated the same under the new restrictions.

**Recommendations 1: Place short-term rental controls in the Planning Code so that the Planning Department is the agency responsible for enforcing on short-term rentals.**
As the City agency responsible for regulating land use, the Department should be the agency in charge of for monitoring and enforcing on short-term rentals because this is essentially a land use issue. While the Department of Building Inspection has a more robust enforcement division, the Planning Department

---

[22] Follow this link to view the Department's Property Information Map, http://ec2-50-17-237-182.compute-1.amazonaws.com/PIM/

[23] Citation authority allows an agency to issue a citation and fines immediately when they see a violation, in contrast to our current enforcement efforts, which requires the Department to provide the offender the opportunity to correct the violation before any fines are levied.

believes that *if the enforcement measures outlined in our recommendations are adopted,* we will have the tools to effectively enforce the proposed short-term rental restrictions.

**Recommendation 2-3:**
2.   **Modify the Ordinance so that the proposed city-run registry tracks the number of nights a unit has been rented.**
3.   **Require any short-term rental platform or company doing business in San Francisco to provide information on the number of days a property was rented.  Information should be reported back to the city on a quarterly basis at a minimum.**

The Department believes that these recommendations are imperative to ensure that housing affordability is maintained and that the ordinance can be effectively enforced.  As drafted, the Ordinance does not provide a meaningful enforcement mechanism.  Under the legislation as currently proposed, to participate in the short-term rental program, the permanent resident is required to register their property with the City and maintain records for at least two years to demonstrate compliance with City law.  However, the ordinance provides no way for the enforcement agency to verify that these records are correct and accurate.  To address this issue, the Department proposes a centralized city-run registry that tracks the number of nights a unit has been rented.  Anyone that wants to rent out their units on a short-term basis would need to register their property with the City, and any hosting platform doing business in the City would be required to submit data about how many nights each property was rented on at least a quarterly basis.

Some short-term rental sites, such as Craig's List, only act as bulletin boards and aren't involved with booking the room or the financial transaction between the permanent resident and the renter.  These services are not currently collecting data on how often a unit is rented; however, the Department strongly believes that it is the hosting platforms responsibility to provide this information to the City so that we can effectively enforce these new regulations.  That being said, if the City cannot require all short-term rental sites to report this information, an alternative would be to require the permanent resident to report the dates a unit is to be rented to the City prior to the rental.  While this would still rely on the permanent resident to self-report how many nights their unit is rented, it would provide the City a running tally, which is more difficult to forge than personal records kept in the possession of the permanent resident.  Further, if a complaint is made and the permanent resident has not reported to the City that their unit is being rented this would qualify as proof of a violation.  If this option is chosen, the Department believes there needs to be strong penalties for noncompliance, such as stiff fines and the revocation of the short-term rental permit for a period of five years or more.  Further, the Department believes that only one of these reporting mechanisms should be used.  Having a two tiered system in unfair to the hosting platforms and complicates the Department's record keeping and enforcement efforts.

*A central registry that tracks the number of days each property is rented is essential for any Department to effectively enforce the proposed short-term rental restriction, without it the new regulations are essentially ineffective.*  Without making these amendments to the proposed ordinance, our enforcement difficulties would increase greatly.  Creating a reasonable path to legalize some short-term usage is a laudable goal, but it must be paired with enforceable limits to prevent excessive conversion of the housing stock to transient use.

**Recommendation 4: Identify units that are on the Short-Term Registry in the Department's Property Information Map.**
The Department believes it is important for neighbors to know which properties in their neighborhood are registered as short term rental, and placing this information on the Department's Property Information map will make that information accessible to them.  In addition, this will also allow neighbors to see if a property is properly registered with the City prior to making a complaint, possibly reducing the number of false complaints filed with the Department.  The Department originally considered having a separate web site that listed all short term rentals in the city; however, in the end we felt that it was more practical to use an existing data base to make this information available to the public.

**Recommendations 5: Amend the Ordinance so that a posting on a short-term rental site without first registering with the City constitutes a violation that can be assessed a penalty, even if the unit was not rented.**
The Department recommends amending the legislation so that listing a unit on a short-term rental site when the property has not been registered on the City's short-term rental registry would stand as proof of a violation.   This will allow for quick and effective enforcement, and help act as a deterrent for would be scofflaws.   Proving that someone has rented the property as a short-term rental is a major impediment to the Department's enforcement efforts.   Currently, to prove a violation the Department's enforcement team has to do a site visit and actually see the short-term renter occupying the unit.   Listing your property on a short term rental site without registering it shows that you are not in compliance with the city law that requires the property to be registered, and it also shows intent to rent the apartment as a short-term rental.

**Recommendation 6: Require the registration number from the City-run registry to accompany all short-term rental postings.**
This recommendation is similar to the Department's existing requirement that all general advertising signs must display their building permit number on the sign.  This requirement would make it easier for the Department's enforcement team to monitor short-term rental sites by providing a quick way to verify that a property was properly registered with the City.  If this provision is not added to the Ordinance, Department enforcement staff would have to spend time determining if a property is registered on the site before any enforcement action could occur.  Further, if the property is registered Department staff would have diverted time and resources away from other enforcement activities just to find out that the property was in compliance.

**Recommendation 7:  Grant citation authority to the Planning Department if we are chosen to be the enforcement agency for short-term rentals and provide for increased penalties for repeat violators.**
In order for the Planning Department to be able to effectively and quickly enforce these new regulations we would need to have citation authority.  Our current enforcement process does not allow us to effectively respond to complaints and does not help deter would be violators.  Currently our enforcement team sends out a letter of abatement to initiate an enforcement action.  This process involves several letters and notices to the property owner and takes about 11 weeks before we can start assessing penalties.  Granting citation authority would allow the Department to issue a citation immediately, upon verification of a violation.  These citations could be abated, but fines and penalties could be assessed immediately helping to act as a deterrent for would be violators.   Without this provision potential violators may be encouraged to flout the law knowing that they could ignore the first 2-3 letters without fiscal impact.

**Recommendation 8:  Subject hosted rentals to the same 90-day limit as non-hosted rentals.**
As drafted, the proposed Ordinance does not limit the number of nights someone can rent out a room in their unit, creating a loophole that will allow someone to operate a bed and breakfast type use in their home without Conditional Use authorization.  The Ordinance should be amended to also limit the number of days that someone can rent out a room in their unit (hosted rental) in the same way non-hosted rentals are limited.

**Recommendation 9:  Limit single-family homes to the same restrictions as multi-unit buildings.**
As currently drafted, the Ordinance exempts single-family homes from the short-term rental controls, allowing entire homes to be converted into a hotel use without any public process or noticing.  Including all dwelling units in the short-term rental controls will help protect housing affordability, and it will also protect the character of our lowest intensity residential districts, as most of the City's single-family homes are located in RH-1 (Residential, House, Single-Family)and RH-2 (Residential House, Two-Unit) zoning districts.

## ENVIRONMENTAL REVIEW

The proposed Ordinance would result in no direct or indirect physical impact on the environment.  The proposed amendment is exempt from environmental review under Section 15060(c) and 15378 of the CEQA Guidelines.

## PUBLIC COMMENT

As of the date of this report, the Planning Department has received several inquiries about the proposed Ordinance.  The Department also received several letters both in support and opposition to the proposed Ordinance, which are included as Exhibit D in this report.  In general those that are in support of the proposed Ordinance are people who use short-term rental sites and want to be able to keep using these services to supplement their income or rent out additional units in their building.  Those opposed to this Ordinance are concerned about the impacts short-term rentals have on neighborhood livability and housing affordability.

| RECOMMENDATION: | Recommendation of Approval with Modifications |
|---|---|

**Attachments:**
| | |
|---|---|
| Exhibit A: | Draft Planning Commission Resolution |
| Exhibit B: | Board of Supervisors File No. 140381 |
| Exhibit C: | Chart Comparing Other City's Short-Term Rental Regulations |
| Exhibit D: | Letters of Opposition and Support. |

## Exhibit A



### SAN FRANCISCO
# PLANNING DEPARTMENT

1650 Mission St.
Suite 400
San Francisco,
CA 94103-2479

Reception:
415.558.6378

Fax:
415.558.6409

Planning
Information:
415.558.6377

# Planning Commission Draft Resolution
### HEARING DATE AUGUGST 7, 2014

| | |
|---|---|
| *Project Name:* | **Amendments Relating to Short-Term Rentals** |
| *Case Number:* | 2014.0707T [Board File No. 140381] |
| *Initiated by:* | Supervisor David Chiu/ Introduced April 15, 2014 |
| *Staff Contact:* | Aaron Starr, Acting Manager Legislative Affairs<br>aaron.starr@sfgov.org, 415-558-6362 |
| *Reviewed by:* | AnMarie Rodgers, Senior Policy Advisor<br>anmarie.rodgers@sfgov.org, 415-558-6395 |
| *Recommendation:* | **Recommend Approval with Modifications** |

RECOMMENDING THAT THE BOARD OF SUPERVISORS ADOPT WITH MODIFICATIONS A PROPOSED ORDINANCE THAT WOULD AMEND THE ADMINISTRATIVE CODE TO PROVIDE AN EXCEPTION FOR PERMANENT RESIDENTS TO THE PROHIBITION ON SHORT-TERM RESIDENTIAL RENTALS UNDER CERTAIN CONDITIONS; TO CREATE PROCEDURES, INCLUDING A REGISTRY ADMINISTERED BY THE DEPARTMENT OF BUILDING INSPECTION, FOR TRACKING SHORT-TERM RESIDENTIAL RENTALS AND COMPLIANCE; TO ESTABLISH AN APPLICATION FEE FOR THE REGISTRY; AMENDING THE PLANNING CODE TO CLARIFY THAT SHORT-TERM RESIDENTIAL RENTALS SHALL NOT CHANGE A UNIT'S TYPE AS RESIDENTIAL; AND MAKING ENVIRONMENTAL FINDINGS, AND FINDINGS OF CONSISTENCY WITH THE GENERAL PLAN, AND THE EIGHT PRIORITY POLICIES OF PLANNING CODE, SECTION 101.1.

WHEREAS, on April 15, 2014, Supervisor Chiu introduced a proposed Ordinance under Board of Supervisors (hereinafter "Board") File Number 140381, which would amend the Administrative Code to provide an exception for permanent residents to the prohibition on short-term residential rentals under certain conditions; to create procedures, including a registry administered by the Department of Building Inspection, for tracking short-term residential rentals and compliance; to establish an application fee for the registry; and amend the Planning Code to clarify that short-term residential rentals shall not change a unit's type as residential.

WHEREAS, The Planning Commission (hereinafter "Commission") conducted a duly noticed public hearing at a regularly scheduled meeting to consider the proposed Ordinance on July 17, 2014; and,

WHEREAS, the proposed Ordinance has been determined not to be a project under the California Environmental Quality Act Section 15060(c) and 15378; and

WHEREAS, the Planning Commission has heard and considered the testimony presented to it at the public hearing and has further considered written materials and oral testimony presented on behalf of Department staff and other interested parties; and

**Draft Resolution XXXXXX**
**August 7, 2014**

**CASE NO. 2014.0707T**
**Short-Term Rentals**

WHEREAS, all pertinent documents may be found in the files of the Department, as the custodian of records, at 1650 Mission Street, Suite 400, San Francisco; and

WHEREAS, the Planning Commission has reviewed the proposed Ordinance.

MOVED, that the Planning Commission hereby recommends that the Board of Supervisors **approve with modifications** the proposed ordinance.

The proposed modifications recommended by the Planning Commission include:

1. Place short-term rental controls in the Planning Code so that the Planning Department is the agency responsible for enforcing on short-term rentals.
2. Modify the Ordinance so that the proposed city-run registry tracks the number of nights a unit has been rented.
3. Require any short-term rental platform or company doing business in San Francisco to provide information on the number of days a property was rented.  Information should be reported back to the city on a quarterly basis at a minimum.
4. Identify units that are on the Short-Term Registry in the Department's Property Information Map.
5. Amend the Ordinance so that a posting on a short-term rental site without first registering with the City constitutes a violation that can be assessed a penalty, even if the unit was not rented.
6. Require the registration number from the City-run registry to accompany all short-term rental postings.
7. Grant citation authority to the Planning Department if we are chosen to be the enforcement agency for short-term rentals and provide for increased penalties for repeat violators.
8. Subject hosted rentals to the same 90-night limit as non-hosted rentals.
9. Limit single-family homes to the same restrictions as multi-unit buildings.

## FINDINGS
Having reviewed the materials identified in the preamble above, and having heard all testimony and arguments, this Commission finds, concludes, and determines as follows:

1. The Commission believes that short-term rentals need to be regulated in order to preserve the City's housing stock, reduce impacts on affordable housing, and to protect the livability of residential neighborhoods. The City's current regulations are no longer sufficient to address this new technology and its associated impacts, and if this industry remains unregulated, the Commission believes that the City will continue to lose permanent housing.

2. The Commission finds that the Planning Department should be the agency in charge of monitoring and enforcing on short-term rentals because this is essentially a land use issue and the Planning Department is the City agency responsible for regulating land use.

3. As drafted, the Commission finds that the proposed Ordinance does not have a meaningful enforcement mechanism.  Currently to participate in the short-term rental program, permanent residents would be required to maintain records for at least two years to demonstrate compliance with City law.  However, the ordinance provides no way for the enforcement agency to verify

that these records are correct and accurate.  To address this issue, the Commission recommends that the City start a centralized registry for all short-term rentals that tracks the properties that are being used as short-term rentals and the number of nights each property is rented.  A central registry that tracks the number of days each property is rented is essential for any Department to effectively enforce the proposed short-term rental restriction, without it the new regulations are essentially ineffective.  Without making these amendments to the proposed ordinance, the Department's enforcement difficulties would increase greatly.  Creating a reasonable path to legalize some short-term usage is a laudable goal but it must be paired with enforceable limits to prevent excessive conversion of the housing stock to transient use.

4. The Commission finds that the Ordinance should be amended so that a posting on a short-term rental site constitutes a violation.  This will allow for quick and effective enforcement, and help act as a deterrent for would be scofflaws.

5. The Commission finds that requiring the registration number from the City-run registry to accompany all short-term rental postings will make it easier for the Planning Department's enforcement team to monitor short term rental sites by providing a quick way to verify that a property was properly registered with the City.

6. The Commission finds that the Planning Department's enforcement process does not allow the Department to effectively respond to complaints and does not help deter would be violators.  Granting citation authority to the Planning Department if the Department is chosen to be the enforcement agency for short-term rentals would allow the Department to issue a citation immediately.

7. The Commission finds that including all dwelling units in the short-term rental controls will help protect housing affordability, and it will also protect the character of our lowest intensity residential districts, as most of the City's single-family homes are located in RH-1 (Residential, House, Single-Family)and RH-2 (Residential House, Two-Unit) zoning districts.

8. **General Plan Compliance.**  The proposed amendments to the Planning Code are consistent with the following Objectives and Policies of the General Plan.

## HOUSING ELEMENT

OBJECTIVE 2
RETAIN EXISTING HOUSING UNITS, AND PROMOTE SAFETY AND MAINTENANCE STANDARDS, WITHOUT JEOPARDIZING AFFORDABILITY.

As amended, the proposed Ordaince would be consistent with Object two of the Housing Element because it would limit the number of days that a unit could be utilized as a short term rental and how much that could be charged for a short-term rental, helping to preserve the City's existing housing stock.

OBJECTIVE 3
PROTECT THE AFFORDABILITY OF THE EXISTING HOUSING STOCK, ESPECIALLY RENTAL UNITS.

POLICY 3.1
Preserve rental units; especially rent controlled units, to meet the City's affordable housing needs.

*With the proposed amendments the proposed Ordinance would help preserve rental units by ensure that they are not converted into full time short-term rentals.*

OBJECTIVE 11
SUPPORT AND RESPECT THE DIVERSE AND DISTINCT CHARACTER OF SAN FRANCISCO'S NEIGHBORHOODS.

POLICY 11.8
Consider a neighborhood's character when integrating new uses, and minimize disruption caused by expansion of institutions into residential areas.

*While not an entirely new use, short-term rentals are proliferating within the City like never before and having a new and distinct impact on the City's residential neighborhoods. With the Commission's proposed amendments, the proposed Ordinance would help preserve the distinct residential character of the City's residential neighborhoods by limiting the number of nights a residential unit can be rented out as a short-term rental.*

## COMMERCE AND INDUSTRY ELEMENT

OBJECTIVE 2
MAINTAIN AND ENHANCE A SOUND AND DIVERSE ECONOMIC BASE AND FISCAL STRUCTURE FOR THE CITY.

POLICY 2.1
Seek to retain existing commercial and industrial activity and to attract new such activity to the city.

*Short-term rentals are commercial activity and this Ordinance seeks to retain that commercial activity in the City while providing sufficient regulatory controls to ensure that any negative impacts are addressed.*

OBJECTIVE 3
PROVIDE EXPANDED EMPLOYMENT OPPORTUNITIES FOR CITY RESIDENTS, PARTICULARLY THE UNEMPLOYED AND ECONOMICALLY DISADVANTAGED

Policy 3.4
Assist newly emerging economic activities

*Short-term rentals and short-term rental hosting platforms are an emerging economic activity; the proposed Ordinance would legalize this activity within San Francisco.*

9. **Planning Code Section 101 Findings.** The proposed amendments to the Planning Code are consistent with the eight Priority Policies set forth in Section 101.1(b) of the Planning Code in that:

   1. That existing neighborhood-serving retail uses be preserved and enhanced and future opportunities for resident employment in and ownership of such businesses enhanced;

      *The proposed Ordinance would not have a negative effect on neighborhood-serving retail uses.*

   2. That existing housing and neighborhood character be conserved and protected in order to preserve the cultural and economic diversity of our neighborhoods;

      *The Commission's proposed amendments to the proposed Ordinance seek to minimize any impacts that this proposal would have on existing housing and neighborhood character.*

   3. That the City's supply of affordable housing be preserved and enhanced;

      *The Commission's proposed amendments to the proposed Ordinance seek to preserve the City's supply of affordable housing, by ensuring that long term housing for permanent residents is maintained as long-term housing.*

   4. That commuter traffic not impede MUNI transit service or overburden our streets or neighborhood parking;

      *The proposed Ordinance would not result in commuter traffic impeding MUNI transit service or overburdening the streets or neighborhood parking.*

   5. That a diverse economic base be maintained by protecting our industrial and service sectors from displacement due to commercial office development, and that future opportunities for resident employment and ownership in these sectors be enhanced;

      *The proposed Ordinance would not cause displacement of the industrial or service sectors due to office development, and future opportunities for resident employment or ownership in these sectors would not be impaired.*

   6. That the City achieve the greatest possible preparedness to protect against injury and loss of life in an earthquake;

      *The proposed Ordinance would not have an impact on City's preparedness against injury and loss of life in an earthquake.*

   7. That the landmarks and historic buildings be preserved;

      *The proposed Ordinance would not have an impact on the City's Landmarks and historic buildings.*

Draft Resolution XXXXXX                                          CASE NO. 2014.0707T
August 7, 2014                                                   Short-Term Rentals

8. That our parks and open space and their access to sunlight and vistas be protected from development;

   *The proposed Ordinance would not have an impact on the City's parks and open space access to sunlight and vistas.*

8. **Planning Code Section 302 Findings.** The Planning Commission finds from the facts presented that the public necessity, convenience and general welfare require the proposed amendments to the Planning Code as set forth in Section 302.

NOW THEREFORE BE IT RESOLVED that the Commission hereby recommends that the Board ADOPT the proposed Ordinance as described in this Resolution.

I hereby certify that the foregoing Resolution was adopted by the Commission at its meeting on August 7, 2014.


                                        Jonas P. Ionin
                                        Commission Secretary

AYES:

NOES:

ABSENT:

ADOPTED:      August 7, 2014

# Exhibit B

FILE NO.   140381                                  ORDINANCE NO.

1   [Administrative, Planning Codes - Amending Regulation of Short-Term Residential Rentals
    and Establishing Fee]

2

3   **Ordinance amending the Administrative Code to provide an exception for permanent**

4   **residents to the prohibition on short-term residential rentals under certain conditions;**

5   **to create procedures, including a registry administered by the Department of Building**

6   **Inspection, for tracking short-term residential rentals and compliance; to establish an**

7   **application fee for the registry; amending the Planning Code to clarify that short-term**

8   **residential rentals shall not change a unit's type as residential; and making**

9   **environmental findings, and findings of consistency with the General Plan, and the**

10  **eight priority policies of Planning Code, Section 101.1.**

11  NOTE:    Unchanged Code text and uncodified text are in plain Arial font.
            Additions to Codes are in _single-underline italics Times New Roman font_.
12          Deletions to Codes are in ~~_strikethrough italics Times New Roman font_~~.
            Board amendment additions are in <u>double-underlined Arial font</u>.
13          Board amendment deletions are in ~~double-strikethrough Arial font~~.
            Asterisks (*   *   *) indicate the omission of unchanged Code
14          subsections or parts of tables.

15

16      Be it ordained by the People of the City and County of San Francisco:

17      Section 1. The Board of Supervisors of the City and County of San Francisco hereby

18  finds and determines that:

19      (a)    General Plan and Planning Code Findings.

20          (1)    On _____, at a duly noticed public hearing, the Planning

21  Commission in Resolution No. _____ found that the proposed Planning Code

22  amendments contained in this ordinance were consistent with the City's General Plan and

23  with Planning Code Section 101.1(b) and recommended that the Board of Supervisors adopt

24  the proposed Planning Code amendments. A copy of said Resolution is on file with the Clerk

25  of the Board of Supervisors in File No. _____ and is incorporated herein by

Supervisor Chiu
**BOARD OF SUPERVISORS**                                         Page 1

1    reference. The Board finds that the proposed Planning Code amendments contained in this

2    ordinance are on balance consistent with the City's General Plan and with Planning Code

3    Section 101.1(b) for the reasons set forth in said Resolution.

4            (2)    Pursuant to Planning Code Section 302, the Board finds that the

5    proposed ordinance will serve the public necessity, convenience and welfare for the reasons

6    set forth in Planning Commission Resolution No. _____, which reasons are

7    incorporated herein by reference as though fully set forth.

8        (b)    Environmental Findings. The Planning Department has determined that the

9    actions contemplated in this ordinance comply with the California Environmental Quality Act

10   (California Public Resources Code Section 21000 et seq.). Said determination is on file with

11   the Clerk of the Board of Supervisors in File No. _____ and is incorporated herein

12   by reference.

13       (c)    General Findings.

14           (1)    The widespread conversion of residential housing to short-term rentals,

15   commonly referred to as hotelization, was prohibited by this Board because, when taken to

16   extremes, these conversions could result in the loss of housing for permanent residents. But,

17   with the advent of new technology, the rise of the sharing economy, and the economic and

18   social benefits to residents of sharing resources, short-term rental activity continued to

19   proliferate. This has not only led the City to strengthen enforcement of short-term rental laws,

20   but also prompted an examination of parameters to regulate short-term rentals and create a

21   pathway to legalize this activity. The goal of regulation is to ensure compliance with all

22   requirements of the Municipal Code, including but not limited to the Business and Tax

23   Regulations Code and the Residential Rent Stabilization and Arbitration Ordinance, and

24   accountability for neighborhood quality of life.

25

1          (2)    The exception created here for permanent residents would allow for

2      reasonable flexibility in renting residential spaces on an occasional basis; however, this

3      exception is only intended for residents who meet the definition of permanent resident so that

4      these units remain truly residential in use. Thus, the exception is only for primary residences

5      in which permanent residents are present for a significant majority of the calendar year.

6          (3)    The hosting platforms, as part of a new but growing industry, would also

7      benefit from regulation to ensure good business standards and practices. Such regulation

8      includes required notification to users of local short-term rental laws and transient occupancy

9      tax obligations to San Francisco.

10         (4)    The Office of the Treasurer & Tax Collector retains all of its existing

11     authority under the Business & Tax Regulations Code with regard to the subject matter of this

12     ordinance.

13

14         Section 2.  The Administrative Code is hereby amended by revising Sections 37.9(a),

15     41A.4, 41A.5, and 41A.6, to read as follows:

16

17         **SEC. 37.9.  EVICTIONS.**    Notwithstanding Section 37.3, this Section shall apply as of

18     August 24, 1980, to all landlords and tenants of rental units as defined in Section 37.2(r).

19         (a)    A landlord shall not endeavor to recover possession of a rental unit unless:

20         (1)    The tenant:

21         (A)    Has failed to pay the rent to which the landlord is lawfully entitled

22     under the oral or written agreement between the tenant and landlord:

23         (i)    Except that a tenant's nonpayment of a charge prohibited

24     by Section 919.1 of the Police Code shall not constitute a failure to pay rent; and

25

1                     (ii)       Except that, commencing August 10, 2001, to and including

2    February 10, 2003, a landlord shall not endeavor to recover or recover possession of a rental

3    unit for failure of a tenant to pay that portion of rent attributable to a capital improvement

4    passthrough certified pursuant to a decision issued after April 10, 2000, where the capital

5    improvement passthrough petition was filed prior to August 10, 2001, and a landlord shall not

6    impose any late fee(s) upon the tenant for such non-payment of capital improvements costs;

7    or

8                (B)       Habitually pays the rent late; or

9                (C)     Gives checks which are frequently returned because there are

10   insufficient funds in the checking account; or

11             (2)       The tenant has violated a lawful obligation or covenant of tenancy other

12   than the obligation to surrender possession upon proper notice or other than an obligation to

13   pay a charge prohibited by Police Code Section 919.1, and failure to cure such violation after

14   having received written notice thereof from the landlord.

15                     (A)       Provided that notwithstanding any lease provision to the contrary,

16   a landlord shall not endeavor to recover possession of a rental unit as a result of subletting of

17   the rental unit by the tenant if the landlord has unreasonably withheld the right to sublet

18   following a written request by the tenant, so long as the tenant continues to reside in the rental

19   unit and the sublet constitutes a one-for-one replacement of the departing tenant(s). If the

20   landlord fails to respond to the tenant in writing within fourteen (14) days of receipt of the

21   tenant's written request, the tenant's request shall be deemed approved by the landlord.

22                     (B)       Provided further that where a rental agreement or lease provision

23   limits the number of occupants or limits or prohibits subletting or assignment, a landlord shall

24   not endeavor to recover possession of a rental unit as a result of the addition to the unit of a

25   tenant's child, parent, grandchild, grandparent, brother or sister, or the spouse or domestic

1    partner (as defined in Administrative Code Sections 62.1 through 62.8) of such relatives, or as

2    a result of the addition of the spouse or domestic partner of a tenant, so long as the maximum

3    number of occupants stated in Section 37.9(a)(2)(B)(i) and (ii) is not exceeded, if the landlord

4    has unreasonably refused a written request by the tenant to add such occupant(s) to the unit.

5    If the landlord fails to respond to the tenant in writing within fourteen (14) days of receipt of the

6    tenant's written request, the tenant's request shall be deemed approved by the landlord. A

7    landlord's reasonable refusal of the tenant's written request may not be based on the

8    proposed additional occupant's lack of creditworthiness, if that person will not be legally

9    obligated to pay some or all of the rent to the landlord. A landlord's reasonable refusal of the

10    tenant's written request may be based on, but is not limited to, the ground that the total

11    number of occupants in a unit exceeds (or with the proposed additional occupant(s) would

12    exceed) the lesser of (i) or (ii):

13                         (i)      Two persons in a studio unit, three persons in a one-

14    bedroom unit, four persons in a two-bedroom unit, six persons in a three-bedroom unit, or

15    eight persons in a four-bedroom unit; or

16                         (ii)      The maximum number permitted in the unit under

17    state law and/or other local codes such as the Building, Fire, Housing and Planning Codes; or

18            (3)      The tenant is committing or permitting to exist a nuisance in, or is causing

19    substantial damage to, the rental unit, or is creating a substantial interference with the

20    comfort, safety or enjoyment of the landlord or tenants in the building, and the nature of such

21    nuisance, damage or interference is specifically stated by the landlord in writing as required

22    by Section 37.9(c); or

23            (4)    The tenant is using or permitting a rental unit to be used for any illegal

24    purpose, *provided however that a landlord shall not endeavor to recover possession of a rental unit*

25

1  *solely as a result of a first violation of Chapter 41A that has been cured within 30 days written notice to*

2  *the tenant*; or

3         (5)    The tenant, who had an oral or written agreement with the landlord which

4  has terminated, has refused after written request or demand by the landlord to execute a

5  written extension or renewal thereof for a further term of like duration and under such terms

6  which are materially the same as in the previous agreement; provided, that such terms do not

7  conflict with any of the provisions of this Chapter; or

8         (6)    The tenant has, after written notice to cease, refused the landlord access

9  to the rental unit as required by State or local law; or

10         (7)    The tenant holding at the end of the term of the oral or written agreement

11  is a subtenant not approved by the landlord; or

12         (8)    The landlord seeks to recover possession in good faith, without ulterior

13  reasons and with honest intent:

14         (i)    For the landlord's use or occupancy as his or her principal

15  residence for a period of at least 36 continuous months;

16         (ii)    For the use or occupancy of the landlord's grandparents,

17  grandchildren, parents, children, brother or sister, or the landlord's spouse, or the spouses of

18  such relations, as their principal place of residency for a period of at least 36 months, in the

19  same building in which the landlord resides as his or her principal place of residency, or in a

20  building in which the landlord is simultaneously seeking possession of a rental unit under

21  Section 37.9(a)(8)(i). For purposes of this Section 37.9(a)(8)(ii), the term spouse shall include

22  domestic partners as defined in San Francisco Administrative Code Sections 62.1 through

23  62.8.

24         (iii)    For purposes of this Section 37.9(a)(8) only, as to landlords who

25  become owners of record of the rental unit on or before February 21, 1991, the term "landlord"

Supervisor Chiu
**BOARD OF SUPERVISORS**

1   shall be defined as an owner of record of at least 10 percent interest in the property or, for

2   Section 37.9(a)(8)(i) only, two individuals registered as domestic partners as defined in San

3   Francisco Administrative Code Sections 62.1 through 62.8 whose combined ownership of

4   record is at least 10 percent. For purposes of this Section 37.9(a)(8) only, as to landlords who

5   become owners of record of the rental unit after February 21, 1991, the term "landlord" shall

6   be defined as an owner of record of at least 25 percent interest in the property or, for Section

7   37.9(a)(8)(i) only, two individuals registered as domestic partners as defined in San Francisco

8   Administrative Code Sections 62.1 through 62.8 whose combined ownership of record is at

9   least 25 percent.

10          (iv)    A landlord may not recover possession under this Section

11   37.9(a)(8) if a comparable unit owned by the landlord is already vacant and is available, or if

12   such a unit becomes vacant and available before the recovery of possession of the unit. If a

13   comparable unit does become vacant and available before the recovery of possession, the

14   landlord shall rescind the notice to vacate and dismiss any action filed to recover possession

15   of the premises. Provided further, if a noncomparable unit becomes available before the

16   recovery of possession, the landlord shall offer that unit to the tenant at a rent based on the

17   rent that the tenant is paying, with upward or downward adjustments allowed based upon the

18   condition, size, and other amenities of the replacement unit. Disputes concerning the initial

19   rent for the replacement unit shall be determined by the Rent Board. It shall be evidence of a

20   lack of good faith if a landlord times the service of the notice, or the filing of an action to

21   recover possession, so as to avoid moving into a comparable unit, or to avoid offering a

22   tenant a replacement unit.

23          (v)    It shall be rebuttably presumed that the landlord has not acted in

24   good faith if the landlord or relative for whom the tenant was evicted does not move into the

25

Supervisor Chiu
**BOARD OF SUPERVISORS**

1   rental unit within three months and occupy said unit as that person's principal residence for a

2   minimum of 36 continuous months.

3                          (vi)    Once a landlord has successfully recovered possession of a rental

4   unit pursuant to Section 37.9(a)(8)(i), then no other current or future landlords may recover

5   possession of any other rental unit in the building under Section 37.9(a)(8)(i). It is the intention

6   of this Section that only one specific unit per building may be used for such occupancy under

7   Section 37.9(a)(8)(i) and that once a unit is used for such occupancy, all future occupancies

8   under Section 37.9(a)(8)(i) must be of that same unit, provided that a landlord may file a

9   petition with the Rent Board, or at the landlord's option, commence eviction proceedings,

10   claiming that disability or other similar hardship prevents him or her from occupying a unit

11   which was previously occupied by the landlord.

12                          (vii)    If any provision or clause of this amendment to Section 37.9(a)(8)

13   or the application thereof to any person or circumstance is held to be unconstitutional or to be

14   otherwise invalid by any court of competent jurisdiction, such invalidity shall not affect other

15   chapter provisions, and clauses of this Chapter are held to be severable; or

16                          (9)    The landlord seeks to recover possession in good faith in order to sell the

17   unit in accordance with a condominium conversion approved under the San Francisco

18   subdivision ordinance and does so without ulterior reasons and with honest intent; or

19                          (10)    The landlord seeks to recover possession in good faith in order to

20   demolish or to otherwise permanently remove the rental unit from housing use and has

21   obtained all the necessary permits on or before the date upon which notice to vacate is given,

22   and does so without ulterior reasons and with honest intent; provided that a landlord who

23   seeks to recover possession under this Section 37.9(a)(10) shall pay relocation expenses as

24   provided in Section 37.9C except that a landlord who seeks to demolish an unreinforced

25   masonry building pursuant to Building Code Chapters 16B and 16C must provide the tenant

1     with the relocation assistance specified in Section 37.9A(f) below prior to the tenant's vacating

2     the premises; or

3               (11)    The landlord seeks in good faith to remove temporarily the unit from

4     housing use in order to be able to carry out capital improvements or rehabilitation work and

5     has obtained all the necessary permits on or before the date upon which notice to vacate is

6     given, and does so without ulterior reasons and with honest intent. Any tenant who vacates

7     the unit under such circumstances shall have the right to reoccupy the unit at the prior rent

8     adjusted in accordance with the provisions of this Chapter. The tenant will vacate the unit only

9     for the minimum time required to do the work. On or before the date upon which notice to

10     vacate is given, the landlord shall advise the tenant in writing that the rehabilitation or capital

11     improvement plans are on file with the Central Permit Bureau of the Department of Building

12     Inspection and that arrangements for reviewing such plans can be made with the Central

13     Permit Bureau. In addition to the above, no landlord shall endeavor to recover possession of

14     any unit subject to a RAP loan as set forth in Section 37.2(m) of this Chapter except as

15     provided in Section 32.69 of the San Francisco Administrative Code. The tenant shall not be

16     required to vacate pursuant to this Section 37.9(a)(11), for a period in excess of three months;

17     provided, however, that such time period may be extended by the Board or its Administrative

18     Law Judges upon application by the landlord. The Board shall adopt rules and regulations to

19     implement the application procedure. Any landlord who seeks to recover possession under

20     this Section 37.9(a)(11) shall pay relocation expenses as provided in Section 37.9C or

21               (12)    The landlord seeks to recover possession in good faith in order to carry

22     out substantial rehabilitation, as defined in Section 37.2(s), and has obtained all the necessary

23     permits on or before the date upon which notice to vacate is given, and does so without

24     ulterior reasons and with honest intent. Notwithstanding the above, no landlord shall endeavor

25     to recover possession of any unit subject to a RAP loan as set forth in Section 37.2(m) of this

1    Chapter except as provided in Section 32.69 of the San Francisco Administrative Code; Any

2    landlord who seeks to recover possession under this Section 37.9(a)(12) shall pay relocation

3    expenses as provided in Section 37.9C; or

4                    (13)    The landlord wishes to withdraw from rent or lease all rental units within

5    any detached physical structure and, in addition, in the case of any detached physical

6    structure containing three or fewer rental units, any other rental units on the same lot, and

7    complies in full with Section 37.9A with respect to each such unit; provided, however, that

8    guestrooms or efficiency units within a residential hotel, as defined in Section 50519 of the

9    Health and Safety Code, may not be withdrawn from rent or lease if the residential hotel has a

10   permit of occupancy issued prior to January 1, 1990, and if the residential hotel did not send a

11   notice of intent to withdraw the units from rent or lease (Administrative Code Section 37.9A(f),

12   Government Code Section 7060.4(a)) that was delivered to the Rent Board prior to January 1,

13   2004; or

14                   (14)    The landlord seeks in good faith to temporarily recover possession of the

15   unit solely for the purpose of effecting lead remediation or abatement work, as required by

16   San Francisco Health Code Articles 11 or 26. The tenant will vacate the unit only for the

17   minimum time required to do the work. The relocation rights and remedies, established by

18   San Francisco Administrative Code Chapter 72, including but not limited to, the payment of

19   financial relocation assistance, shall apply to evictions under this Section 37.9(a)(14).

20                   (15)    The landlord seeks to recover possession in good faith in order to

21   demolish or to otherwise permanently remove the rental unit from housing use in accordance

22   with the terms of a development agreement entered into by the City under Chapter 56 of the

23   San Francisco Administrative Code.

24                   (16)    The tenant's Good Samaritan Status (Section 37.2(a)(1)(D)) has expired,

25   and the landlord exercises the right to recover possession by serving a notice of termination of

1    tenancy under this Section 37.9(a)(16) within 60 days after expiration of the Original and any

2    Extended Good Samaritan Status Period.

3            * * * *

4

5        **SEC. 41A.4. DEFINITIONS.**

6            *Whenever used in this Chapter 41A, the following words and phrases shall have the definitions*

7    *provided in this Section:*

8            (l)——**Business Entity.** *A corporation, partnership, or other legal entity that is not a natural*

9    *person that owns or leases one or more residential units.*

10           (n)——**Complaint.** *A complaint submitted to the Department by an interested party alleging a*

11   *violation of this Chapter 41A and that includes the residential unit's address, including unit number,*

12   *date(s) and nature of alleged violation(s), and any available contact information for the owner and/or*

13   *resident of the residential unit at issue.*

14           (e)——**Conversion or Convert.** ~~The~~ *A* change of ~~the~~ use ~~or to rent a residential unit~~ from

15   residential use to tourist or transient use, *including, but not limited to, renting a residential unit as*

16   *a tourist or transient use.*

17           (o)——**Department.** *The Department of Building Inspection.*

18           (h)——**Director.** The Director of the Department of Building Inspection.

19           (i)——**Hosting Platform.** *A person or entity that provides a means through which an owner*

20   *may offer a residential unit for tourist or transient use. This service is usually, though not necessarily,*

21   *provided through an online platform and generally allows an owner to advertise the residential unit*

22   *through a website provided by the hosting platform and provides a means for potential tourist or*

23   *transient users to arrange tourist or transient use and payment, whether the tourist or transient pays*

24   *rent directly to the owner or to the hosting platform.*

25

1    *(g)*   **Interested Party.** A permanent resident of the building in which the tourist or

2    transient use is alleged to occur, the City and County of San Francisco, or any non-profit

3    organization exempt from taxation pursuant to Title 26, Section 501 of the United States

4    Code, which has the preservation or improvement of housing as a stated purpose in its

5    articles of incorporation or bylaws.

6    *(f)*   **Owner.** Owner includes any person who is the owner of record of the real

7    property. *As used in this Chapter 41A, the term* "Owner*"* includes a lessee where ~~an interested~~

8    ~~party alleges that a~~ *the* lessee is offering a residential unit for tourist or transient use.

9    *(d)*   **Permanent Resident.** A person who occupies a residential unit for at least 60

10   consecutive days with intent to establish that unit as his or her ~~principal place of~~ *primary*

11   residence. *A permanent resident may be an owner or a lessee.*

12   *(m)*   ***Primary Residence. The permanent resident's usual place of return for housing as***

13   *documented by motor vehicle registration, driver's license, voter registration, home owner's tax*

14   *exemption, or other such evidence.*

15   **Residential Unit.** Room or rooms, including a condominium or a room or dwelling unit

16   that forms part of a tenancy-in-common arrangement, in any building *of two or more units*, or

17   portion thereof, which is designed, built, rented, leased, let or hired out to be occupied *for*

18   *residential use*, ~~or which is occupied as the home or residence of four or more households living~~

19   ~~independently of each other in dwelling units~~ as defined in the San Francisco Housing Code~~,~~

20   ~~provided that the residential unit was occupied by a permanent resident on or after February 8, 1981.~~

21   ~~It is presumed that a residential unit was occupied by a permanent resident on or after February 8,~~

22   ~~1981, and the owner has the burden of proof to show that a residential unit is not subject to this~~

23   ~~Chapter.~~

24   *(b)*   **Residential Use.** Any use for occupancy of a ~~dwelling~~ *residential* unit by a

25   permanent resident.

1    *(i)* **Short-Term Residential Rental.** *A tourist or transient use where all of the following*

2    *conditions are met:*

3          *(a)* *the residential unit is offered for tourist or transient use by the permanent*

4    *resident of the residential unit;*

5          *(b)* *the permanent resident is a natural person; and,*

6          *(c)* *the permanent resident has registered the unit and maintains good standing on*

7    *the Department's short-term residential rental registry.*

8    *(k)* **Short-Term Residential Rental Registry.** *A database of information maintained by the*

9    *Department that includes information regarding permanent residents who are permitted to offer*

10   *residential units for short-term residential rental. The registry shall be available for public review to*

11   *the extent required by law, except that, to the extent permitted by law, the Department shall redact any*

12   *permanent resident names from the records available for public review.*

13   *(c)* **Tourist or Transient Use.** *Any U*use of a residential unit for occupancy for less

14   than a 30-day term of tenancy, or occupancy for less than 30 days of a residential unit leased

15   or owned by a business entity, whether on a short-term or long-term basis, including any

16   occupancy by employees *or guests of a business entity* for less than 30 days where payment for

17   the residential unit is contracted for or paid by the business entity.

18

19   **SEC. 41A.5.  UNLAWFUL CONVERSION; REMEDIES.**

20   (a)    **Unlawful Actions.** *Except as set forth in subsection 41A.5(g), i*It shall be unlawful

21   for

22          (1)    any *O*owner to offer a*n apartment* *R*residential *U*unit for rent for *T*tourist or

23   *T*ransient *U*use*,;*

24          (2)    any *O*owner to offer a *R*residential *U*unit for rent to a *B*business *E*entity

25   that will allow the use of a *R*residential *U*unit for *T*tourist or *T*ransient *U*use*,;* or

1        (3)    any _Bb_usiness _Ee_ntity to allow the use of a _Rr_esidential _Uu_nit for _Tt_ourist

2  or _Tt_ransient _Uu_se.

3      (b)    **Records Required.** The _Oo_wner and _Bb_usiness _Ee_ntity, _if any,_ shall retain and

4  make available to the Department ~~or Building Inspection occupancy~~ records to demonstrate

5  compliance with this Chapter _41A upon written request as provided herein. Any Permanent Resident_

6  _offering his or her Primary Residence as a Short-Term Residential Rental shall retain and make_

7  _available to the Department records to demonstrate compliance with this Chapter 41A, including but_

8  _not limited to records demonstrating Primary Residency and the number of days per calendar year he_

9  _or she has occupied the Residential Unit._

10      (c)    **Determination of Violation.** Upon the filing of a _written Cc_omplaint that an

11  _alleged_ unlawful _cConversion_ has occurred, the Director shall take reasonable steps necessary

12  to determine the validity of the _Cc_omplaint. The Director may independently determine

13  whether an _Oo_wner or _Bb_usiness _Ee_ntity may be renting a _Rr_esidential _Uu_nit for _Tt_ourist or

14  _Tt_ransient _Uu_se ~~as defined~~ in _violation of_ this Chapter _41A_. To determine if there is a violation of

15  this Chapter _41A_, the Director may initiate an investigation of the subject property. This

16  investigation may include, but is not limited to, an inspection of the subject property and a

17  request for any pertinent information from the _Oo_wner _or Business Entity_, such as leases or

18  other documents. The Director shall have discretion to determine whether there is a potential

19  violation of this Chapter 41A and whether to conduct an administrative review hearing as set

20  forth below.

21      (d)    **Civil Action.** Following the filing of a _Cc_omplaint and the determination of a

22  violation by the Director through an administrative review hearing as set forth in this Chapter

23  41A, _the City and County of San Francisco or_ any interested party may institute _civil_ proceedings

24  for injunctive and monetary relief _against an Owner or Business Entity_. In addition, the _Oo_wner or

25  _Bb_usiness _Ee_ntity may be liable for civil penalties of not more than $1,000 per day for the

1    period of the unlawful rental. If the City or the interested party is the prevailing party, the City

2    or the interested party shall be entitled to the costs of enforcing this Chapter _41A_, including

3    reasonable attorneys' fees, up to the amount of the monetary award, pursuant to an order of

4    the Court. Any monetary award obtained by the City and County of San Francisco in such a

5    civil action shall be deposited in the Mayor's Office of Housing, Housing Affordability Fund

6    less the reasonable costs incurred by the City and County of San Francisco in pursuing the

7    civil action.

8        (e)    **Criminal Penalties.** Any _O_~o~wner or _B_~b~usiness _E_~e~ntity who rents a _R_~r~esidential

9    _U_~u~nit for _T_~t~ourist or _T_~t~ransient _U_~u~se ~as defined~ in _violation of_ this Chapter _41A without correcting_

10   _or remedying the violation as provided for in subsection 41A.6(b)(7)_ shall be guilty of a

11   misdemeanor. Any person convicted of a misdemeanor hereunder shall be punishable by a

12   fine of not more than $1,000 or by imprisonment in the County Jail for a period of not more

13   than six months, or by both. Each _R_~r~esidential _U_~u~nit rented for _T_~t~ourist or _T_~t~ransient _U_~u~se

14   shall constitute a separate offense.

15       (f)    **Method of Enforcement, Director.** The Director shall have the authority to

16   enforce this Chapter against violations thereof by any or all of the means provided for in this

17   Chapter 41A.

18       _(g)_    **_Exception for Short-Term Residential Rental._**

19           _(1)_    _Notwithstanding the restrictions set forth in this Section 41A.5, a Permanent_

20   _Resident may offer his or her Primary Residence as a Short-Term Residential Rental if he or she:_

21              _(A)_    _occupies the Residential Unit for no less than 275 days out of the_

22   _preceding calendar year or proportional share thereof if he or she has not rented or owned the_

23   _Residential Unit for the full preceding calendar year;_

24              _(B)_    _maintains records for two years demonstrating compliance with this_

25   _Chapter, including but not limited to information demonstrating Primary Residency, the number of_

1    *days per calendar year he or she has occupied the Residential Unit, and compliance with the insurance*

2    *requirement in Subsection (D). These records shall be made available to the Department upon request;*

3    *(C)      complies with any and all applicable provisions of state law and the San*

4    *Francisco Municipal Code, including but not limited to the requirements of the Business and Tax*

5    *Regulations Code by, among any other applicable requirements, collecting and remitting all required*

6    *transient occupancy taxes;*

7    *(D)      maintains homeowner's or renter's property or casualty insurance in the*

8    *aggregate of not less than $150,000 or conducts each Short-Term Residential Rental transaction*

9    *through a Hosting Platform that provides a guarantee program relating to property damage in an*

10   *amount not less than $150,000 to owners per incident;*

11   *(E)      registers, and maintains registry of, the Residential Unit on the Short-*

12   *Term Residential Rental Registry prior to offering the Residential Unit for use as a Short-Term*

13   *Residential Rental. Offering a Residential Unit for Short-Term Residential Rental while not*

14   *maintaining good standing on the registry shall constitute a violation of this Chapter 41A; and*

15   *(F)      for units subject to the rent control provisions of Section 37.3, complies*

16   *with the initial rent limitation for subtenants and charges no more rent than the rent the primary*

17   *resident is paying to any landlord per month.*

18   *(2)      Short-Term Residential Rental Registry Applications and Fee.*

19   *(A)      Application. Registration shall be for a two-year term, which may be*

20   *renewed by the Permanent Resident by filing a completed renewal application. Initial and renewal*

21   *applications shall be in a form prescribed by the Department. The Department shall determine, in its*

22   *sole discretion, the completeness of an application. Both the initial application and any renewal*

23   *application shall contain information sufficient to show that the Residential Unit is the Primary*

24   *Residence of the applicant and that the applicant is the unit's Permanent Resident. In addition to the*

25   *information set forth here, the Department may require any other additional information necessary to*

1    *show the Permanent Resident's compliance with this Chapter 41A. Primary Residency may be*

2    *established by showing the Residential Unit is listed as the applicant's residence on any motor vehicle*

3    *registration, driver's license, or voter registration, or as the Primary Residence for home owner's tax*

4    *exemption purposes, and/or any other information as required by the Department. A renewal*

5    *application shall contain sufficient information to show that the applicant is the Permanent Resident*

6    *and has occupied the unit for at least 275 days of each of the two preceding calendar years. Upon the*

7    *Department's determination that an application is complete, the unit shall be entered into the Short-*

8    *Term Residential Rental Registry.*

9    *(B)     Fee.  The fee for the initial application and for each renewal shall be*

10    *$50, payable to the Director. The application fee shall be due at the time of application. Beginning with*

11    *fiscal year 2014-2015, fees set forth in this Section may be adjusted each year, without further action*

12    *by the Board of Supervisors, as set forth in this Section. Not later than April 1, the Director shall report*

13    *to the Controller the revenues generated by the fees for the prior fiscal year and the prior fiscal year's*

14    *costs of establishing and maintaining the registry, as well as any other information that the Controller*

15    *determines appropriate to the performance of the duties set forth in this Chapter. Not later than May*

16    *15, the Controller shall determine whether the current fees have produced or are projected to produce*

17    *revenues sufficient to support the costs of establishing and maintaining the registry and any other*

18    *services set forth in this Chapter and that the fees will not produce revenue that is significantly more*

19    *than the costs of providing such services. The Controller shall, if necessary, adjust the fees upward or*

20    *downward for the upcoming fiscal year as appropriate to ensure that the program recovers the costs of*

21    *operation without producing revenue that is significantly more than such costs. The adjusted rates shall*

22    *become operative on July 1.*

23    *(4)     Requirements for Hosting Platforms.*

24    *(A)     Notice to Users of Hosting Platform.  All Hosting Platforms shall provide*

25    *the following information in a notice to any user listing a Residential Unit located within the City and*

Supervisor Chiu
**BOARD OF SUPERVISORS**                                                                                      Page 17

1   *County of San Francisco through the Hosting Platform's service. The notice shall be provided prior to*

2   *the user listing the Residential Unit and shall include the following information: that Administrative*

3   *Code Chapters 37 and 41A regulate Short-Term Rental of Residential Units; the requirements for*

4   *Permanent Residency and registration of the unit with the Department; and the transient occupancy tax*

5   *obligations to the City.*

6   *(B)   A Hosting Platform shall comply with the requirements of the Business*

7   *and Tax Regulations Code by, among any other applicable requirements, collecting and remitting all*

8   *required Transient Occupancy Taxes, and this provision shall not relieve a Hosting Platform of liability*

9   *related to an occupant's, resident's, Business Entity's, or Owner's failure to comply with the*

10  *requirements of the Business and Tax Regulations Code. Additionally, a Hosting Platform's failure to*

11  *provide the required notice to users under subsection 41A.5(g)(2)(A) shall be a violation of this*

12  *Chapter. Any such violation shall subject the Hosting Platform to a fine payable to the Department of*

13  *up to $1000 per day for the period of the failure to provide notice or the failure to provide the required*

14  *information to the Department.*

15  *(5)   The exception set forth in this subsection (g) provides an exception only to the*

16  *requirements of this Chapter 41A. It does not confer a right to lease, sublease, or otherwise offer a*

17  *residential unit for short-term residential use where such use is not otherwise allowed by law, a*

18  *homeowners association agreement or requirements, a rental agreement, or any other restriction,*

19  *requirement, or enforceable agreement. All Owners and residents are required to comply with the*

20  *requirements of Administrative Code Chapter 37, the Residential Rent Stabilization and Arbitration*

21  *Ordinance, including but not limited to the requirements of Section 37.3(c).*

22  *(6)   Department Contact Person. The Department shall designate a contact person*

23  *for members of the public who wish to file Complaints under this Chapter or who otherwise seek*

24  *information regarding this Chapter or Short-Term Residential Rentals. This contact person shall also*

25  *provide information to the public upon request regarding quality of life issues, including for example*

1  *noise violations, vandalism, or illegal dumping, and shall direct the member of the public and/or*

2  *forward any such Complaints to the appropriate City department.*

3  　　　　　　(7)　　*Notwithstanding any other provision of this Chapter, nothing in this Chapter*

4  *shall relieve an individual, Business Entity, or Hosting Platform of the obligations imposed by any and*

5  *all applicable provisions of state law and the San Francisco Municipal Code including but not limited*

6  *to those obligations imposed by the Business and Tax Regulations Code. Further, nothing in this*

7  *Chapter shall be construed to limit any remedies available under any and all applicable provisions of*

8  *state law and the San Francisco Municipal Code including but not limited to the Business and Tax*

9  *Regulations Code.*

10

11  **SEC. 41A.6.  PROCEDURES FOR DETERMINING ADMINISTRATIVE PENALTIES.**

12  　　　　(a)　　**Notice of Complaint.** Within 15 days of the filing of a ~C~complaint and upon the

13  Director's independent finding that there may be a violation of this Chapter, the Director shall

14  notify the ~O~owner by certified mail that the ~O~owner's ~R~esidential ~U~nit is the subject of an

15  investigation for an unlawful use and provide the date, time, and place of an administrative

16  review hearing in which the owner can respond to the ~C~complaint.

17  　　　　(b)　　**Administrative Review Hearings.** In the event the Director determines that an

18  administrative review hearing shall be conducted, the Director's appointed hearing officer will

19  hold an administrative review hearing within 60 days of the filing of the ~C~complaint to review

20  all information provided by the Interested Party, members of the public, City staff and the

21  Owner for the investigation and the hearing officer shall thereafter make a determination

22  whether the ~O~owner has violated this Chapter.

23  　　　　　　(1)　　Notice of the hearing shall be conspicuously posted on the building that is

24  the subject of the hearing. The ~O~owner shall state under oath at the hearing that the notice

25

1    remained posted for at least _seven_ calendar days prior the hearing. The Director shall appoint

2    a hearing officer to conduct the hearing.

3              (2)      Pre-hearing Submission. No less than ten working days prior to the

4    administrative review hearing, parties to the hearing shall submit written information to the

5    Director including, but not  limited to, the issues to be determined by the hearing officer and

6    the evidence to be offered at the hearing. Such information shall be forwarded to the hearing

7    officer prior to the hearing along with any information compiled by the Director.

8              (3)      Hearing Procedure. If more than one hearing is requested for _R_residential

9    _U_nits located in the same building at or about the same time, the Director shall consolidate

10   all of the hearings into one hearing. The hearing shall be tape recorded. Any party to the

11   hearing may at his or her own expense cause the hearing to be recorded by a certified court

12   reporter. Parties may be represented by counsel and shall have the right to cross-examine

13   witnesses. All testimony shall be given under oath. Written decisions and findings shall be

14   rendered by the hearing officer within 20 working days of the hearing. Copies of the findings

15   and decision shall be served upon the parties by certified mail. A notice that a copy of the

16   findings and decision is available for inspection between the hours of 9:00 a.m. and 5:00 p.m.

17   Monday through Friday shall be posted by the _O_owner or the Director in the building in the

18   same location in which the notice of the administrative review hearing was posted.

19             (4)      Failure to Appear. In the event the _O_owner or an interested party fails to

20   appear at the hearing, the hearing officer may nevertheless make a determination based on

21   the evidence in the record and files at the time of the hearing, and issue a written decision and

22   findings.

23             (5)      Finality of the Hearing Officer's Decision and Judicial Review. The

24   decision of the hearing officer shall be final. Within 20 days after service of the hearing

25   officer's decision, any party may seek judicial review of the hearing officer's decision.

1        (6)    Hearing Officer Decision and Collection of Penalties. If any imposed

2    administrative penalties and costs have not been deposited at the time of the Hearing

3    Officer's decision, the Director may proceed to collect the penalties and costs pursuant to the

4    lien procedures set forth in Subsection 41A.6(e), consistent with the Hearing Officer's

5    decision.

6        (7)    Remedy of Violation. If the Hearing Officer determines that a violation has

7    occurred, the Hearing Officer's Decision should:

8        (A̲i̶)    Specify a reasonable period of time during which the O̲o̶wner must

9    correct or otherwise remedy the violation; ~~and~~

10       (B̲i̶i̶)    State that if the violation is not corrected or otherwise remedied

11   within this period, the O̲o̶wner may be required to pay the administrative penalties set forth in

12   Subsection 41A.6(c)̲;̲ ̲a̲n̲d̲,̲

13       *(C)*    *State that if the violation is not corrected or otherwise remedied within*

14   *this period, the Department may prohibit the offending Owner from including such Residential Unit on*

15   *any Hosting Platform for a period of one year*.

16       (8)    If the Hearing Officer determines that no violation has occurred, the

17   determination is final.

18     (c)    **Imposition of ~~Administrative~~ Penalties for Unabated Violations and**

19   **Enforcement Costs.**

20       (1)    Administrative Penalties. If the violation has continued unabated beyond

21   the time specified in the notice required by the Hearing Officer, an administrative penalty of

22   not more than four times the standard hourly administrative rate of $104.00 shall be charged

23   for each unlawfully converted unit from the day the unlawful use commenced until such time

24   as the unlawful use terminates.

25

1         (2)    Enforcement Costs. The Oowner shall reimburse the City for the costs of

2    enforcement of this Chapter, which shall include, but not be limited to, reasonable attorneys'

3    fees.

4         *(3)    Prohibition on Listing Unit(s) on Any Hosting Platform. If the violation has*

5    *continued unabated beyond the time specified in the notice required by the Hearing Officer, the*

6    *Department shall include the Residential Unit(s) on a list maintained by the Department of Residential*

7    *Units that may not be listed by any Permanent Resident on any Hosting Platform until compliance. Any*

8    *Owner who continues to list a Residential Unit in violation of this section shall be liable for additional*

9    *civil penalties of up to $1000 per day of unlawful inclusion.*

10       (d)    **Notice of Continuing Violation and Imposition of Penalties**. The Director

11    shall notify the Oowner by certified mail that the violation has continued unabated and that

12    administrative penalties shall be imposed pursuant to this Chapter 41A. The notice shall state

13    the time of the continued existence of the violation and the resulting imposition of penalties.

14    Payment of the administrative penalties and enforcement costs shall be made within 30 days

15    of the certified mailed notice to the Oowner. If the administrative penalties and enforcement

16    costs are not paid, the Director shall initiate lien procedures to secure the amount of the

17    penalties and costs against the real property that is subject to this Chapter, under Article XX

18    of Chapter 10 of the ~~San Francisco~~ Administrative Code to make the penalty, plus accrued

19    interest, a lien against the real property regulated under this Chapter. Except for the release of

20    the lien recording fee authorized by Administrative Code Section 10.237, all sums collected by

21    the Tax Collector pursuant to this ordinance shall be held in trust by the Treasurer and

22    distributed as provided in Section 41A.5(d) of this Chapter.

23       (e)    **Deposit of Penalties**. Administrative penalties paid pursuant to this Chapter

24    shall be deposited in the Mayor's Office of Housing, Housing Affordability Fund less the

25    reasonable costs incurred by the City and County of San Francisco in pursuing enforcement

1   under this Chapter 41A. If enforcement costs were imposed, such funds shall be distributed

2   according to the purpose for which they were collected.

3

4       Section 3.  The Planning Code is hereby amended by revising Sections 102.7, 102.13,

5   790.88 and 890.88, to read as follows:

6

7       **SEC. 102.7. DWELLING UNIT.**

8       A room or suite of two or more rooms that is designed for, or is occupied by, one family

9   doing its own cooking therein and having only one kitchen. A housekeeping room as defined

10  in the Housing Code shall be a dwelling unit for purposes of this Code. For the purposes of

11  this Code, a live/work unit, as defined in Section 102.13 of this Code, shall not be considered

12  a dwelling unit. _Notwithstanding the foregoing, use of a dwelling unit as a Short-Term Residential_

13  _Rental in compliance with Administrative Code Section 41A.5 shall not alter the use type as a_

14  _residential use._

15          * * * *

16

17      **SEC. 102.13.  LIVE/WORK UNIT.**

18      A live/work unit is a structure or portion of a structure combining a residential living

19  space for a group of persons including not more than four adults in the same unit with an

20  integrated work space principally used by one or more of the residents of that unit; provided,

21  however, that no otherwise qualifying portion of a structure which contains a Group A

22  occupancy under the San Francisco Building Code shall be considered a live/work unit.

23  _Notwithstanding the foregoing, use of a live/work unit as a Short-Term Residential Rental in_

24  _compliance with Administrative Code Section 41A.5 shall not alter the use type as a live/work unit._

25          * * * *

1

2      **SEC. 790.88.  RESIDENTIAL USE.**

3           A use which provides housing for San Francisco residents, rather than visitors,

4    including a dwelling unit or group housing, as defined in Subsections (a) and (b) below, or a

5    residential hotel, as defined in Section 790.47 of this Code and in Chapter 41 of the San

6    Francisco Administrative Code.  *Notwithstanding the foregoing, use of a dwelling unit as a Short-*

7    *Term Residential Rental in compliance with Administrative Code Section 41A.5 shall not alter the use*

8    *type as a residential use.*

9           (a)     Dwelling Unit. A residential use which consists of a suite of two or more rooms

10    and includes sleeping, bathing, cooking, and eating facilities, but has only one kitchen.

11           (b)     Group Housing. A residential use which provides lodging or both meals and

12    lodging without individual cooking facilities for a week or more at a time in a space not defined

13    as a dwelling unit. Group housing includes, but is not limited to, a rooming house, boarding

14    house, guest house, lodging house, residence club, commune, fraternity and sorority house,

15    monastery, nunnery, convent, and ashram. It also includes group housing operated by a

16    medical or educational institution when not located on the same lot as such institution.

17           * * * *

18

19      **SEC. 890.88.  RESIDENTIAL USE.**

20           A use which provides housing for San Francisco residents, rather than visitors,

21    including a dwelling unit or group housing, as defined in Subsections (a) and (b) below, or a

22    residential hotel, as defined in Section 890.47 of this Code and in Chapter 41 of the San

23    Francisco Administrative Code.  *Notwithstanding the foregoing, use of a dwelling unit as a Short-*

24    *Term Residential Rental in compliance with Administrative Code Section 41A.5 shall not alter the use*

25    *type as a residential use.*

1      (a)     Dwelling Unit. A residential use which consists of a suite of two or more rooms

2  and includes sleeping, bathing, cooking, and eating facilities, and has only one kitchen.

3      (b)     Group Housing. A residential use which provides lodging or both meals and

4  lodging without individual cooking facilities for a week or more at a time in a space not defined

5  as a dwelling unit. Group housing includes, but is not limited to, a roominghouse, boarding

6  house, guest house, lodging house, residence club, commune, fraternity and sorority house,

7  monastery, nunnery, convent, and ashram. It also includes group housing operated by a

8  medical or educational institution when not located on the same lot as such institution.

9      (c)     Single Room Occupancy (SRO) Unit. A dwelling unit or group housing room

10  consisting of no more than one occupied room with a maximum gross floor area of 350 square

11  feet and meeting the Housing Code's minimum floor area standards. The unit may have a

12  bathroom in addition to the occupied room. As a dwelling unit, it would have a cooking facility

13  and bathroom. As a group housing room, it would share a kitchen with one or more other

14  single room occupancy unit/s in the same building and may also share a bathroom. A single

15  room occupancy building (or "SRO" building) is one that contains only SRO units and non

16  nonaccessory living space.

17

18      Section 4.  Other Uncodified Provisions.

19      (a)     Effective Date. This ordinance shall become effective 30 days after enactment.

20  Enactment occurs when the Mayor signs the ordinance, the Mayor returns the ordinance

21  unsigned or does not sign the ordinance within ten days of receiving it, or the Board of

22  Supervisors overrides the Mayor's veto of the ordinance.

23      (b)     Undertaking for the General Welfare.  In enacting and implementing this

24  ordinance, the City is assuming an undertaking only to promote the general welfare. It is not

25  assuming, nor is it imposing on its officers and employees, an obligation for breach of which it

1    would be liable in money damages to any person who claims that such breach proximately

2    caused injury.

3         (c)    No Conflict with State or Federal Law. Nothing in this ordinance shall be

4    interpreted or applied so as to create any requirement, power, or duty in conflict with any

5    State or federal law.

6         (d)    Severability. If any of section, subsection, sentence, clause, phrase or word of

7    this ordinance is for any reason held to be invalid or unconstitutional by a decision of any

8    court of competent jurisdiction, such decision shall not affect the validity of the remaining

9    portions of the ordinance.  The Board of Supervisors hereby declares that it would have

10   passed this ordinance and each and every section, subsection, sentence, clause, phrase, and

11   word not declared invalid or unconstitutional without regard to whether any other portion of

12   this ordinance would be subsequently declared invalid or unconstitutional.

13        (d)    Scope of Ordinance.  In enacting this ordinance, the Board of Supervisors

14   intends to amend only those words, phrases, paragraphs, subsections, sections, articles,

15   numbers, punctuation marks, charts, diagrams, or any other constituent parts of the Municipal

16   Code that are explicitly shown in this ordinance as additions, deletions, Board amendment

17   additions, and Board amendment deletions in accordance with the "Note" that appears under

18   the official title of the ordinance.

19

20   APPROVED AS TO FORM:
     DENNIS J. HERRERA, City Attorney

21

22   By:    _____
            MARLENA G. BYRNE
23          Deputy City Attorney

     n:\legana\as2014\1200498\00918717.doc
24

25

Exhibit C

SAN FRANCISCO
**PLANNING DEPARTMENT**

www.sfplanning.org

| CITY | REGULATION TYPE | | | | | | | | | | ENFORCEMENT | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 100% BAN | SET # OF CU's / LICENSES | LIMIT BY ZONING DISTRICT | RENEWABLE LICENSE | HIGH ANNUAL FEE | LOW ANNUAL FEE | SIMPLE REGISTRATION | LIMIT # OF DAYS ALLOWED TO RENT PER YEAR | PAY FULL HOTEL TAXES | UNREGULATED (100% LEGAL, BY RIGHT) | PROACTIVE | REACTIVE ONLY | HIGH FEES ($500+ per day) | LOW FEES (less than $500 per day) | NOT ENFORCED |
| San Francisco (current) | | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | | | | | | |
| New York City | | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | | | | X | | |
| Chicago | | | | | | | | | | | | | | | |
| Austin | | X | X | | | | *Though it should be noted airbnb has told our dept Austin is dealing with a major registration backlog | | | | X | | | | |
| Chiu's Leg | | | | | | | | | | de facto....yes. Technically speaking....no | | ? | | | not enforcable |

X = Best practices for San Francisco

LEGEND: Orange block signifies this regulation or enforcement measure applies to that city's ordinance and practices

# Exhibit D, Letters of Support/Opposition

| | |
|---|---|
| **From:** | Secretary, Commissions (CPC) |
| **To:** | Christine Johnson (chrisdjohn04@gmail.com) |
| **Cc:** | Starr, Aaron (CPC); Gerber, Patricia (CPC) |
| **Subject:** | FW: Concerned Citizen requests: Please reject proposal to legalize short-term rentals in San Francisco |
| **Date:** | Thursday, July 31, 2014 9:30:47 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |

FYI

*Office of Commission Affairs*

Planning Department | City & County of San Francisco
1650 Mission Street, Suite 400, San Francisco, CA 94103
Direct: 415-558-6309 | Fax: 415-558-6409

commissions.secretary@sfgov.org
www.sfplanning.org

    

**From:** Pam Carey [mailto:pscarey19@gmail.com]
**Sent:** Thursday, July 31, 2014 7:41 AM
**To:** cwu.planning@gmail.com; planning@rodneyfong.com; wordweaver21@aol.com; richhillissf@yahoo.com; mooreurban@aol.com; hscommish@yahoo.com; Secretary, Commissions (CPC)
**Subject:** Concerned Citizen requests: Please reject proposal to legalize short-term rentals in San Francisco

Dear Commissioners,

As a homeowner, taxpayer and parent of young children, I respectfully ask that you reject the proposal to legalize short-term rentals in SF. Our city consists of neighborhoods, each with its own charm and character. Why would we want to apply a blanket approach to zoning without considering the impact to each neighborhood?

Providing people with the ability to rent out their homes/rooms to help them to stay in homes they cannot afford is not a sound financial decision. If anything, it may encourage others to purchase homes beyond their means. We should heed the lessons we learned from the most recent economic, real estate and mortgage downturns and not support schemes that can only hurt neighborhoods, but the investors who may find themselves in financial hot water.

Consider too, the competition to established hotels in the city. Will some close their doors and jobs be lost? How will that impact tax revenues?

This topic warrants more in-depth study and deserves a full and fair debate that includes all San Franciscans on what kind of city we want to live in.

Thank you for your time and consideration.

Sincerely,

Pamela Carey
51 Gaviota Way
San Francisco, CA 94127

| | |
|---|---|
| **From:** | Secretary, Commissions (CPC) |
| **To:** | Starr, Aaron (CPC) |
| **Cc:** | Gerber, Patricia (CPC) |
| **Subject:** | FW: Concerning Home Sharing in the City |
| **Date:** | Thursday, July 31, 2014 9:29:26 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |

*Office of Commission Affairs*

Planning Department | City & County of San Francisco
1650 Mission Street, Suite 400, San Francisco, CA 94103
Direct: 415-558-6309 | Fax: 415-558-6409

commissions.secretary@sfgov.org
www.sfplanning.org

    

**From:** Susan VanKuiken [mailto:susan.vankuiken@gmail.com]
**Sent:** Wednesday, July 30, 2014 7:34 PM
**To:** cwu.planning@gmail.com
**Cc:** planning@rodneyfong.com; wordweaver21@aol.com; chrisdjohn04@gmail.com; richhillissf@yahoo.com; mooreurban@aol.com; hs.commish@yahoo.com; Secretary, Commissions (CPC)
**Subject:** Concerning Home Sharing in the City

Dear President Wu,

I have lived in the neighborhood of Alamo Square, McAllister between Scott and Divisadero, 20 years so far, love it!  I have rented rooms in my condo, which I was fortunate to buy back in 1997.  That was the only way I could afford to live there and I have been very happy to share the space with others over the years, about 50 people so far.  During all of those years I have kept careful records and paid taxes accordingly.

Last summer one of my renters had to leave in the middle of the month of July, so I thought I would put it on Airbnb until the end of the summer.  It wasn't difficult to rent and people doing internships rented for a month at a time.  OF course, it is more lucrative, and the people who came were so relieved to find an affordable place to stay that I have kept that room on Airbnb and now have some extra money to use for repairs for the condo.  That  is a relief for it is difficult to maintain an old building like my condo is part of.

AND, I love the opportunity to meet people from around the world and share stories with them.  I can't help but feel that in this broken, war-torn world we have now, with hatred for the US growing, the chance to welcome and care for citizens of other

countries is a way to build bridges of mutual concern and friendship.

In addition, I send my guests out into the neighborhood and beyond with recommendations for restaurants, businesses, public places I think they would enjoy. Certainly that has been having a positive economic impact in the city

Currently there is legislation before the SF Planning Commission and City Supervisors considering home-sharing in the community. We want to make sure that people like myself are able to continue sharing our homes, and supporting area businesses.  As one of those home sharers I am asking you to consider this as you discuss the proposed legislation regulating home sharing in the city.

Sincerely,
Susan G. VanKuiken
1524 McAllister ST
SanFrancisco, CA 94115


--
Thinking in Seconds --
-1 million = 11 1/2 days
-1 billion = 32 years
-1 trillion = 100 centuries

| From: | Secretary, Commissions (CPC) |
|---|---|
| To: | Gerber, Patricia (CPC) |
| Cc: | Starr, Aaron (CPC) |
| Subject: | FW: Home Sharing |
| Date: | Wednesday, July 30, 2014 8:31:37 AM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |

*Office of Commission Affairs*

Planning Department │ City & County of San Francisco
1650 Mission Street, Suite 400, San Francisco, CA 94103
Direct: 415-558-6309 │ Fax: 415-558-6409

commissions.secretary@sfgov.org
www.sfplanning.org

    

**From:** Tom Wrobel [mailto:tswrobel@gmail.com]
**Sent:** Tuesday, July 29, 2014 11:27 PM
**To:** cwu.planning@gmail.com; planning@rodneyfong.com; wordweaver21@aol.com; chrisdjohn04@gmail.com; richhillissf@yahoo.com; mooreurban@aol.com; hs.commish@yahoo.com; Secretary, Commissions (CPC)
**Subject:** Home Sharing

To the Board of Supervisors and the Commissioners

I vote and I use AirBnB for guest stays of 1-4 months at my house. I neither think that I should pay additional fees or be denied my property rights and contract rights in a simple straightforward transaction that helps me save money and pay for expenses. In fact I am using AirBnB to save for my wedding this upcoming September. I am not a hotel, I am not a big corporation. I think that any problem you think you might be addressing can be dealt with privately between private parties. It seems this is more about more revenue for the City than a legitimate public concern. Property tax is already paid for the property I reside in. AirBnB already provides ample insurance and verification through its services. AirBNB is facilitating the stays of visitors, interns, students how are coming to our City with very little available housing stock. The City of SF has a huge problem now that AirBnB is addressing far more effectively than anything the Board of Supervisors or the Planning Commission has done in the last ten years. It has generated thousands of new housing opportunities for guests than otherwise would find the City unaffordable to visit. When people have a more affordable place to stay, they shop more or dine out more. Your proposals would actualy do more to harm businesses in SF than any problem you think there is with AirBnB.

I am not a hotel. I am not a big corporation. I am not a nuisance nor are my guests. My guests spend lots of money in the local economy. Don't mess that up.

Any complaints from neighbors can be dealt with privately or through small claims or mediation. Its called living in community, and communicating.  Regulating this area is not in the best interests of the City.  For now you should empower it, rather than regulating home sharing.

Might I suggest that Instead you focus elsewhere like simplifying construction permitting process and building codes so that more housing stock can be created; cleaning up the Tenderloin where there are far more significant safety and health issues; getting rid of Sunday parking meter fees; streamlining road construction and repairs so roads aren't torn up every 5 months by PG&E or for road construction; holding PG&E/Comcast accountable; introducing WiFi throughout the City as a public utility; addressing the chronic vagrancy issues such aggressive panhandling, public intoxication, urination and defecation.  How about car breakins that happen every night in this City?  These simply are far more important challenges for the City.  Do you know how embarrassing it is to explain to visitors about someone passed out on the sidewalk at noon?  Or about the urine smell or human feces that you encounter in some parts of town?  Instead we all just accept this as life in SF, and then do things like ban sales of plastic water bottles on City property as if that is more than some symbolic gesture, or try to regulate a highly functioning innovation that is very much helping the City, its residents and visitors.

I've used AirBnB to travel as well.  I have had outstanding experiences meeting new people who are not hoteliers or hotel guests but are real people living in close proximity under one roof.

Stop meddling with a good thing.  If you think the few complaints you received re AirBNB comes close to the complaints that the City is not addressing, you are absolutely of touch.

I encourage you to allow flexibility and instill accountability without sticking on fees, raising costs and prohibiting activity.  Over regulating here hurts people and hurts SF.

Sincerely,

Tom Wrobel
**Long time resident and business owner**

| From: | Secretary, Commissions (CPC) |
|---|---|
| To: | Gerber, Patricia (CPC) |
| Cc: | Starr, Aaron (CPC) |
| Subject: | FW: Home-Sharing in San Francisco |
| Date: | Tuesday, July 29, 2014 8:39:18 AM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |

*Office of Commission Affairs*

Planning Department │ City & County of San Francisco
1650 Mission Street, Suite 400, San Francisco, CA 94103
Direct: 415-558-6309 │ Fax: 415-558-6409

commissions.secretary@sfgov.org
www.sfplanning.org

    

**From:** stratesphere1@aol.com [mailto:stratesphere1@aol.com]
**Sent:** Monday, July 28, 2014 7:10 PM
**To:** cwu.planning@gmail.com; planning@rodneyfong.com; wordweaver21@aol.com; chrisdjohn04@gmail.com; richhillissf@yahoo.com; mooreurban@aol.com; hs.commish@yahoo.com; Secretary, Commissions (CPC)
**Subject:** Home-Sharing in San Francisco

Dear Commissioners,

I live on Potrero Hill, and have been sharing my home, using AirBnB, for over four years. Without the income from home-sharing, I'm not sure how I would have gotten by during these tough times.

Please support reasonable legislation which will protect home-sharing in our city. Thousands of San Francisco residents are depending on you to help us make ends meet.

I am a 59-year old writer. Home-sharing has helped me pay my mortgage, and stay in the city I love - even after I was laid off. I have been able to host guests in unused space (no rental unit was taken off the market!), while also helping them "leave their hearts" in San Francisco. Honestly, without AirBnB, I don't know what I would have done. I might have had to resort to public assistance.

But it's not just a monetary issue. It turns out I really enjoy hosting! Many of my guests are parents who have grown children living in the neighborhood. Since there are no hotels anywhere near Potrero Hill, staying with me enables them to be close to their children and grandchildren. They're able to stay longer and visit more often. I've hosted one such couple, John and Inez, five times! It's a great feeling knowing that seniors don't have to be isolated from their families when they visit.

I also love hosting young people from other countries, whose only lodging alternative is squalid, cheap hotels that wouldn't leave them with a very good impression of our beautiful city. I tell them about places they'd never find in their guidebooks, and take real pleasure when they report they've had a great visit.

Home-sharing doesn't benefit just me and my guests, though. I'm always sending folks to local businesses to eat and shop. My guests rave about restaurants like Aperto and Goat Hill Pizza. They hang out at Farley's coffee house and buy groceries at the Good Life. I'm proud that I can support Potrero Hill businesses which otherwise would never get these tourist dollars.

Now, about the legislation. Because so many of us care so passionately about home-sharing, we spent many hours going over Supervisor Chiu's proposal. Frankly, it's not perfect - so I hope you will also read this whitepaper prepared by Home Sharers of San Francisco, a group of over 1,000 concerned citizens. It presents measured and reasonable upgrades: https://sites.google.com/site/hspositionpaper/

When you consider the proposed legislation, please ignore the sensationalized newspaper articles that feature just a few bad apples and think about the thousands of us who are hosts, quietly sharing their homes. We need your support to stay on our feet and stay in San Francisco!

Respectfully,
Gail

**From:** Secretary, Commissions (CPC)
**To:** Gerber, Patricia (CPC)
**Cc:** Starr, Aaron (CPC)
**Subject:** FW: In support of home sharing
**Date:** Tuesday, July 29, 2014 3:44:31 PM
**Attachments:** image001.png
image002.png
image003.png
image004.png
image005.png

---

*Office of Commission Affairs*

Planning Department | City & County of San Francisco
1650 Mission Street, Suite 400, San Francisco, CA 94103
Direct: 415-558-6309 | Fax: 415-558-6409

commissions.secretary@sfgov.org
www.sfplanning.org

    

**From:** Shannon Murray [mailto:shannonsf@gmail.com]
**Sent:** Tuesday, July 29, 2014 3:27 PM
**To:** cwu.planning@gmail.com; planning@rodneyfong.com; wordweaver21@aol.com;
chrisdjohn04@gmail.com; richhillissf@yahoo.com; mooreurban@aol.com; hs.commish@yahoo.com;
Secretary, Commissions (CPC)
**Subject:** In support of home sharing

Hello, I'm writing in support of the home sharing legislation put forward by President Chiu. I live in District 8. I've been a resident of San Francisco for almost 20 years and have owned this home for nine years.

During the last two years I have both hosted many Airbnb guests as well as stayed with other hosts. Airbnb has been simply put, a godsend for me. Its allowed me to take the risk of changing from one career to a completely different career by buffering my income during the ramp-up phase. Without Airbnb, I'd be tapping into my 401K to survive. Airbnb has meant the ability to leverage vs. deplete my largest asset, my home.

Here in SF we live on the edge of the world. I'm from the East Coast and have family all up and down the East Coast. Airbnb allows me to leverage the investment I've made in my home by renting it when I'm otherwise away i.e my home would be vacant, which is frequent. To me its the ideal creative solution to so many of San Francisco's challenges; it more evenly distributes the impact and benefits of tourism across the city, it allows me to fight back against the high cost of owning and maintaining a home in San Francisco, it offers a more diverse and quite frankly more local experience for guests of SF.

To me the sharing trend; homes, cars, taxis is a wonderful innovation. I would like to see San Francisco take steps to legalize, legitimize, and normalize the sharing economy through

Chiu's legislation. San Francisco has invented so many new technologies and business models. I am so proud of our success and would like to see home sharing marketplaces made convenient and straight forward by answering the many legal and tax questions that currently remain unanswered for hosts through Chiu's legislation.

Although I cannot attend the hearing as I work in Silicon Valley, I am available by phone or email for any questions you might have about what its like to be a home sharing host.

Kind regards,

Shannon Murray

| | |
|---|---|
| **From:** | Secretary, Commissions (CPC) |
| **To:** | Starr, Aaron (CPC) |
| **Cc:** | Gerber, Patricia (CPC) |
| **Subject:** | FW: Please support home sharing and Airbnb |
| **Date:** | Wednesday, July 30, 2014 10:10:51 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |

*Office of Commission Affairs*

Planning Department | City & County of San Francisco
1650 Mission Street, Suite 400, San Francisco, CA 94103
Direct: 415-558-6309 | Fax: 415-558-6409

commissions.secretary@sfgov.org
www.sfplanning.org

    

**From:** Anita Beelm [mailto:soapplant@hotmail.com]
**Sent:** Wednesday, July 30, 2014 9:57 AM
**To:** CWu.Planning@gmail.com
**Cc:** Planning@RodneyFong.com; WordWeaver21@aol.com; ChrisDJohn04@gmail.com; RichHillisSF@yahoo.com; MooreUrban@aol.com; HSCommish@yahoo.com; Secretary, Commissions (CPC)
**Subject:** Please support home sharing and Airbnb

Dear Commissioners,
Hello.  My name is Anita. I live in the Sunset neighborhood, and have been sharing my home through Airbnb for 4 years.  It has been a Godsend to me, keeping me afloat financially.

I lost my two steady part-time jobs in 2010.  Being of an older age (age 50 at the time), I have found it difficult to find  steady work every since.  I had purchased my single-family detached house on my own  in 1996 when the economy was booming, and when my independent contracting work was in its peak.  In 2010, the job losses left me with no income to pay the mortgage, insurance, taxes, repair bills, health insurance, living expenses, etc. etc. It was a a petrifying situation.

Then I heard of Airbnb, and since I was desperate, I decided to do something I had never done before-- I tried it.  It  turned out to to be a lifesaver!  I was/am truly grateful to be able to have some income to pay my bills again.  Being too young to tap into my retirement savings, and too old apparently to be given a steady job, Airbnb provides me with the income with which to survive during these "gap years".

In addition to  the income, Airbnb provides me with a way of having someone watch my home, and make sure it is safe,  when I am away from it.  I spend two to three days  a week in Richmond where my long-term partner, Paul, lives.   I am creating a Native Plant Garden

for Wildlife in his and neighboring yards.  This  project was started to help keep me from being depressed worrying about my lack of money, and my difficulty in finding work.  It brings  great joy and is something I am passionate about.    It allows me to be constructive, instead of being overwhelmed by depression brought on by financial woes.  Airbnb enables me continue to do this passion, lessening my worry about whether my home has been broken into today, or whether the water heater burst or who-knows-what.

But I am not the only one who benefits from sharing my home.  The small mom-and-pop grocery store, restaurants, nail-salons, local pub,  and other small businesses down the street also benefit.  My Airbnb guests purchase groceries from the mom-and-pop store, eat brunch at Squat and Gobble, and  have dinner at Roti's.  All these small struggling establishments get a real economic boost from the disposable income of  my Airbnb guests.

And lastly, a whole range of  sweet absolutely ordinary people, in the form of my guests themselves, benefit from the service Airbnb provides:   Families with young children ranging from two months old to teenagers (they find my two bedroom house much more appropriate, and certainly much more affordable, than hotel rooms),  families who want to be close to a family member who is receiving treatment at UCSF,  tourists/families visiting San Francisco for the very first time, families visiting their relative who lives a few blocks away but who has no spare room to host them.  The list is endless, but the common thread is that Airbnb makes they stay more pleasant by providing badly needed comfortable lodging that does not cost "an arm and a leg".   Also, needless to say, the friendships that are formed are priceless.  Any barriers that exist between people/strangers from different parts of the world, just keep getting broken down and the world just becomes better for it.   It seems to be all good. (And there has never been any issue to trouble my neighbors with.  Several of my neighbors in fact have made friends with the guests. It really is all good ).

In closing, I really hope the Planning Commission will allow something that is good to continue.   I ask that you please work with the Board of Supervisors to form fair legislation that helps benefit all--people struggling to pay their bills, local neighborhood businesses  trying  to survive in an economic downturn, a  world-full of ordinary  working-class families who find that coming to San Francisco to visit is something they may/can really afford now, and lastly, our  beloved City of San Francisco which stands to receive a windfall of  additional tourist-tax revenue.

Thank you so much for your consideration. I hope you will do all you can to support home sharing. I will be lost without it.
Sincerely,
Anita.

| From: | Secretary, Commissions (CPC) |
|---|---|
| To: | Christine Johnson (chrisdjohn04@gmail.com) |
| Cc: | Starr, Aaron (CPC); Gerber, Patricia (CPC) |
| Subject: | FW: Reject David Chiu"s proposal re: short-term rentals |
| Date: | Thursday, July 31, 2014 9:30:18 AM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |

FYI

*Office of Commission Affairs*

Planning Department | City & County of San Francisco
1650 Mission Street, Suite 400, San Francisco, CA 94103
Direct: 415-558-6309 | Fax: 415-558-6409

commissions.secretary@sfgov.org
www.sfplanning.org

    

**From:** Jonathan Mergy [mailto:mergy@mergy.org]
**Sent:** Thursday, July 31, 2014 6:26 AM
**To:** cwu.planning@gmail.com; planning@rodneyfong.com; wordweaver21@aol.com;
richhillissf@yahoo.com; mooreurban@aol.com; hscommish@yahoo.com; Secretary, Commissions (CPC)
**Subject:** Reject David Chiu's proposal re: short-term rentals

As a native San Francisco resident and home owner in Miraloma Park, I do not want David Chiu's
proposal to legalize more short-term rentals. We bought our house in San Francisco in a specific area of
SF because we didn't want to live next to commercial entities. Miraloma Park has a wonderful
community and a residential feel that we all have worked hard to maintain. David Chiu's proposal will
destroy that.

Please reject this and keep commercialization of residential housing limited in the areas that don't want
it.

-------
Jonathan Mergy
mergy@mergy.org
744 Teresita Blvd.

**From:** Secretary, Commissions (CPC)
**To:** Bill Sugaya; Christine D. Johnson; Cindy Wu; Kathrin Moore; Michael Antonini; Rich Hillis; Rodney Fong
**Cc:** Gerber, Patricia (CPC); Starr, Aaron (CPC)
**Subject:** FW: Reject the short term rental rezoning!
**Date:** Thursday, July 31, 2014 9:30:31 AM
**Attachments:** image001.png
image002.png
image003.png
image004.png
image005.png

FYI

*Office of Commission Affairs*

Planning Department │ City & County of San Francisco
1650 Mission Street, Suite 400, San Francisco, CA 94103
Direct: 415-558-6309 │ Fax: 415-558-6409

commissions.secretary@sfgov.org
www.sfplanning.org

    

**From:** Maureenkellysanf [mailto:maureenkellysanf@aol.com]
**Sent:** Thursday, July 31, 2014 6:52 AM
**To:** Secretary, Commissions (CPC)
**Subject:** Reject the short term rental rezoning!

I choose to live in a quiet neighborhood where I know my neighbors. This is not right for those of us who want to keep the integrity of our community

Sent from AOL Mobile Mail

**From:**      Secretary, Commissions (CPC)
**To:**         Christine Johnson (chrisdjohn04@gmail.com)
**Cc:**         Starr, Aaron (CPC); Gerber, Patricia (CPC)
**Subject:**  FW: Residential Zoning Change...
**Date:**     Thursday, July 31, 2014 9:29:58 AM

FYI

Office of Commission Affairs

Planning Department¦City & County of San Francisco
1650 Mission Street, Suite 400, San Francisco, CA 94103
Direct: 415-558-6309¦Fax: 415-558-6409

commissions.secretary@sfgov.org
www.sfplanning.org


-----Original Message-----
From: Marc [mailto:marcxyz@mindspring.com]
Sent: Thursday, July 31, 2014 5:49 AM
To: cwu.planning@gmail.com; planning@rodneyfong.com; wordweaver21@aol.com;
richhillissf@yahoo.com; mooreurban@aol.com; hscommish@yahoo.com; Secretary, Commissions (CPC)
Subject: Residential Zoning Change...

As a home owner in Miraloma Park I strongly disagree with Supervisor David Chiu's proposal to legalize short-term rentals in SF CITY WIDE...  Miraloma Park has a very strong neighborhood community that has worked hard over decades to maintain the residential feel of this neighborhood.  In general the neighborhood is against re-Zoning to allow commercial (AirBnB type rentals) in our neighborhood.

Neighborhoods need to be considered on a neighborhood by neighborhood basis and not a sweeping change.  Would the Getty's or Larry Ellison or the Rosecrans like one of their neighbors to turn their house into an AirBnB venture?  Well we don't either.  That is what hotels are for.

PLEASE KEEP COMMERCIAL RE-ZONING OUT OF MIRALOMA PARK !!!!

| From: | Secretary, Commissions (CPC) |
|---|---|
| To: | Starr, Aaron (CPC) |
| Subject: | FW: Short-term rentals of residential housing |
| Date: | Wednesday, July 30, 2014 8:31:47 AM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |

*Office of Commission Affairs*

Planning Department | City & County of San Francisco
1650 Mission Street, Suite 400, San Francisco, CA 94103
Direct: 415-558-6309 | Fax: 415-558-6409

commissions.secretary@sfgov.org
www.sfplanning.org

    

**From:** Libby Noronha [mailto:libbynoronha@gmail.com]
**Sent:** Tuesday, July 29, 2014 7:49 PM
**To:** wordweaver21@aol.com; richhillissf@yahoo.com; mooreurban@aol.com; hs.commish@yahoo.com; Secretary, Commissions (CPC)
**Subject:** Short-term rentals of residential housing

July 28, 2014

San Francisco Planning Commissioners
San Francisco, CA 94102

Dear Planning Commissioners:

I am a life-long San Francisco resident and I am writing to you to express my deep concern over Supervisor Chiu's proposed legislation regarding short-term rentals of residential units, aka Airbnb rentals.

I live on Wawona Street in the West Portal neighborhood. When I moved here two years ago I believed I was moving into a quiet residential area. At the time I moved in, my next-door neighbor was renting his living room on Airbnb.com. He also has two units on ground level and, at the time I moved in, he had two long-term tenants. In the fall of 2012 the couple in one of his units left and my neighbor began short-term Airbnb rentals of that unit. In early 2014 the tenant in the other unit left and my neighbor began short-term

rentals of his second unit.  As many as six people came and went from his house on any given day.  The constant foot traffic and noise resulting from these short-term rentals interfered with the enjoyment of my property, ultimately forcing me to hire an attorney.  My neighbor has since agreed to stop the Airbnb rentals but I am seriously concerned that they may become legal at some point in the future.

There has been much talk in the press about the many issues surrounding short-term rentals but very little about their impact on neighbors and neighborhoods, and I would like you to understand what some of those impacts are:

- My neighbor and I share an alley that is about six feet wide.  Access to his two ground level units is in this alley.  For me, that meant unknown people coming and going at all hours of the day and night.  It meant people talking and luggage rolling on concrete at all hours of the day and night.
- Unknown people coming and going created personal insecurity and created an on-going nuisance within the legal meaning of the term.
- My neighbor's tenants routinely trespassed on my property and my insurance company tells me I am liable if someone gets hurt.
- My neighbor's tenants threw garbage in my backyard and removed a temporary barrier which kept my dog in the yard.
- My neighbor's tenants smoked in front of my house and threw cigarette butts in the street in front of my house.
- West Portal is a two-hour residential parking permit area.  My neighbor routinely provided his tenants with temporary parking passes which reduced the parking available to residents.  Tenants parked in my driveway.
- House cleaners came and went on a continuous basis.
- Taxis, Airporters and other commercial vehicles routinely arrived next door.

I see many benefits in the "sharing economy" but I ask you to consider if you would like to live next door to a hotel.  Commercial activity does not belong in residential areas and residents should not have to hire attorneys to protect their safety, their property and their peace of mind.  I urge you to vote against the Chiu legislation and to protect the character of our neighborhoods.

Sincerely,


Elizabeth Noronha
46 Wawona Street, SF 94127
libbynoronha@gmail.com

| From: | Secretary, Commissions (CPC) |
|---|---|
| To: | Starr, Aaron (CPC) |
| Subject: | FW: Support of Home Sharing |
| Date: | Tuesday, July 29, 2014 8:39:22 AM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |

*Office of Commission Affairs*

Planning Department | City & County of San Francisco
1650 Mission Street, Suite 400, San Francisco, CA 94103
Direct: 415-558-6309 | Fax: 415-558-6409

commissions.secretary@sfgov.org
www.sfplanning.org

    

**From:** margomoritz@gmail.com [mailto:margomoritz@gmail.com] **On Behalf Of** Margo Moritz
**Sent:** Monday, July 28, 2014 9:27 PM
**To:** cwu.planning@gmail.com
**Cc:** planning@rodneyfong.com; mooreurban@aol.com; hs.commish@yahoo.com; Secretary, Commissions (CPC); chrisdjohn04@gmail.com; richhillissf@yahoo.com
**Subject:** Support of Home Sharing

Dear Ms. Wu and the other members of the Commission,

I am writing to express my support of home-sharing in San Francisco. I have been following the news and understand there are many changes about to take place as well as a new proposed legislation you will be discussing in August.

I have lived in San Francisco for 8 years. I came here to get my MFA in Photography and I am now working as a freelance photographer with my own business. I am also a professor of photography at the Academy of Art University and am a board member of the SF chapter of the American Photographers Association. I consider myself a working artist/business owner who is very involved with her community.

I moved into my apartment near the Panhandle Park 1.5 years ago when my boyfriend and I decided to move in together. At the time, the cost of the apartment was slightly out of our budget, but we fell in love with the place so decided to go for it. Unfortunately, the relationship ended, and my boyfriend moved out. I decided to keep the apartment and stay in the home that I created, but I couldn't afford the cost of rent on my own. I started renting out the 2nd bedroom on Airbnb to make my rent affordable. I've never made a profit off of homesharing, it just allows me to stay in the home that I've created and love. It makes the expense of living in San Francisco reasonable and affordable, and has allowed a working artist like me to continue to thrive in a city with a high cost of living.

If the current legislation were to go through, I would not be able to share my home in order to subsidize my rent. I wouldn't be able to afford to live here, and I certainly wouldn't be able to afford moving into a new apartment given the inflated rental prices. Ending my home-sharing situation would likely force me to move out of San Francisco.

With the recent tech boom, many artists and lower income families and individuals have been forced to leave San Francisco in search of more affordable living. San Francisco is a city that has been defined by its artists and diversity, and it would be a shame to lose this population. Airbnb is SF-based tech company that actually allows me (and many others) to afford to stay in San Francisco. I strongly believe this privilege should be protected.

If there's any other information you need from me don't hesitate to reach out. I will look forward to the results of the new proposed legislation and hope home-sharing will continue to be allowed.

Thanks very much for your time,
Margo Moritz


--
margomoritz.com
Facebook
Instagram

| | |
|---|---|
| **From:** | Secretary, Commissions (CPC) |
| **To:** | Starr, Aaron (CPC) |
| **Cc:** | Gerber, Patricia (CPC) |
| **Subject:** | FW: The Unspoken Side of Home Sharing |
| **Date:** | Thursday, July 31, 2014 9:29:35 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |

---

*Office of Commission Affairs*

Planning Department │ City & County of San Francisco
1650 Mission Street, Suite 400, San Francisco, CA 94103
Direct: 415-558-6309 │ Fax: 415-558-6409

commissions.secretary@sfgov.org
www.sfplanning.org

    

**From:** laura finlayson [mailto:laura.finlayson@gmail.com]
**Sent:** Wednesday, July 30, 2014 9:19 PM
**To:** cwu.planning@gmail.com; planning@rodneyfong.com; wordweaver21@aol.com; chrisdjohn04@gmail.com; richhillissf@yahoo.com; mooreurban@aol.com; hs.commish@yahoo.com; Secretary, Commissions (CPC)
**Subject:** The Unspoken Side of Home Sharing

Hello Planning Commission Members

I moved to San Francisco in February 2013 just after a major illness had me hospitalized in New Jersey.

With just a few days to find an apartment I was not able to go through the necessary rental wars that it takes to find a reasonably priced or rent controlled apartment. So I ended up in one of the ridiculously-priced market rate apartments. But I make good money so I figured I could make it work -- although even at a professional salary its hard to live in this city so things were tight.

When the hospital bills rolled in a few months later things changed, I found myself with a decision to make -- eat or find a way to make more money.  So invited strangers into my home to use my pull out couch as a cost-effective place to stay while helping me be able to pay my bills while still being able to go out to eat or for a drink at a local pub.

The unexpected upside for me, I made great friends. I had a few different people stay on my couch while looking for their own homes in San Francisco, we remain friends to this day.

For my one year anniversary in Sn Francisco I received a $300 per month rent increase. THREE HUNDRED MORE DOLLARS EVERY MONTH!! (Now if we want to talk

about something that needs to be stopped in this city its that kind of crazy increases that the "market rate" buildings are permitted to do). But with the extra income I had from 5 - 10 nights a month of guests I was able to swing that crazy increase.

I was not taking any housing off the market, not even allowing people to stay in my home unsupervised  Just inviting house guests to come in and pay me a little for hosting them. In addition to the extra money, I made friends, learned about other countries, and generally enjoyed having the opportunity to meet inserting people from across the globe.

As for the guests, some were students, some budding entrepreneurs trying to achieve their bay area dreams, one was a medical researcher who stayed here while she was looking for a place to live for her new job at UCSF. Most could not have afforded to pay San Francisco hotel prices (we've all seen the survey indicating this is the most expensive U.S. city to visit). But thanks to home sharing, they were able to come and stay with me.

Still, this spring, I received a call from my building management threatening to evict me and take legal action if I continued to share my home. So I stopped and now, even with a six figure income, I have to consider moving out of the city because it is just too expensive to live here as a single person and have any money for retirement savings or unexpected expenses -- like medical bills.

We are the people of Airbnb and those for whom home sharing is really intended.

I encourage you to consider ways to allow residents to continue to share their homes and their city with others without fear of eviction.

Thank you for your consideration.

Laura Finlayson

| From: | Secretary, Commissions (CPC) |
| To: | Starr, Aaron (CPC) |
| Subject: | FW: Voicing our opposition to the legalization of short-term rentals |
| Date: | Wednesday, July 30, 2014 8:31:52 AM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |

*Office of Commission Affairs*

Planning Department | City & County of San Francisco
1650 Mission Street, Suite 400, San Francisco, CA 94103
Direct: 415-558-6309 | Fax: 415-558-6409

commissions.secretary@sfgov.org
www.sfplanning.org

    

**From:** ROBERT [mailto:rdnachtigall@hotmail.com]
**Sent:** Tuesday, July 29, 2014 7:44 PM
**To:** cwu.planning@gmail.com; planning@rodneyfong.com; wordweaver21@aol.com; richhillissf@yahoo.com; mooreurban@aol.com; hs.commish@yahoo.com; Secretary, Commissions (CPC)
**Subject:** Voicing our opposition to the legalization of short-term rentals

Dear Commissioners:

We are writing this letter because we strongly believe that self-interested short-term rental companies (such as Airbnb) threaten to undermine the integrity and character of single-family residential neighborhoods in San Francisco.

We are also dismayed that our local elected officials and housing agencies have not taken a more serious approach to the enforcement of existing law. Does not the San Francisco Planning Department Code clearly state that short term rentals of 30 days or less are in direct violation of zoning laws?

What is particularly galling is that Airbnb is certainly not hiding the fact of their existence or purpose - their web site proudly flaunts the availability of "1,000+" rental opportunities in San Francisco (conveniently broken down by neighborhood). However it is equally obvious that Airbnb knows that what it is doing is illegal as they intentionally omit their "hosts'" specific addresses and obscure the exact locations of the rentals on their map.

While there are genuine concerns about making rental properties available to legitimate tenants, the concerns of private home owners who live in residentially zoned neighborhoods have been virtually ignored. Our area of Twin Peaks is zoned exclusively for private homes yet we have experienced serious and negative consequences as a result of illegal renters descending on our neighborhood:

1) Homes are being purchased for the express reason of using the property as an investment that is rented out on Airbnb. This has an obvious degrading effect on the residential quality of the area that traditionally has had families and young children moving in.

2) Neighbors feel unsafe living next to de facto transient "hotels" with unfamiliar strangers taking up street parking spaces and leaving garbage strewn in the street.

3) There is a pervasive fear of fire and security hazards as California Homeowner Insurance policies specifically exclude insurance for short term rentals. Any damages that result from illegal, malicious, or negligent behavior by short-term renters will likely be denied by the homeowners' insurance policy.

4) Many older neighborhoods have blocks with homes that have interconnected sewers that have backed up and overflowed, presumably the result of overloading the shared sewer system and requiring emergency assistance.

5) The notorious "Glint House" at 170 St. Germain Ave was rented to a large group of individuals who created an out-of-control "frat party" environment that included all-night parties for hundreds of people (who paid admission to attend!). The unrelenting noise and parking problems prompted calls to the police several times a week.

As we have enjoyed living in this lovely residential oasis of San Francisco for over 25 years, we are alarmed that the unique tranquility and beauty of our Twin Peaks neighborhood is being threatened by outside enterprises that willfully flout the law and don't give a damn about anyone's interests but their own.

Please do not let flagrant violators of our city's laws get away with it!

Choose instead to preserve our residential zoning laws and the quality of our neighborhood.

Sincerely,

Robert and Andrea Nachtigall

160 Palo Alto Ave
San Francisco, CA

This document is intended for the use of the party to whom it is addressed and may contain information that is privileged, confidential, and protected from disclosure under applicable law. If you are not the addressee, or a person authorized to accept documents on behalf of the addressee, you are hereby notified that any review, disclosure, dissemination, copying, or other action based on the content of this communication is not authorized. If you have received this document in error, please immediately reply to the sender and delete or shred all copies.